IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CONNER SLEVIN, | ) | |
| Plaintiff, | ) | Case No. 3:23-cv-01404-YY |
| v. | ) | |
| AB HOLLYWOOD LLC, a limited liability company, | ) | November 12, 2024 |
| Defendant. | ) | Portland, Oregon |

**Motion Hearing**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE YOULEE YIM YOU

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES

FOR THE PLAINTIFF: Mr. Kevin A. Mehrens
Attorney at Law
3918 N.E. Garfield Avenue, Unit B
Portland, OR 97212

FOR THE DEFENDANT: Mr. Iain Armstrong
Lewis Brisbois Bisgaard & Smith LLP
888 S.W. Fifth Avenue, Suite 900
Portland, OR 97204

ALSO PRESENT: Ms. Jessica Lee Molligan
Attorney at Law
P.O. Box 16893
Portland, OR 97292

COURT REPORTER: Bonita J. Shumway, CSR, RMR, CRR
United States District Courthouse
1000 S.W. Third Avenue, Room 301
Portland, OR 97204
(503)326-8188
bonita_shumway@ord.uscourts.gov

(P R O C E E D I N G S)

(November 12, 2024; 11:06 a.m.)

* * * * *

THE COURTROOM DEPUTY: Your Honor, now is the time set for a motion hearing regarding Case 3:23-Civil-1404-YY, Conner Slevin versus AB Hollywood LLC.

Beginning with plaintiff's counsel, please state your appearances for the record. Thank you.

MS. MOLLIGAN: I'm Jessica Molligan. Actually, no, I'm not. I'm sorry.

THE COURT: Plaintiff's former counsel. Thank you.

MR. MEHRENS: Kevin Mehrens, current counsel for Conner Slevin.

THE COURT: Thank you.

MR. ARMSTRONG: Iain Armstrong, counsel for Defendant AB Hollywood.

THE COURT: Just one moment, please.

(There is a pause in the proceedings.)

THE COURT: All right. I've connected successfully to Zoom. Let me ask Mr. Slevin, I see that your name is on the screen. Are you present?

THE PLAINTIFF: Yes, I am.

THE COURT: Okay. Now I can see you as well. Can you see me?

THE PLAINTIFF: I can. Thank you, Your Honor.

THE COURT: There should also be a courtroom view, including the attorneys. Can you see them?

THE PLAINTIFF: I cannot see those, no.

THE COURT: Let me just check here.

THE COURTROOM DEPUTY: I believe he can only see you, Your Honor.

THE COURT: Okay. Well, the lawyers are present. They just stated their appearances for the record. Did you hear that as well?

THE PLAINTIFF: I did. Thank you, Your Honor.

THE COURT: Let us know at any time if you have any issues with hearing the proceedings. Okay?

THE PLAINTIFF: Okay.

THE COURT: All right. We are here, as everyone knows, on the Defendant AB Hollywood LLC's Rule 11 motion for sanctions. The motion, the response, the reply, and the surreply have all been filed, including a response from Mr. Slevin through his new counsel.

I've reviewed the materials. I have a number of questions and requests for clarification. But what I want to do at the outset is identify a couple of what I believe are important observations, and these observations are directed at what, Ms. Molligan, you wrote in your response and surreply.

One of the things that you wrote is that this Court has already orally denied a motion to dismiss under similar

grounds on January 24th, 2024. And I want to clarify that. In no way did any prior decision on a motion to dismiss based on the sufficiency of the allegations of the complaint, that has nothing to do with the Rule 11 motion that is currently before the Court. That was a completely separate issue and was brought by the defense because it could not figure out what it was specifically that the plaintiff was alleging in terms of the ADA violations. The defendant was seeking more specificity, and was arguing that the allegations weren't sufficient. It was a motion against the complaint.

You also wrote there was nothing then and nothing now in the record before the Court as to the factual merits of the case. There's a lot more now.

So, in sum, nothing, no decision that was made with respect to a motion to dismiss under Rule 12(b)(6) goes to the merits of this Rule 11 motion for sanctions. I want to make sure everybody understands that.

Also, you wrote, particularly in the surreply, "This Court has already heard testimony and ruled on this issue for a similar case."

Not so. And what you were referring to was the Burley-Beavers inquiry into -- Well, let me restate. The inquiry that the Court made into Burley-Beavers' -- Mr. Burley-Beavers' IFP application. I think what you were trying to say there is that I had somehow made a ruling as to

whether the $200 that Mr. Burley-Beavers had received was reasonably calculated to pay his expenses.

And that's just simply not the case. That decision had to do with whether or not he had included all of the information he was required to provide in his IFP application. It's a completely separate issue from the Rule 11 motion that's pending before the Court right now, and I made -- I made a very careful ruling in that case, where I wrote "reimbursements" in quotation marks, and also explained that his testimony was that he received more than his expenses.

Also, too, you wrote that "The $200 was for plaintiff's purchases at the property, mileage for transportation, wear and tear on vehicles, caretakers/aides for accompanying plaintiff to the property, and any other miscellaneous expenses related to plaintiff's involvement in the case through the life of the case."

And I just want to clarify that that was not what Mr. Burley-Beavers said at the hearing. He, in fact, said the $200 that he received exceeded what he actually spent.

And finally, I want to point out that the definition of "reimbursement" is a sum paid to cover money that has been spent.

And again, the defendant has pointed out here -- referring to Mr. Slevin's remarks at the hearing in *Slevin v. Baek*, he said, "I was being compensated for just going and

starting the process, whether there's a settlement that was came to or not."

Judge Hernandez inquired, "So you were paid to start the process?"

And Mr. Slevin wrote, "Correct" -- he said "Correct," excuse me.

And the Court further inquired, Judge Hernandez inquired, "And that was what the lawyers paid you to start the process?"

And Mr. Slevin responded, "Yeah, Wampler & Carroll, correct."

So, at the outset, I wanted to clarify that neither of those prior decisions was a decision as to the merits of this Rule 11 sanctions motion. I want to clarify that for you, Ms. Molligan, and also for the other individuals who are here today.

There's one more point I wanted to make, which was that, Ms. Molligan, you also wrote that the suspension of the attorney named Gillespie was vacated. I went and looked at that decision, and it was vacated because the attorney did not have sufficient notice of the allegations, and it was remanded back to the Court to rule on the merits. So, in the future, I would caution you that it's important to not just say that it was vacated, but explain why it was vacated, because the way you wrote it, you made it seem like his suspension was vacated,

and that's actually not what happened. It was that he hadn't provided notice -- he hadn't been given notice, and it was sent back to the Court to make a decision after notice was provided.

All right. All that being said, I do have a question for the defense. Do you have the photographs that are referred to in the motion papers?

MR. ARMSTRONG: I do, Your Honor. I do not have them handy. I can file them with the court following.

THE COURT: Is there any way you can send them to me? Is it possible for you to send them to me during this hearing?

MR. ARMSTRONG: If I'm allowed to turn on my cell phone -- I followed the sign outside telling me to turn it off -- I can.

THE COURT: Yes, please do that. Thank you.

MR. ARMSTRONG: (Complies.)

THE COURT: Just let me know, Counsel, when you're done.

(There is a pause in the proceedings.)

MR. ARMSTRONG: This is a terrible time to be reminded that I'm past due updating my phone.

THE COURT: While we wait, let me turn to Ms. Molligan and ask another question. In your -- I think surreply -- let me just double-check here. Hold on.

In your surreply, on the last page, you write, "Plaintiff's former counsel is entitled to fees," and you also

write, "entitled to fees for reasons cited in her original response brief," and also, "entitled to fees that have not yet accrued for monitoring to ensure defendant gets into compliance and stays in compliance."

But you are no longer representing the plaintiff, so how is it that you believe you would be able to obtain fees? And also, too, quite frankly, this is not a -- no fee petition has been filed or a motion for fees.

MS. MOLLIGAN: I'm sorry, Your Honor. This is not pertaining -- I should have written it better. What I'm trying to say here is that one of the attacks against me is that in general it's that my fees -- that there was something wrong with the demand for $8,000. So this paragraph is addressing that original demand for $8,000. I understand I'm not entitled to anything right now, but in terms of addressing the original demand for $8,000, this whole paragraph attempted to explain why that figure is not unreasonable. And so then the monitoring is part of that. I'm just trying to explain why $8,000 was within the parameters of Rule 1.5.

THE COURT: All right.

Any luck, Counsel?

MR. ARMSTRONG: I've texted my assistant and directed her to email the Court. I'm also trying to bootstrap and do it myself at the same time, in case I'm faster. But if the Court would like to hear argument and defer to my assistant --

THE COURT: All right. That's fine. I could have also asked for the photographs before the hearing today. So why don't we move on, and hopefully they'll arrive.

I'll turn to Mr. Armstrong first, and ask you for a point of clarification. So you cite to Request for Admission No. 13, and am I correct that there was no response to that?

MR. ARMSTRONG: You are correct, Your Honor.

THE COURT: And let me ask Ms. Molligan why there was no response to the request for admission.

But first, hold on. There was -- the request for admission was made, and then there was a period of time during which the plaintiff was to respond to that, and there was no response; is that right?

MR. ARMSTRONG: That is correct, Your Honor.

THE COURT: You can remain seated.

MR. ARMSTRONG: Thank you.

THE COURT: All right. And then also I understand plaintiff's position is that it was his attorney's responsibility to file a response to that. So you don't have to add to that, Counsel, unless you'd like to.

Ms. Molligan, why no response to your Request for Admission No. 13?

MS. MOLLIGAN: We had already settled the case. I'd received the request for admission, like, the day after we had agreed to a settlement. In fact, I recall having a

conversation, like, "Why are you sending this?" So I thought it was a nonissue.

THE COURT: All right. Mr. Armstrong, your response?

MR. ARMSTRONG: Your Honor, I would not send requests for admission and discovery requests on a case that had settled. I will acknowledge that settlement agreement -- settlement negotiations occurred following the service of the request for admission, settlement negotiations which eventually failed to materialize and failed to be rendered into a final enforceable agreement.

THE COURT: Do you have a timeline for these events, when the request for admission was made, any emails that you exchanged to discuss settlement, and when -- and when the settlement discussions were initially finalized? But then, of course, I know what happened after that.

MR. ARMSTRONG: I'm -- my knowledge of when the request for admissions were made is based on my signature, which is on Exhibit C. That's dated the 29th day of May 2024. It's based on that. I would understand that they were sent -- I'm reviewing my email correspondence that's saved on my phone.

My understanding is that an email was sent from counsel to my associate on June 4th, stating that they agreed to settle the matter.

THE COURT: If that's the case, if the email -- when you say "from counsel," you mean Ms. Molligan?

MR. ARMSTRONG: Yes.

THE COURT: If she sent an email on June 4th, indicating that she was willing to settle, then why would any response to the request for admission be due after that?

MR. ARMSTRONG: My position, Your Honor, would be that the oral statement saying we agree to settle is pending execution of the settlement agreement and finalization of the settlement, and until that is finalized, the parties have indicated a generalized agreement to the terms, but that is subject to a failure of that negotiation or a failure of the meeting of the minds. At any time counsel could have asked for an extension, could have asked for a withdrawal of the request for admission, and could otherwise have sought clarification that they were not due. No such communication occurred during that process, and the emails are with the Court regarding the timeline by which settlement failed due to -- it is defense's understanding that they failed at the point where the defendant insisted upon Mr. Slevin signing the settlement agreement and Mr. Slevin indicating that he was in agreement with the settlement, and after requesting that he sign, we received communication from Ms. Molligan that the case would simply be dismissed without any agreement.

THE COURT: All right. Thank you, Counsel.

Ms. Molligan, any response?

MS. MOLLIGAN: I'm not able to access my emails, but

the request for admission may have been dated May 19th. That's not my recollection of when I actually received it. But nevertheless, we were settling this matter.

THE COURT: You can also remain seated.

MS. MOLLIGAN: Thank you.

At the same time I was dealing with how to address Mr. Slevin not wanting to have anything to do with this. But no, I wouldn't pursue discovery after a settlement has been offered.

THE COURT: When you say you were dealing with Mr. Slevin not wanting to have anything to do with this, what time period are you talking about?

MS. MOLLIGAN: I -- well, some of the communications were unclear. In other words, it was in -- and he was having communications not with me but with B.J. Wade, I think primarily, so it really wasn't until the actual signature was requested and that it became clear to me that Mr. Slevin did not want anything to do with any of this, but also that he was refusing to sign the agreement.

THE COURT: Can you pursue a settlement for a client who no longer wants to pursue a case?

MS. MOLLIGAN: The minute he did not want to -- said, "No, I won't sign that," is when I said, "We can't do this. We're just going to dismiss it."

So, in my mind, no, I did not want to do that.

THE COURT: When did you first have indications that Mr. Slevin did not want to proceed with the case?

MS. MOLLIGAN: Again, proceeding with the case and getting out of it to me were two different things. Once -- it was early May that he didn't -- he wasn't being assigned, like, places to go to. He was -- you know, okay, he's not doing this anymore, but in other words, the easiest way for this case, for example, to be done with would have been signing the agreement.

THE COURT: When he -- when you said in early May he was not being assigned places to go to, what was the impetus for that?

MS. MOLLIGAN: Again, I wasn't -- I don't know the exact dates, but the impetus for that, as I understand it, is that Mr. Slevin had seen the news and gotten very concerned about the allegations that Kyle Iboshi was bringing, and had been in touch with Kyle Iboshi and just really wanted -- "I don't want anything to do with this anymore."

THE COURT: How could you then on June 4th respond to opposing counsel and say, "We agree to settle"?

MS. MOLLIGAN: I didn't understand that what he meant was that he wouldn't sign it. In other words, because I was authorized to do settlements, I assumed that he would want to extricate himself as quickly and as easily as possible and -- Well, that's what I thought.

THE COURT: So even though you had indications in

early May --

MS. MOLLIGAN: No, I wouldn't -- I'm not -- I wasn't prepared to address that aspect. And again, the initial thing that I learned was -- and I learned it after the fact. I did not learn it when he was having initial conversations. I didn't learn it until mid or later that he didn't want any new cases. I did not understand that he was not agreeing to settlements. That was not made clear to me.

THE COURT: Just a moment.

(There is a pause in the proceedings.)

THE COURT: I received the photographs. When were these taken?

MS. MOLLIGAN: I don't know what photographs you're referring to.

THE COURT: I received two photographs that were referred to in the defendant's briefing.

MS. MOLLIGAN: Oh, okay.

THE COURT: When were those taken?

MS. MOLLIGAN: Those are the initial visit photos. They were actually taken on -- when Mr. Slevin originally went to the property.

THE COURT: Which was when?

MS. MOLLIGAN: I don't have that information. I'm having trouble with this computer. But I can pull it up. It's in the complaint.

MR. ARMSTRONG: Your Honor, paragraph 11 of the complaint states that "On or about November of 2022, I attempted to but was deterred from patronizing and/or gaining equal access."

THE COURT: All right. Before we move on to that topic, is there anything further from the defense on the issue that we were discussing, which was the response to the Request for Admission No. 13?

MR. ARMSTRONG: No, Your Honor, other than that it's our position that request for admission -- the request for admissions have been admitted. However, even if the Court were to not accept those admissions, I believe the undisputed photographic evidence indicates that the contents of those admissions are not reasonably in dispute. They were drafted based on and following the receipt of those photographs, indicating that the allegations made in the complaint and then relied upon during the course of this litigation were not supported by fact.

THE COURT: Let me ask, Mr. Mehrens, have you seen these photos?

MR. MEHRENS: Yes, I have.

THE COURT: Okay. I believe they should be in the record. Do you have any objection to that?

MR. MEHRENS: No.

THE COURT: Could you file those, please.

MR. ARMSTRONG: Yes, Your Honor.

THE COURT: So moving on to the issue of whether -- whether the allegations in the complaint were made without a reasonable and competent inquiry, I've seen the photograph of the signage. What else would you like to say about that, Mr. Armstrong, and anything else with respect to that issue?

MR. ARMSTRONG: I think the signage speaks for itself, Your Honor. I think it's clear, it's undisputed. I also think it bears noting what it is now defendant's understanding of the process by which this complaint was drafted and filed, based upon the statements made in the surreply, which seems to indicate and admit that the complaint was drafted -- both the complaint, the amended complaint, and the second amended complaint -- not based on a communication between counsel and Plaintiff Mr. Slevin regarding his experience at the property, the observations he made, his ability or inability to access the interior spaces of the property.

In the surreply, it's described that former counsel or others involved that plaintiff was communicating sent an expert who created an expert report. It's defendant's position that such an expert report is discoverable, was requested in discovery requests that have previously been filed with the Court, and was not produced, but that such an expert report existed, and based off of that, the operative complaint was

drafted and then filed with the court and signed by counsel and is subject to the strictures of Rule 11.

I think it is notable that -- and what's critical here is the positions taken by the party during the course of this litigation, including arguments made before Your Honor with regard to the motion to dismiss, and with regard to discovery requests for a complete site inspection to inspect the interior locations of the property and to access those portions of the property that the complaint alleged that plaintiff tried to and could not access, were based on allegations of fact that had no reasonable basis. In the surreply, Ms. Molligan asserted that plaintiff did access the interior of the property and did make a purchase and had a receipt for it, again something that defense believes was requested and not produced in discovery. No discussion of the discovery requests is contained in the surreply, it's instead --

THE COURT: Let me just stop you there. So you have -- you had asked for discovery related to any purchases that were made inside the property?

MR. ARMSTRONG: I believe that that specific request was not made in that language. Instead, all documents relating to defendant's effort to and attempts to patronize the property, because defense's understanding, based on the plain language of paragraph 11, that he attempted to but was

deterred, did not -- meant that he tried to get in and could not and did not, and yet it's now admitted, oh, he did go inside the property. And it's defense's position that that's directly in contradiction to the position taken during the discovery motions before Your Honor about plaintiff's request for a complete property inspection, and it is -- it is these statements signed by counsel, asserting these facts as true that are the core of the violation, the Rule 11 sanctions.

In our motion we also discuss the compensation scheme and the apparent violations of Oregon Rules of -- and we'll get to those. I'm just focusing on the Rule 11 are what we can read in the complaint, the original, the amended, and the second amended, and what we can see from our eyes and what appears to be acknowledged in the surreply that there was no effort to communicate with plaintiff, with Mr. Slevin, ask him what he encountered and confirm that he encountered these alleged ADA issues and that he was unable to enter the property and that the property had the conditions when he visited that the complaint says it did.

THE COURT: All right. Thank you, Counsel.

All right. Ms. Molligan, as you know, under Rule 11, sanctions can be imposed if the signer of a paper filed it for improper purpose or the paper was frivolous. And for purposes of determining whether it was frivolous, the Court considers whether the complaint is legally or factually baseless from an

objective perspective, or if the attorney has conducted a reasonable and competent inquiry before signing and filing it. And, importantly, the word "objective" is used, not "subjective," which means that carelessness and neglect are not the focus of the inquiry.

So here we have a situation where there's clearly a photograph that shows a blue sign. And the complaint alleges that the sign is faded and unintelligible, in violation of the regulations, and that defendant should install legal handicap signage for the designated accessible parking space.

So was a reasonable and competent inquiry done as to the signage allegation in the complaint before you filed it?

MS. MOLLIGAN: So in this situation, what is now clear to me is that somewhere between the time that the initial person looking at the property looked at it and the time of Mr. Slevin's visit, they put up a new sign.

THE COURT: Who is the initial person that looked at the property?

MS. MOLLIGAN: That would have been one of our -- or one of -- it was probably -- well, someone that is an ADA expert.

THE COURT: Who is that?

MS. MOLLIGAN: In this particular case, I can't remember who that was. I can get that for you.

THE COURT: And when did that person, that expert --

Well, let me ask. When you say "ADA expert," what type of credentials would support the designation that that person is an expert?

MS. MOLLIGAN: I don't -- well, maybe "expert" isn't the right name. And I would need to know which person had actually gone to this particular property, and I just don't have that right now.

But I wanted to stress, too, that before I filed the complaint, I went to the property, and either I just missed it or it was no longer there, but I didn't see the sign. So, again, maybe I missed the sign. It's pretty visible. I know that during the course of the litigation, at one point I went back to the property and there was graffiti all over the sign. So it could be that this property has ongoing issues with the signage, but at the time I filed the complaint, I went and verified on the violations that I could discern.

THE COURT: I'm trying to understand the timeline here. So the complaint alleges that in November of 2022, the plaintiff went to the property.

MS. MOLLIGAN: Yes.

THE COURT: And this photo shows signage that is neither faded nor unintelligible.

MS. MOLLIGAN: Right.

THE COURT: When did your so-called expert go to this property?

MS. MOLLIGAN: I believe within, like, a month before, but I would need to dig in the file for that.

THE COURT: And when did you go to the property?

MS. MOLLIGAN: That would have been -- well, that's how I would start the case, so before issuing the initial demand letter. Gosh, that was, like, August 2023.

THE COURT: So when did you go to the property?

MS. MOLLIGAN: Around August 2023. I can get the exact date for you.

THE COURT: And you're saying that at that time there was no signage?

MS. MOLLIGAN: I'm saying that that -- I can't remember offhand, but I'm sitting there with the draft complaint and presumably looking at that.

THE COURT: So the complaint alleges that the list that's provided is a specific list of unlawful physical barriers, dangerous conditions, and ADA violations which plaintiff experienced.

So why does it matter what you saw later in August of 2023, when the complaint alleges that this is what the plaintiff experienced? And we know that he went to the property in November of 2022, and there's a photograph that shows that the signage was neither faded nor unintelligible.

MS. MOLLIGAN: I'm not sure what you're asking.

THE COURT: The complaint alleges -- there's a list

of purported ADA violations, and before that list, there's a sentence that says, "A specific list of unlawful physical barriers, dangerous conditions, and ADA violations which plaintiff experienced include but are not limited to," and then that list includes the signage. So if you were aware back in November of 2022, when he visited the property, the signage was neither faded nor unintelligible, how can you include in the complaint that this is what plaintiff experienced? It doesn't matter what you saw in August of 2023. What matters is what you alleged in the complaint and signed your name to.

MS. MOLLIGAN: Yes, I understand your question now, and I acknowledge that that was -- I should have caught that.

THE COURT: And then the question is how, objectively speaking, that does not amount to a reasonable and competent inquiry? You have the photograph in front of you and the complaint with the allegations.

MS. MOLLIGAN: I didn't have the photograph in front of me when I was finalizing the complaint. I know that it was a mistake, but the -- in the totality, what I was really looking at was the parking lot and the ramp.

THE COURT: But it doesn't matter what you were looking at. Are you talking about what you were aware that Mr. Slevin experienced at the property?

MS. MOLLIGAN: Yes, yes. But it was clear to me that anyone in a wheelchair going to that property would have

experienced that, and --

THE COURT: Also, too, the complaint alleges that plaintiff was unable to access and assess all areas of the subject premises due to the architectural barriers encountered.

Was Mr. Slevin able to enter the business or businesses that were located there, and did he make a purchase from those properties?

MS. MOLLIGAN: My understanding is that he was able to make a purchase.

Let me go back. I'm -- so at the time -- at the time of the visit, the two properties were La Mota and Teriyaki Town, and what Mr. Slevin provided, and I -- well, La Mota, after his visit and at some point -- and I don't know exactly when -- it stopped operating. And that portion of the property went up for lease, and it's been up for lease ever since.

I want to also point out, though, too, paragraph 12 of the complaint --

THE COURT: Let me ask you again.

MS. MOLLIGAN: Okay.

THE COURT: So did he enter both of these businesses and make purchases there?

MS. MOLLIGAN: I don't know if he made purchases at both properties, but he entered both properties. That's my understanding.

THE COURT: Mr. Mehrens, do you have any information

on this point?

MR. MEHRENS: It is my understanding that he entered the property and made purchases at both, but he's here with us, and I'm happy to have him clarify.

THE PLAINTIFF: Yes. It is my recollection that I was able to enter both of these properties and to make purchases at each, yes.

THE COURT: What were the architectural -- Just a moment. What were the architectural barriers that he encountered?

THE PLAINTIFF: I have no recollection of this particular property and the barriers that were there.

THE COURT: Just a moment.

(There is a pause in the proceedings.)

THE COURT: The complaint alleges that you intended to return to the property; is that correct?

THE PLAINTIFF: That sounds like it could be a correct thing that could have been written in a statement. I did not have any actual -- I had no reason to return to any of those places.

THE COURT: When you say that could have been an accurate statement, what does that mean?

THE PLAINTIFF: That it could have been written -- it could have been written into somewhere that I had been intending to return, but that was -- I did not have any

intention to return. It could have been written on my behalf, but that was never something that I was looking to return and, you know, become a regular at these locations.

THE COURT: All right. Thank you.

Let me ask, Ms. Molligan, are you aware of what the architectural barriers were that are alleged in the complaint?

MS. MOLLIGAN: Yeah, actually. The entrance to La Mota, what I was able to view just through the glass, it's really, really narrow. So anyone in a wheelchair would have a tough time with that, especially if it's a larger chair, a bigger model.

THE COURT: The door to the entrance of --

MS. MOLLIGAN: La Mota.

THE COURT: -- was narrow?

MS. MOLLIGAN: Yeah. It was really skinny.

THE COURT: Narrower than a regular door width?

MS. MOLLIGAN: Again, I couldn't see the entire -- my vision was blocked because it was closed, but it wasn't just that the door was narrow, it was that as soon as you opened that door, there's two walls. So it's -- there's no -- you can't move around if you needed to. You'd have trouble moving your arms. It just seemed like that was a definite barrier.

THE COURT: Was this establishment, was it permanently closed when you went to view it?

MS. MOLLIGAN: It just said for lease. I didn't --

THE COURT: So this was not a business that was occupied when you went to La Mota?

MS. MOLLIGAN: Oh, when I went there? I don't recall on this one.

No -- yeah, that's tough, because I ended up going back to this property a few times. So I'm not sure if it was on that first visit. I know it was on the second one and the third.

The other one, the other architectural barrier had to do with the ramp from the parking lot to the entrance was -- that was a problematic -- it was problematic, in that it was, you know, a little -- it was -- the ramp and something about the front entrance of the restaurant.

THE COURT: What was wrong with the ramp?

MS. MOLLIGAN: I'm trying to get the right language here, because I -- There we go.

So the access aisle and the curb ramp, I don't -- yeah, you know what? I think for the access, it's been so long. I think that the main issue there was for the notice, but also just where the access aisle and the curb ramp on -- I believe there was some sort of, like, pillar around the front door. I'm just having trouble pulling these photos up from when they came back with the repairs. There's some good photos there of that ramp leading up to the front door of the teriyaki restaurant.

THE COURT: I think this illustrates precisely the problem the defendant was having when it filed its motion to dismiss, getting the plaintiff to articulate specifically what the ADA violations were, which it doesn't seem you're able to do even to this day.

MS. MOLLIGAN: At the time of the motion to dismiss, I mean, I'm not sure how to address that. I'm -- I feel that I have addressed those questions. The biggest aspect of difficult access would have been on that La Mota. Now, if they had said at some point, "We're never going to lease out that property, we realize it's so bad that we're never going to lease it out," then that's something we could have negotiated. The biggest issue with the access was the narrow entrance on La Mota. But we never got that far in terms of actually coming to a solution here about this property.

THE COURT: Here's the thing. So you've just said that the biggest issue with the access was the narrow entrance to La Mota. But the complaint has a very lengthy list of other ADA violations.

MS. MOLLIGAN: Right.

THE COURT: I'm asking what those were.

MS. MOLLIGAN: Do you want me to go through them? I'm confused.

THE COURT: The question here is whether you conducted a reasonable and competent inquiry before signing

your name to the complaint. And the defendant is saying that this is a boilerplate generic laundry list of ADA violations, that when it came to the Court and asked for more specific information as to how it had violated the ADA -- that it had to come to the Court to ask for more specific information as to what these ADA violations were. And I just asked you what were the architectural barriers and also what were the other ADA violations with respect to these businesses.

MS. MOLLIGAN: I'm sorry, the architectural barrier would have been the narrow entrance to La Mota.

THE COURT: I got that. And you've just said that that was the biggest issue with access. But the complaint lists a number of ADA violations.

MS. MOLLIGAN: I said that was the main issue. I'm sorry, that was the architectural barrier. I think -- I wanted to stress that the main issue was the parking lot, the fact that the parking space was uneven, the ramp -- the -- it was too narrow for a van originally. Those were the primary -- those were some of the violations.

In doing the complaint, I found it reasonable to list all of the violations. Now, what has happened in -- sometimes a business is not feasible to do certain things. For example, the entryway at La Mota is possibly not feasible to fix, but other things were fixable. Defense could have worked with me a little before doing the motion to dismiss, but pretty much the

entire time they just denied that there was anything wrong with the property.

THE COURT: Let me ask you, one of the photographs that were sent is a picture of Mr. Slevin in front of the entrance to La Mota. There's a metal gate and then there's an interior door and there are two walls. Is that what you are saying was the biggest issue with the entrance to the property?

MS. MOLLIGAN: That's my recollection.

THE COURT: What specific provision of the ADA regulations does that entrance violate?

MS. MOLLIGAN: That would have been -- I -- yeah. So there's probably more once you get in there.

THE COURT: I'm not asking about that.

MS. MOLLIGAN: Right, right, right.

THE COURT: Looking at the picture, I'm asking you which regulation that violates.

MS. MOLLIGAN: I'm trying -- that I don't have. That I don't have.

THE COURT: All right. Before we move on to another topic, Mr. Armstrong, anything you would like to say in response?

MR. ARMSTRONG: I think the Court has identified the issues clearly and plainly. I would just reiterate that the alleged issue with the width of the door of La Mota does not exist and is not alleged in either of the three operative

complaints, and today is the first time defendant is learning that that was the main issue being alleged against it. And it is -- the defendant, as always, is responding to the plaintiff's allegations, and is entitled to know what is being brought against it and alleged against it.

I would also point out that regardless of the knowledge when the first complaint was filed regarding the upright signage, just as an example, the same allegation is contained in the initial complaint filed in September of 2023, the amended complaint filed in December of 2023, and the second amended complaint filed in February of 2024.

THE COURT: All right. Mr. Mehrens, anything you would like to add?

MR. MEHRENS: Not at this time, Your Honor.

THE COURT: All right. Just want to make sure you were given an opportunity.

All right. Let's move on to the issue of the stipulated dismissal. Let me ask, Ms. Molligan, when you received -- Let me restate that.

When did you see that an email had arrived from opposing counsel?

MS. MOLLIGAN: Your Honor, could I just address the issue about the barriers complained of in the complaint?

THE COURT: Sure.

MS. MOLLIGAN: All right. So paragraph 28 is --

THE COURT: Which complaint?

MS. MOLLIGAN: Of -- let's see here. It should be all of them. In other words -- sorry. I just want to make sure.

It should be the second amended -- the final complaint filed. Yeah. So rather -- it just simply states that there are violations and that a complete list would require an on-site inspection. And so in certain situations for certain properties such as this one, we would have needed a full inspection to do that. That's not always necessary. We didn't get to that point. But sometimes it is, just depending on the responses that I got from defendant about the property and what they had done.

I want to point out, too, this is a situation where we -- I sent a demand letter to the property on -- and then there wasn't -- we weren't able to come to a resolution. I filed the complaint, and then those pictures were sent. "You don't have a case anymore because once you've alerted us to the violation, we went and did all these remediations, and so you don't have a case."

And our position -- my position all along was that that's not true. You showed that you disregarded the ADA. That was one of the times I went, and there was a car parked in the access aisle and graffiti all over the signs.

So this complaint, obviously not completely perfect,

but it certainly gave defendant notice of the fact that it was ADA noncompliant. The fact that it went and closed La Mota, it knew that there were problems there.

THE COURT: The issue is not really whether it gave defendant notice. That is more applicable to perhaps a Rule 12(b)(6) motion. The issue is whether you conducted a reasonable and competent inquiry.

And you cited to paragraph 28, which states, "Plaintiff intends to visit the subject property again in the near future as a patron."

Did you ask Mr. Slevin if he intended to visit the property again in the near future?

MS. MOLLIGAN: No. My understanding was that I never had to do that, that that part of his arrangement with Wade and Wampler, Carroll, a lot of people referred to, was that that was hers, the part of being tester and an advocate, was that he would return. So that is why it's in the complaint.

THE COURT: Is this agreement part of the record in this case?

MS. MOLLIGAN: I think so.

MR. ARMSTRONG: I do not believe it has been filed in this case, Your Honor. It was submitted in *Baek*, and the pleadings in this case referenced the -- what occurred in open court in that case.

Defendant can file it on the Court's request.

THE COURT: Please do so.

Is that included in the fee agreement that Mr. Slevin had with the other law firm?

MS. MOLLIGAN: I would have to review everything that Mr. Slevin ever signed with the other law firm to be -- to answer that question.

THE COURT: Let me ask Mr. Mehrens, do you have any information on that point?

MR. MEHRENS: I have the agreement in front of me. I don't recall seeing a specific provision in there, but it might be in there. I can read it right now, so --

THE COURT: Does your client recall if he had an agreement with the other law firm, as Ms. Molligan has just described?

MR. MEHRENS: An agreement generally or an agreement specifically to return to the property a second time?

THE COURT: Ms. Molligan, I believe you said that your understanding was that the plaintiff had an agreement with the other law firm. What was that agreement specifically with respect to the intention to return?

MS. MOLLIGAN: That there would be an -- that they would return to the property at some point, that it was -- that it was near to them, that it was feasible that they would run into it. Sandy, that's a big -- but at some point, they would return.

THE COURT: Mr. Mehrens, does your client have that same recollection?

MR. MEHRENS: Mr. Slevin, did you understand that question?

THE PLAINTIFF: I do, yes.

MR. MEHRENS: Do you have that recollection?

THE PLAINTIFF: There was -- it's not my recollection that there was ever a part of any conversation or anything that I had signed that had anything to do with revisiting the properties.

THE COURT: Okay. I'll take a look at that fee agreement, which I've looked at before, but I can't recall what it says specifically.

All right. Then let me just ask the court reporter if we're all right to continue.

THE COURT REPORTER: (Nods head.)

THE COURT: So we're on to the stipulated dismissal, and my question to Ms. Molligan was when you saw that an email had arrived from opposing counsel.

MS. MOLLIGAN: When did I see the email? I'm sorry, regarding what?

THE COURT: Regarding the stipulated dismissal. When did you see that an email had arrived -- when did you see that the July 8th, 2024 email from Nicky Blumm had arrived in your inbox?

MS. MOLLIGAN: Oh, that's the one telling me not to file?

THE COURT: Correct.

MS. MOLLIGAN: Okay. I saw that right after I filed, literally.

THE COURT: Did you see the email had arrived in your inbox before you filed it or after?

MS. MOLLIGAN: No. So I have my laptop here and I have my desktop here (indicating), and so the laptop is sitting there, and I was doing filings. And I finished my filing, turned, there's the email and, you know, reload it, open the email page, and there was an email. And I believe I read it, like -- well, I did, I read it right away.

THE COURT: All right. Mr. Armstrong, anything further on that issue?

MR. ARMSTRONG: Nothing further, Your Honor. The time stamps of all relevant actions speak for themselves.

THE COURT: Let me ask Ms. Molligan, the agreement was -- Just a moment.

On July 3rd, 2024, Ms. Blumm sent you an email that says, "My client consents to filing the dismissal."

Why is it that it took you five days to file it?

MS. MOLLIGAN: I was swamped. There was no ulterior motive there. It was July 4th. Yeah, I was swamped.

THE COURT: Just a moment.

Oh, I'm sorry. Apparently it's Mr. Blumm.

MR. ARMSTRONG: Yes, Your Honor.

THE COURT: One moment, please.

I'd like to turn to the Oregon Rules of Professional Conduct. Let's turn to an observation that Judge Crenshaw made in Tennessee. That, as everyone knows, is where the Wampler firm is located and where a large number of other cases have been filed.

He cautioned that an attorney is prohibited under similar Tennessee Rules of Professional Conduct from entering into a business transaction with a client, and providing financial assistance to a client in connection with pending or contemplated litigation.

Oregon rules similarly prohibit such conduct.

Let me ask, Ms. Molligan, how is it that Mr. Slevin was not provided financial assistance in connection with the pending or contemplated litigation?

MS. MOLLIGAN: I'm not sure I understand your question.

THE COURT: He was given $200 as what he characterized was to start the case.

Actually, I've never asked Mr. Mehrens, but did he spend more than $200 at these locations that day?

MR. MEHRENS: I would ask Mr. Slevin to answer that. I'm not sure how much he actually spent.

THE PLAINTIFF: I have never spent over $200 or close to $200 at any location I've visited.

THE COURT: So in light of that information, Ms. Molligan, how is it that you or the Wampler firm did not provide financial assistance to a client in connection with pending or contemplated litigation?

MS. MOLLIGAN: I see. The $200 was designed to reimburse Mr. Slevin and other clients with their expenses, but also to compensate for their transportation costs, if they needed to make special arrangements for their caretaker in some situations. It was a guess, an estimate of, okay, you're traveling this much, you're doing this bus, maybe you're having to -- some of these locations, maybe you're getting a massage that's going to be $100. Also, the expectation that at some point you're going to return. All of that was incorporated in this estimate of $200. That was to go to a property identified as not ADA compliant, so one way to phrase it, to start the process. But whether or not that visit resulted in a lawsuit or anything else, that never changed. In other words, it's not, like, the more I worked on this case, the more money that Mr. Slevin would get. It's not, like, you know, if the property said, as many did, "Look, we're going to do what we can, but we can't afford much," it's not, like, we went to Slevin and said, "Hey, we need some of that back." It was not in any way correlated or contingent upon the case. It was

designed simply to reimburse for reasonably anticipated expenses.

THE COURT: Did you mention earlier that Mr. Slevin lived near this property?

MS. MOLLIGAN: At one time, yes. He lived, like, on Seventh, I believe is his address.

THE COURT: You don't have to disclose his address.

MS. MOLLIGAN: Oh, I'm sorry.

THE COURT: But he lived near this property? That's your recollection?

MS. MOLLIGAN: Within 30 miles, but that's what I was getting at was my recollection was that it was closer.

THE COURT: Also you mentioned a massage at the value of $100, but my recollection was that Mr. Burley-Beavers mentioned that he had paid for a massage that was $40.

MS. MOLLIGAN: Oh, I don't recall the exact number of what his particular massage was.

THE COURT: I recall he stated that he paid $40 for the massage, and also bought a snack --

MS. MOLLIGAN: Okay.

THE COURT: -- from one of the stores, and that as Mr. Slevin has just described, that the expenses did not come close to $200.

MS. MOLLIGAN: I don't know that Mr. Slevin is taking into account -- I don't want to dispute what he's saying about

his particular experiences. I'm just trying to answer your question.

THE COURT: On this point, there's also a separate ethical issue, but on this point is there anything that the defense would like to say?

MR. ARMSTRONG: I think Your Honor fully understands the nature of this transaction, that it's defense's position that the distinction that is attempting to be made, that because Mr. Slevin was not, as part of this agreement, as part of this business relationship, because Mr. Slevin was not entitled to a share of attorney fees recovered as part of a litigation, it does not violate ORCP 1.8 -- or ORPC 1.8 as a business transaction, and it's defense's position that that's not the issue. There's a business relationship. There's a business transaction with this client whereby the law firm provides financial assistance, a payment to go to businesses that have been targeted, and that the -- and that have been identified, and the exchange -- in exchange for $200, Mr. Slevin would allow his name and identity to be used as the plaintiff. It's our position that that violates ORPC 1.8, and the lack of any effort to distinguish, to reimburse expenses after they've been accrued shows the potential for Mr. Slevin to profit by visiting these places for less than $200 per.

THE COURT: Let me ask, Ms. Molligan, has there been a bar inquiry into this conduct?

MS. MOLLIGAN: Yes, Your Honor.

THE COURT: What is the status of that? And the reason I ask is not to pile on, but because this Court is being asked to interpret the Rules of Professional Conduct, the bar is presumably doing its own interpretation of those rules.

What is status of those proceedings?

MS. MOLLIGAN: Your Honor, it's in the investigative. In other words, I have just submitted -- this last week I submitted my response to their inquiries.

THE COURT: All right. Thank you.

The other issue raised by the defense has to do with the fee agreement or the retainer agreement. The defense argues that this violates ORPC 1.2 and 1.4.

I'll turn first to Ms. Molligan and ask for your response. I did read what you read in your responsive papers, so I think I understand what your argument is, but I'd like to give you an opportunity to say anything else you would like on that point.

MS. MOLLIGAN: The only area that I would add to is that -- is just to stress here that we really did rely on the portal quite a bit, and --

THE COURT: You say we really relied on the portal. Who is "we" and what is "the portal"?

MS. MOLLIGAN: Well, we -- I originally -- I thought it meant me and Mr. Slevin, but it could mean -- it would mean

me and Mr. Slevin, my other clients, and then the folks in Tennessee.

THE COURT: And what is the portal and why is that significant?

MS. MOLLIGAN: That is where all of the -- all of the cases are. In other words, it's the case management system, and so everybody can, once you log in, you click on the case, and you can see what stage it's at, what's happening with it, is there, you know -- you can see everything really as long as things are being uploaded. A settlement agreement, if that was done without getting the actual signature, a lot of the settlement agreements, it was that on -- they wanted an actual signature. In fact, one of the reasons why my -- the Tennessee firm moved to a system where we were signing on behalf of our clients was because we wanted to make things easier and less time-consuming, and again, just -- yeah, wanting to stress that we considered this working with our clients. I considered this. I was working with Mr. Slevin, and able to get what he wanted done done.

THE COURT: Let me ask how would you know what he wanted to get done done if you had a blanket agreement with him that you controlled all aspects of the litigation and settlement on his behalf?

MS. MOLLIGAN: That there would be repairs made. So, for example, in this situation -- Well, this isn't a good

situation, but that the ADA violations would be addressed.

THE COURT: All right. Thank you.

Counsel.

MR. ARMSTRONG: Well, in response to that, that raises additional issues with regard to the out-of-state practice of law by the Tennessee firm. I do not know what the portal is. I do not know the process by which communications are passed between Ms. Molligan, the Tennessee firm, through this portal and to Mr. Slevin. We do not know whether the Tennessee firm is communicating with Mr. Slevin with regard to his legal rights, responsibilities, and positions taken in Oregon court and providing him advice and legal counsel regarding his rights under Oregon law and practicing in Oregon court.

Aside from those issues, the explanation --

THE COURT: Can I just on that point just add in the Burley-Beavers hearing, I believe Mr. Burley-Beavers mentioned that he had relied on the advice of out-of-state counsel for -- in filing his IFP petition.

MR. ARMSTRONG: Then I would echo those concerns. I would also echo the concerns as I understand Mr. Slevin's experience that he responded and retained the Walker firm in response to a Facebook advertisement and entered into these agreements primarily through them. And I think that the discussion of the relationship and the interests of parties for

engaging in settlement and executing settlement agreements cuts kind of to the heart of the arguments made with regard to the Rule 11 sanctions, that the ownership of the lawsuit is the litigant's. This is a lawsuit filed by Mr. Slevin against AB Hollywood. The decision to continue it, the decision regarding what issues Mr. Slevin found objectionable, his experience when he visited the property and the allegations that he wanted to make and whether his interests he felt were satisfied, that's the heart of this litigation, and the parties who engage in litigation, appear before the Court and try to solve these issues, are entitled to rely on that representation. And to understand that that has been subverted by this process by which Mr. Slevin is paid to appear, and then a lawsuit is filed, the contents of those allegations are made without regard to his experience, and then negotiations are or are not entered into, disagreements about factual allegations are made without reference to Mr. Slevin and what Mr. Slevin might want, what Mr. Slevin might know, what Mr. Slevin might appear changes the heart of what litigation is and what the parties are entitled to rely on.

In this case my client, AB Hollywood, was sued and tried to defend itself from the lawsuit it believed Mr. Slevin had directed against it. And only when, after filing motions to dismiss, seeking clarification regarding the allegations against it, arguing about the scope of a full property

inspection, which was argued and entered into under the understanding that Mr. Slevin had tried to get into the property, had been unable to, wanted these issues in the parking lot addressed so he could get into the property and he did not know what was in there, so he needed the full inspection, only after all of that, when AB Hollywood said, I want -- we need his signature for him to affirm that this is what he wants and he's in agreement and he signs off, to find out that oh, he's not being consulted, is -- I think it provides context and needed understanding for the basis for the rest of the motion. And that's defendant's position with regard to that.

With regard to how Mr. Slevin and Ms. Molligan interacted, and their current disputes, AB Hollywood takes no position on that, but the reason that that rule of professional conduct protects not only Slevin, Mr. Slevin, but protects all parties who engage in the emotionally and financially taxing experience of litigation in federal court.

Thank you, Your Honor.

THE COURT: All right. Thank you, Counsel.

Ms. Molligan, any response?

MS. MOLLIGAN: Your Honor -- No.

THE COURT: All right. Mr. Mehrens, I'd like to give you an opportunity if there's anything you would like to add.

MR. MEHRENS: Not at this time, Your Honor. Thank

you.

THE COURT: All right. I have no further questions, and I think we've covered the points at issue in the motion.

I thank you for your time today. We'll be adjourned.

MR. ARMSTRONG: Thank you, Your Honor.

MR. MEHRENS: Thank you, Your Honor.

MR. ARMSTRONG: I'd like to confirm my office will file the photos and the agreement.

THE COURT: Thank you very much.

(Proceedings concluded at 12:39 p.m.)

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause. A transcript without an original signature or conformed signature is not certified.

*/s/Bonita J. Shumway* *November 18, 2024*

BONITA J. SHUMWAY, CSR, RMR, CRR DATE
Official Court Reporter

**MR. ARMSTRONG: [27]** 3/15 8/7 8/11 8/15 8/19 9/22 10/7 10/14 10/16 11/4 11/16 12/1 12/5 16/1 16/9 17/1 17/7 18/21 30/22 33/21 36/16 37/2 40/6 43/4 43/20 46/5 46/7
**MR. MEHRENS: [12]** 3/12 16/21 16/24 25/2 31/14 34/9 34/15 35/3 35/6 37/24 45/25 46/6
**MS. MOLLIGAN: [75]**
**THE COURT: [122]**
**THE COURTROOM DEPUTY: [2]** 3/4 4/5
**THE PLAINTIFF: [12]** 3/22 3/25 4/3 4/10 4/13 25/5 25/11 25/17 25/23 35/5 35/7 38/1

**$**

**$100 [2]** 38/14 39/14
**$200 [12]** 6/1 6/11 6/19 37/20 37/23 38/1 38/2 38/7 38/16 39/23 40/18 40/23
**$40 [2]** 39/15 39/18
**$8,000 [4]** 9/13 9/14 9/16 9/19

**-**

**--o0o [1]** 47/2

**/**

**/s/Bonita [1]** 47/9

**1**

**1.2 [1]** 41/13
**1.4 [1]** 41/13
**1.5 [1]** 9/19
**1.8 [3]** 40/12 40/12 40/20
**1000 [1]** 2/18
**11 [12]** 4/15 5/4 5/16 6/6 7/14 16/1 18/2 18/25 19/8 19/11 19/21 44/3
**11:06 [1]** 3/2
**12 [5]** 1/6 3/2 5/15 24/16 33/6
**12:39 [1]** 46/10
**13 [3]** 10/6 10/22 16/8
**16893 [1]** 2/13
**18 [1]** 47/9
**19th [1]** 13/1

**2**

**2022 [4]** 16/2 21/18 22/22 23/6
**2023 [6]** 22/6 22/8 22/20 23/9 31/9 31/10
**2024 [8]** 1/6 3/2 5/1 11/18 31/11 35/24 36/20 47/9
**24th [1]** 5/1
**28 [2]** 31/25 33/8
**29th [1]** 11/18

**3**

**30 miles [1]** 39/11
**301 [1]** 2/18
**326-8188 [1]** 2/19
**3918 [1]** 2/5
**3:23-Civil-1404-YY [1]** 3/5
**3:23-cv-01404-YY [1]** 1/4
**3rd [1]** 36/20

**4**

**4th [4]** 11/22 12/2 14/18 36/24

**5**

**503 [1]** 2/19

**8**

**8188 [1]** 2/19
**888 [1]** 2/9
**8th [1]** 35/24

**9**

**900 [1]** 2/9
**97204 [2]** 2/9 2/18
**97212 [1]** 2/5
**97292 [1]** 2/13

**A**

**a.m [1]** 3/2
**AB [8]** 1/6 3/6 3/16 4/15 44/4 44/21 45/6 45/14
**ability [1]** 17/17
**able [9]** 9/6 12/25 24/5 24/8 25/6 26/8 28/4 32/16 42/18
**about [14]** 13/12 14/15 16/2 17/5 19/5 23/22 27/12 28/15 30/13 31/23 32/12 39/25 44/16 44/25
**above [1]** 47/6
**above-entitled [1]** 47/6
**accept [1]** 16/12
**access [15]** 12/25 16/4 17/17 18/8 18/10 18/12 24/3 27/17 27/18 27/20 28/9 28/13 28/17 29/12 32/24
**accessible [1]** 20/10
**accompanying [1]** 6/14
**account [1]** 39/25
**accrued [2]** 9/3 40/22
**accurate [1]** 25/22
**acknowledge [2]** 11/6 23/12
**acknowledged [1]** 19/14
**actions [1]** 36/17
**actual [4]** 13/16 25/19 42/11 42/12
**actually [10]** 3/9 6/19 8/1 13/2 15/20 21/6 26/7 28/14 37/22 37/25
**ADA [19]** 5/8 19/17 20/20 21/1 22/17 23/1 23/3 28/4 28/19 29/2 29/4 29/6 29/7 29/13 30/9 32/22 33/2 38/17 43/1
**add [5]** 10/20 31/13 41/19 43/16 45/24
**additional [1]** 43/5
**address [6]** 13/6 15/3 28/7 31/22 39/6 39/7
**addressed [3]** 28/8 43/1 45/4
**addressing [2]** 9/13 9/15
**adjourned [1]** 46/4
**admission [13]** 10/5 10/9 10/11 10/22 10/24 11/5 11/8 11/12 12/4 12/13 13/1 16/8 16/10
**admissions [4]** 11/17 16/11 16/12 16/14
**admit [1]** 17/12
**admitted [2]** 16/11 19/2
**advertisement [1]** 43/23
**advice [2]** 43/12 43/18
**advocate [1]** 33/16
**affirm [1]** 45/7
**afford [1]** 38/23
**after [13]** 8/3 10/24 11/15 12/4 12/20 13/8 15/4 24/13 36/4 36/7 40/22 44/23 45/6
**again [11]** 6/23 14/3 14/12 15/3 18/14 21/11 24/18 26/17 33/9 33/12 42/16
**against [8]** 5/10 9/11 31/2 31/5 31/5 44/4 44/23 44/25
**agree [2]** 12/6 14/19
**agreed [2]** 10/25 11/22
**agreeing [1]** 15/7
**agreement [26]** 11/6 11/10 12/7 12/9 12/18 12/19 12/22 13/19 14/8 33/18 34/2 34/9 34/13 34/15 34/15 34/18 34/19 35/12 36/18 40/9 41/12 41/12 42/10 42/21 45/8 46/8
**agreements [3]** 42/12 43/24 44/1
**aides [1]** 6/13
**aisle [3]** 27/17 27/20 32/24
**alerted [1]** 32/18
**all [43]** 3/19 4/14 4/17 6/4 8/4 8/4 9/20 10/1 10/17 11/3 12/23 16/5 18/22 19/20 19/21 21/13 24/3 26/4 29/21 30/19 31/12 31/15 31/17 31/25 32/3 32/19 32/21 32/24 35/14 35/15 36/14 36/17 38/15 41/10 42/5 42/5 42/22 43/2 45/6 45/16 45/20 45/23 46/2
**allegation [2]** 20/12 31/8
**allegations [13]** 5/3 5/9 7/21 14/15 16/16 17/3 18/11 23/16 31/4 44/7 44/14 44/16 44/24
**alleged [8]** 18/9 19/17 23/10 26/6 30/24 30/25 31/2 31/5
**alleges [7]** 20/7 21/18 22/15 22/20 22/25 24/2 25/15
**alleging [1]** 5/7
**allow [1]** 40/19
**allowed [1]** 8/11
**along [1]** 32/21
**already [3]** 4/25 5/19 10/23
**also [29]** 2/12 4/1 5/11 5/18 6/9 6/11 7/15 7/18 8/25 9/2 9/7 9/23 10/2 10/17 13/4 13/18 17/9 19/9 24/2 24/16 27/20 29/7 31/6 38/9 38/14 39/13 39/19 40/3 43/21
**always [2]** 31/3 32/10
**am [2]** 3/22 10/6
**amended [7]** 17/13 17/14 19/12 19/13 31/10 31/11 32/5
**amount [1]** 23/14
**another [2]** 8/22 30/19
**answer [3]** 34/6 37/24 40/1
**anticipated [1]** 39/1
**any [25]** 4/11 4/11 5/2 6/14 8/9 9/21 11/12 12/3 12/11 12/22 12/24 13/18 15/6 16/23 18/19 24/25 25/19 25/19 25/25 34/7 35/8 38/2 38/25 40/21 45/21
**anymore [3]** 14/7 14/17 32/18
**anyone [2]** 23/25 26/9
**anything [17]** 9/15 13/7 13/11 13/18 14/17 16/6 17/6 30/1 30/20 31/12 35/8 35/9 36/14 38/19 40/4 41/17 45/24
**apparent [1]** 19/10
**Apparently [1]** 37/1
**appear [3]** 44/10 44/13 44/18

**A**

**appearances [3]** 2/2 3/8 4/8
**appears [1]** 19/14
**applicable [1]** 33/5
**application [2]** 5/24 6/5
**architectural [8]** 24/4 25/8 25/9 26/6 27/9 29/7 29/9 29/15
**are [33]** 3/21 4/7 4/14 4/21 4/22 7/15 8/5 9/5 10/7 11/1 12/15 13/12 15/19 16/14 19/8 19/11 20/4 23/4 23/22 26/5 26/6 30/6 30/6 32/7 42/6 42/10 43/8 44/11 44/14 44/15 44/15 44/16 44/20
**area [1]** 41/19
**areas [1]** 24/3
**argued [1]** 45/1
**argues [1]** 41/13
**arguing [2]** 5/9 44/25
**argument [2]** 9/25 41/16
**arguments [2]** 18/5 44/2
**arms [1]** 26/22
**Armstrong [7]** 2/8 3/15 10/4 11/3 17/6 30/20 36/14
**around [3]** 22/8 26/21 27/21
**arrangement [1]** 33/14
**arrangements [1]** 38/10
**arrive [1]** 10/3
**arrived [5]** 31/20 35/19 35/23 35/24 36/6
**articulate [1]** 28/3
**as [35]** 3/23 4/9 4/14 5/12 5/25 7/13 14/13 14/23 14/23 14/23 19/7 19/21 20/11 26/19 26/19 29/4 29/5 31/3 31/8 32/9 33/10 34/13 37/6 37/20 38/17 38/22 39/21 40/9 40/9 40/11 40/12 40/19 42/9 42/9 43/21
**Aside [1]** 43/15
**ask [22]** 3/20 8/22 10/4 10/8 16/19 19/15 21/1 24/18 26/5 29/5 30/3 31/18 33/11 34/7 35/14 36/18 37/15 37/24 40/24 41/3 41/14 42/20
**asked [8]** 10/2 12/11 12/12 18/19 29/3 29/6 37/22 41/4
**asking [4]** 22/24 28/21 30/13 30/15
**aspect [2]** 15/3 28/8
**aspects [1]** 42/22
**asserted [1]** 18/12
**asserting [1]** 19/7
**assess [1]** 24/3
**assigned [2]** 14/5 14/10
**assistance [4]** 37/12 37/16 38/5 40/16
**assistant [2]** 9/22 9/25
**associate [1]** 11/22
**assumed [1]** 14/22
**attacks [1]** 9/11
**attempted [3]** 9/16 16/3 18/25
**attempting [1]** 40/8
**attempts [1]** 18/23
**attorney [7]** 2/4 2/12 7/19 7/20 20/1 37/9 40/11
**attorney's [1]** 10/18
**attorneys [1]** 4/2
**August [4]** 22/6 22/8 22/19 23/9
**August 2023 [2]** 22/6 22/8
**authorized [1]** 14/22
**Avenue [3]** 2/5 2/9 2/18
**aware [3]** 23/5 23/22 26/5
**away [1]** 36/13

**B**

**B.J [1]** 13/15
**back [8]** 7/22 8/3 21/13 23/5 24/10 27/6 27/23 38/24
**bad [1]** 28/11
**Baek [2]** 6/25 33/22
**bar [2]** 40/25 41/4
**barrier [4]** 26/22 27/9 29/9 29/15
**barriers [8]** 22/17 23/3 24/4 25/9 25/12 26/6 29/7 31/23
**based [9]** 5/2 11/17 11/19 16/15 17/11 17/14 17/25 18/10 18/24
**baseless [1]** 19/25
**basis [2]** 18/11 45/10
**be [24]** 4/1 8/19 9/6 11/9 12/4 12/5 12/21 14/8 16/22 19/14 19/22 21/14 25/17 32/2 32/5 34/5 34/11 34/21 38/14 40/8 40/19 42/24 43/1 46/4
**bears [1]** 17/9
**Beavers [6]** 5/22 6/1 6/18 39/14 43/17 43/17
**Beavers' [2]** 5/23 5/24
**became [1]** 13/17
**because [13]** 5/6 7/20 7/24 14/21 18/24 26/18 27/5 27/16 32/18 40/9 40/10 41/3 42/15
**become [1]** 26/3
**been [31]** 4/17 6/21 8/2 9/8 13/1 13/8 14/8 14/16 16/11 17/23 20/19 22/4 24/15 25/18 25/21 25/23 25/24 25/24 26/1 27/18 28/9 29/10 30/11 33/21 37/8 40/17 40/17 40/22 40/24 44/12 45/3
**before [20]** 1/17 5/4 5/12 6/7 10/2 16/5 18/5 19/5 20/2 20/12 21/8 22/2 22/5 23/1 28/25 29/25 30/19 35/12 36/7 44/10
**Beginning [1]** 3/7
**behalf [3]** 26/1 42/14 42/23
**being [10]** 6/25 8/4 14/5 14/10 31/2 31/4 33/16 41/3 42/10 45/9
**believe [13]** 4/5 4/21 9/6 16/12 16/22 18/21 22/1 27/21 33/21 34/17 36/12 39/6 43/17
**believed [1]** 44/22
**believes [1]** 18/14
**below [1]** 47/4
**better [1]** 9/10
**between [3]** 17/15 20/14 43/8
**big [1]** 34/24
**bigger [1]** 26/11
**biggest [5]** 28/8 28/13 28/17 29/12 30/7
**Bisgaard [1]** 2/8
**bit [1]** 41/21
**blanket [1]** 42/21
**blocked [1]** 26/18
**blue [1]** 20/7
**Blumm [3]** 35/24 36/20 37/1
**boilerplate [1]** 29/2
**bonita [4]** 2/17 2/19 47/9 47/10
**bootstrap [1]** 9/23
**both [6]** 17/13 24/20 24/23 24/23 25/3 25/6
**bought [1]** 39/19
**Box [1]** 2/13
**brief [1]** 9/2
**briefing [1]** 15/16
**bringing [1]** 14/15
**Brisbois [1]** 2/8
**brought [2]** 5/6 31/5
**Burley [8]** 5/22 5/23 5/24 6/1 6/18 39/14 43/17 43/17
**Burley-Beavers [2]** 5/22 43/17
**Burley-Beavers' [1]** 5/23
**bus [1]** 38/12
**business [8]** 24/5 27/1 29/22 37/11 40/10 40/13 40/14 40/15
**businesses [4]** 24/6 24/20 29/8 40/16

**C**

**calculated [1]** 6/2
**called [1]** 21/24
**came [3]** 7/2 27/23 29/3
**can [25]** 3/23 3/23 3/25 4/2 4/5 8/8 8/9 8/13 10/15 13/4 13/20 15/24 19/11 19/13 19/22 20/24 22/8 23/7 33/25 34/11 38/23 42/7 42/8 42/9 43/16
**can't [6]** 13/23 20/23 22/12 26/21 35/12 38/23
**cannot [1]** 4/3
**car [1]** 32/23
**careful [1]** 6/8
**carelessness [1]** 20/4
**caretaker [1]** 38/10
**caretakers [1]** 6/13
**caretakers/aides [1]** 6/13
**Carroll [2]** 7/10 33/15
**case [31]** 1/4 3/5 5/13 5/20 6/3 6/8 6/16 6/16 9/24 10/23 11/5 11/24 12/21 13/21 14/2 14/3 14/7 20/23 22/5 32/18 32/20 33/19 33/22 33/23 33/24 37/21 38/20 38/25 42/6 42/7 44/21
**cases [3]** 15/7 37/7 42/6
**caught [1]** 23/12
**cause [1]** 47/6
**caution [1]** 7/23
**cautioned [1]** 37/9
**cell [1]** 8/11
**certain [3]** 29/22 32/8 32/9
**certainly [1]** 33/1
**certified [1]** 47/7
**certify [1]** 47/4
**chair [1]** 26/10
**changed [1]** 38/19
**changes [1]** 44/19
**characterized [1]** 37/21
**check [2]** 4/4 8/23
**cite [1]** 10/5
**cited [2]** 9/1 33/8
**Civil [1]** 3/5
**clarification [4]** 4/20 10/5 12/13 44/24
**clarify [5]** 5/1 6/17 7/12 7/14 25/4
**clear [5]** 13/17 15/8 17/8 20/14 23/24
**clearly [2]** 20/6 30/23
**click [1]** 42/7
**client [9]** 13/20 34/12 35/1 36/21 37/11 37/12 38/5 40/15 44/21
**clients [4]** 38/8 42/1 42/15 42/17
**close [2]** 38/1 39/23

## C

**closed [3]** 26/18 26/24 33/2
**closer [1]** 39/12
**come [3]** 29/5 32/16 39/22
**coming [1]** 28/14
**communicate [1]** 19/15
**communicating [2]** 17/20 43/10
**communication [3]** 12/14 12/21 17/14
**communications [3]** 13/13 13/15 43/7
**company [1]** 1/6
**compensate [1]** 38/9
**compensated [1]** 6/25
**compensation [1]** 19/9
**competent [6]** 17/4 20/2 20/11 23/14 28/25 33/7
**complained [1]** 31/23
**complaint [47]** 5/3 5/10 15/25 16/2 16/16 17/3 17/10 17/12 17/13 17/13 17/14 17/25 18/9 19/12 19/19 19/25 20/7 20/12 21/9 21/15 21/18 22/14 22/15 22/20 22/25 23/8 23/10 23/16 23/18 24/2 24/17 25/15 26/6 28/18 29/1 29/12 29/20 31/7 31/9 31/10 31/11 31/23 32/1 32/6 32/17 32/25 33/17
**complaints [1]** 31/1
**complete [3]** 18/7 19/6 32/7
**completely [3]** 5/5 6/6 32/25
**compliance [2]** 9/3 9/4
**compliant [1]** 38/17
**Complies [1]** 8/15
**computer [1]** 15/24
**concerned [1]** 14/14
**concerns [2]** 43/20 43/21
**concluded [1]** 46/10
**conditions [3]** 19/18 22/17 23/3
**conduct [6]** 37/5 37/10 37/14 40/25 41/4 45/16
**conducted [3]** 20/1 28/25 33/6
**confirm [2]** 19/16 46/7
**conformed [1]** 47/7
**confused [1]** 28/23
**connected [1]** 3/19
**connection [3]** 37/12 37/16 38/5
**CONNER [3]** 1/3 3/6 3/13
**consents [1]** 36/21
**considered [2]** 42/17 42/17
**considers [1]** 19/24
**consulted [1]** 45/9
**consuming [1]** 42/16
**contained [2]** 18/16 31/9
**contemplated [3]** 37/13 37/17 38/6
**contents [2]** 16/13 44/14
**context [1]** 45/10
**contingent [1]** 38/25
**continue [2]** 35/15 44/5
**contradiction [1]** 19/4
**controlled [1]** 42/22
**conversation [2]** 11/1 35/8
**conversations [1]** 15/5
**core [1]** 19/8
**correct [10]** 7/5 7/5 7/11 10/6 10/7 10/14 25/16 25/18 36/3 47/5
**correlated [1]** 38/25
**correspondence [1]** 11/20
**costs [1]** 38/9
**could [22]** 5/6 10/1 12/11 12/12 12/13 14/18 16/25 18/10 19/1 21/14 21/16 25/17 25/18 25/21 25/23 25/24 26/1 28/12 29/24 31/22 41/25 45/4
**couldn't [1]** 26/17
**counsel [25]** 3/7 3/11 3/12 3/15 4/18 8/16 8/25 9/21 10/20 11/22 11/25 12/11 12/23 14/19 17/15 17/19 18/1 19/7 19/20 31/21 35/19 43/3 43/12 43/18 45/20
**couple [1]** 4/21
**course [4]** 11/15 16/17 18/4 21/12
**court [32]** 1/1 1/18 2/17 4/24 5/5 5/12 5/19 5/23 6/7 7/7 7/22 8/3 8/8 9/23 9/24 12/15 16/11 17/24 18/1 19/24 29/3 29/5 30/22 33/24 35/14 35/16 41/3 43/12 43/14 44/10 45/18 47/11
**Court's [1]** 33/25
**Courthouse [1]** 2/17
**courtroom [1]** 4/1
**cover [1]** 6/21
**covered [1]** 46/3
**created [1]** 17/21
**credentials [1]** 21/2
**Crenshaw [1]** 37/5
**critical [1]** 18/3
**CRR [2]** 2/17 47/10
**CSR [2]** 2/17 47/10
**curb [2]** 27/17 27/20
**current [2]** 3/12 45/14
**currently [1]** 5/4
**cuts [1]** 44/1
**cv [1]** 1/4

## D

**dangerous [2]** 22/17 23/3
**date [2]** 22/9 47/10
**dated [2]** 11/18 13/1
**dates [1]** 14/13
**day [4]** 10/24 11/18 28/5 37/23
**days [1]** 36/22
**dealing [2]** 13/6 13/10
**December [1]** 31/10
**decision [8]** 5/2 5/14 6/3 7/13 7/20 8/3 44/5 44/5
**decisions [1]** 7/13
**defend [1]** 44/22
**defendant [17]** 1/7 2/8 3/15 4/15 5/8 6/23 9/3 12/17 20/9 28/2 29/1 31/1 31/3 32/12 33/1 33/5 33/25
**defendant's [5]** 15/16 17/9 17/21 18/23 45/11
**defense [8]** 5/6 8/5 16/6 18/14 29/24 40/5 41/11 41/12
**defense's [5]** 12/16 18/24 19/3 40/7 40/13
**defer [1]** 9/25
**definite [1]** 26/22
**definition [1]** 6/20
**demand [5]** 9/13 9/14 9/16 22/6 32/15
**denied [2]** 4/25 30/1
**depending [1]** 32/11
**described [3]** 17/19 34/14 39/22
**designated [1]** 20/10
**designation [1]** 21/2
**designed [2]** 38/7 39/1
**desktop [1]** 36/9
**determining [1]** 19/24
**deterred [2]** 16/3 19/1
**did [42]** 4/8 4/10 5/2 7/20 13/17 13/22 13/25 14/1 14/2 15/4 15/7 18/12 18/13 19/1 19/2 19/2 19/19 20/25 21/24 22/3 22/7 24/6 24/20 25/19 25/25 31/20 32/19 33/11 35/3 35/20 35/23 35/23 36/6 36/13 37/22 38/4 38/22 39/3 39/22 41/15 41/20 45/5
**didn't [8]** 14/5 14/20 15/6 15/6 21/10 23/17 26/25 32/11
**different [1]** 14/4
**difficult [1]** 28/9
**dig [1]** 22/2
**directed [3]** 4/22 9/22 44/23
**directly [1]** 19/4
**disagreements [1]** 44/16
**discern [1]** 21/16
**disclose [1]** 39/7
**discoverable [1]** 17/22
**discovery [8]** 11/5 13/8 17/23 18/7 18/15 18/16 18/19 19/5
**discuss [2]** 11/13 19/9
**discussing [1]** 16/7
**discussion [2]** 18/15 43/25
**discussions [1]** 11/14
**dismiss [9]** 4/25 5/2 5/15 13/24 18/6 28/3 28/6 29/25 44/24
**dismissal [4]** 31/18 35/17 35/22 36/21
**dismissed [1]** 12/22
**dispute [2]** 16/14 39/25
**disputes [1]** 45/14
**disregarded [1]** 32/22
**distinction [1]** 40/8
**distinguish [1]** 40/21
**DISTRICT [4]** 1/1 1/2 1/18 2/17
**do [36]** 4/21 5/4 6/4 8/4 8/5 8/7 8/7 8/14 9/23 11/11 13/7 13/11 13/18 13/23 13/25 14/17 14/22 16/23 24/25 27/10 28/5 28/22 29/22 32/10 33/14 33/21 34/1 34/7 35/5 35/6 35/9 38/22 41/11 43/6 43/7 43/9
**documents [1]** 18/22
**does [8]** 22/19 23/14 25/22 30/10 30/24 34/12 35/1 40/12
**doesn't [3]** 23/8 23/21 28/4
**doing [6]** 14/6 29/20 29/25 36/10 38/12 41/5
**don't [21]** 10/3 10/19 14/12 14/17 15/13 15/23 21/4 21/6 24/13 24/22 27/3 27/17 30/17 30/18 32/18 32/20 34/10 39/7 39/16 39/24 39/25
**done [9]** 8/17 14/8 20/11 32/13 42/11 42/19 42/19 42/21 42/21
**door [8]** 26/12 26/16 26/19 26/20 27/22 27/24 30/6 30/24
**double [1]** 8/23
**double-check [1]** 8/23
**draft [1]** 22/13
**drafted [4]** 16/14 17/11 17/13 18/1
**due [5]** 8/20 12/4 12/14 12/16 24/4
**during [7]** 8/10 10/11 12/14 16/17 18/4 19/4 21/12

E

**earlier [1]** 39/3
**early [3]** 14/5 14/9 15/1
**easier [1]** 42/15
**easiest [1]** 14/7
**easily [1]** 14/23
**echo [2]** 43/20 43/21
**effort [3]** 18/23 19/15 40/21
**either [2]** 21/9 30/25
**else [4]** 17/5 17/6 38/19 41/17
**email [15]** 9/23 11/20 11/21 11/24 12/2 31/20 35/18 35/20 35/23 35/24 36/6 36/11 36/12 36/12 36/20
**emails [3]** 11/12 12/15 12/25
**emotionally [1]** 45/17
**encountered [4]** 19/16 19/16 24/4 25/10
**ended [1]** 27/5
**enforceable [1]** 11/10
**engage [2]** 44/9 45/17
**engaging [1]** 44/1
**ensure [1]** 9/3
**enter [4]** 19/17 24/5 24/20 25/6
**entered [5]** 24/23 25/2 43/23 44/16 45/1
**entering [1]** 37/10
**entire [2]** 26/17 30/1
**entitled [9]** 8/25 9/1 9/2 9/14 31/4 40/11 44/11 44/20 47/6
**entrance [10]** 26/7 26/12 27/10 27/13 28/13 28/17 29/10 30/5 30/7 30/10
**entryway [1]** 29/23
**equal [1]** 16/4
**especially [1]** 26/10
**establishment [1]** 26/23
**estimate [2]** 38/11 38/16
**ethical [1]** 40/4
**even [3]** 14/25 16/11 28/5
**events [1]** 11/11
**eventually [1]** 11/8
**ever [3]** 24/15 34/5 35/8
**everybody [2]** 5/17 42/7
**everyone [2]** 4/14 37/6
**everything [2]** 34/4 42/9
**evidence [1]** 16/13
**exact [3]** 14/13 22/9 39/16
**exactly [1]** 24/13
**example [4]** 14/8 29/22 31/8 42/25
**exceeded [1]** 6/19
**exchange [2]** 40/18 40/18
**exchanged [1]** 11/13
**excuse [1]** 7/6
**executing [1]** 44/1
**execution [1]** 12/7
**Exhibit [1]** 11/18
**Exhibit C [1]** 11/18
**exist [1]** 30/25
**existed [1]** 17/25
**expectation [1]** 38/14
**expenses [7]** 6/2 6/10 6/15 38/8 39/2 39/22 40/21
**experience [5]** 17/16 43/22 44/6 44/15 45/18
**experienced [6]** 22/18 22/21 23/4 23/8 23/23 24/1
**experiences [1]** 40/1
**expert [10]** 17/21 17/21 17/22 17/24 20/21 20/25 21/1 21/3 21/4 21/24
**explain [3]** 7/24 9/16 9/18
**explained [1]** 6/9
**explanation [1]** 43/15
**extension [1]** 12/12
**extricate [1]** 14/23
**eyes [1]** 19/13

F

**Facebook [1]** 43/23
**fact [9]** 6/18 10/25 15/4 16/18 18/11 29/16 33/1 33/2 42/13
**facts [1]** 19/7
**factual [2]** 5/12 44/16
**factually [1]** 19/25
**faded [4]** 20/8 21/22 22/23 23/7
**failed [4]** 11/9 11/9 12/16 12/17
**failure [2]** 12/10 12/10
**far [1]** 28/14
**faster [1]** 9/24
**feasible [3]** 29/22 29/23 34/23
**February [1]** 31/11
**federal [1]** 45/18
**fee [4]** 9/7 34/2 35/11 41/12
**feel [1]** 28/7
**fees [7]** 8/25 9/1 9/2 9/6 9/8 9/12 40/11
**felt [1]** 44/8
**few [1]** 27/6
**Fifth [1]** 2/9
**figure [2]** 5/6 9/17
**file [8]** 8/8 10/19 16/25 22/2 33/25 36/2 36/22 46/8
**filed [22]** 4/17 9/8 17/11 17/23 18/1 19/22 20/12 21/8 21/15 28/2 31/7 31/9 31/10 31/11 32/6 32/17 33/21 36/4 36/7 37/8 44/4 44/14
**filing [5]** 20/2 36/10 36/21 43/19 44/23
**filings [1]** 36/10
**final [2]** 11/9 32/5
**finalization [1]** 12/7
**finalized [2]** 11/14 12/8
**finalizing [1]** 23/18
**finally [1]** 6/20
**financial [4]** 37/12 37/16 38/5 40/16
**financially [1]** 45/17
**find [1]** 45/8
**fine [1]** 10/1
**finished [1]** 36/10
**firm [12]** 34/3 34/5 34/13 34/19 37/7 38/4 40/15 42/14 43/6 43/8 43/10 43/22
**first [7]** 10/4 10/10 14/1 27/7 31/1 31/7 41/14
**five [1]** 36/22
**fix [1]** 29/23
**fixable [1]** 29/24
**focus [1]** 20/5
**focusing [1]** 19/11
**folks [1]** 42/1
**followed [1]** 8/12
**following [3]** 8/8 11/7 16/15
**foregoing [1]** 47/4
**former [3]** 3/11 8/25 17/19
**found [2]** 29/20 44/6
**frankly [1]** 9/7
**frivolous [2]** 19/23 19/24
**front [7]** 23/15 23/17 27/13 27/21 27/24 30/4 34/9
**full [3]** 32/10 44/25 45/5
**fully [1]** 40/6
**further [5]** 7/7 16/6 36/15 36/16 46/2
**future [3]** 7/22 33/10 33/12

G

**gaining [1]** 16/3
**Garfield [1]** 2/5
**gate [1]** 30/5
**gave [2]** 33/1 33/4
**general [1]** 9/12
**generalized [1]** 12/9
**generally [1]** 34/15
**generic [1]** 29/2
**get [12]** 19/1 19/10 20/24 22/8 27/15 30/12 32/11 38/21 42/18 42/21 45/2 45/4
**gets [1]** 9/3
**getting [5]** 14/4 28/3 38/13 39/12 42/11
**Gillespie [1]** 7/19
**give [2]** 41/17 45/23
**given [3]** 8/2 31/16 37/20
**glass [1]** 26/8
**go [11]** 14/6 14/10 19/2 21/24 22/3 22/7 24/10 27/16 28/22 38/16 40/16
**goes [1]** 5/15
**going [9]** 6/25 13/24 23/25 27/5 28/10 28/11 38/14 38/15 38/22
**gone [1]** 21/6
**good [2]** 27/23 42/25
**Gosh [1]** 22/6
**got [3]** 28/14 29/11 32/12
**gotten [1]** 14/14
**graffiti [2]** 21/13 32/24
**grounds [1]** 5/1
**guess [1]** 38/11

H

**had [39]** 5/25 6/1 6/4 6/4 10/23 10/24 11/5 14/14 14/15 14/25 18/11 18/13 18/19 19/18 21/5 25/19 25/24 27/9 28/10 29/4 29/4 31/20 32/13 33/14 34/3 34/12 34/18 35/9 35/9 35/19 35/23 35/24 36/6 39/15 42/21 43/18 44/23 45/2 45/3
**hadn't [2]** 8/1 8/2
**handicap [1]** 20/9
**handy [1]** 8/8
**happened [3]** 8/1 11/15 29/21
**happening [1]** 42/8
**happy [1]** 25/4
**has [18]** 4/25 5/3 5/19 6/21 6/23 9/8 13/8 20/1 21/14 28/18 29/21 30/22 33/21 34/13 39/22 40/24 41/11 44/12
**have [73]**
**having [7]** 10/25 13/14 15/5 15/24 27/22 28/2 38/12
**he [69]**
**he's [5]** 14/6 25/3 39/25 45/8 45/9
**head [1]** 35/16
**hear [2]** 4/9 9/25
**heard [1]** 5/19
**hearing [8]** 1/15 3/5 4/12 6/18 6/24 8/10 10/2 43/17
**heart [3]** 44/2 44/9 44/19

**H**

**her [2]** 9/1 9/23
**here [17]** 4/4 4/14 6/23 7/15 8/23 9/11 18/4 20/6 21/18 25/3 27/16 28/15 28/24 32/2 36/8 36/9 41/20
**Here's [1]** 28/16
**Hernandez [2]** 7/3 7/7
**hers [1]** 33/16
**Hey [1]** 38/24
**him [5]** 19/15 25/4 42/21 43/12 45/7
**himself [1]** 14/23
**his [24]** 4/18 6/2 6/5 6/9 6/10 7/25 10/18 17/15 17/16 24/13 33/14 39/6 39/7 39/17 40/1 40/19 42/23 43/11 43/13 43/19 44/6 44/8 44/15 45/7
**hold [2]** 8/23 10/10
**HOLLYWOOD [8]** 1/6 3/6 3/16 4/15 44/5 44/21 45/6 45/14
**Honor [29]** 3/4 3/25 4/6 4/10 8/7 9/9 10/7 10/14 11/4 12/5 16/1 16/9 17/1 17/8 18/5 19/5 31/14 31/22 33/22 36/16 37/2 40/6 41/1 41/7 45/19 45/22 45/25 46/5 46/6
**HONORABLE [1]** 1/17
**hopefully [1]** 10/3
**how [13]** 9/6 13/6 14/18 22/5 23/7 23/13 28/7 29/4 37/15 37/25 38/4 42/20 45/13
**However [1]** 16/11

**I**

**I'd [5]** 10/23 37/4 41/16 45/23 46/7
**I'll [3]** 10/4 35/11 41/14
**I'm [41]** 3/9 3/10 3/10 8/11 8/20 9/9 9/10 9/14 9/18 9/23 9/24 11/16 11/20 12/25 15/2 15/23 19/11 21/17 22/12 22/13 22/24 24/10 25/4 27/6 27/15 27/22 28/7 28/7 28/21 28/23 29/9 29/14 30/13 30/15 30/17 35/20 37/1 37/18 37/25 39/8 40/1
**I've [7]** 3/19 4/19 9/22 17/4 35/12 37/22 38/2
**Iain [2]** 2/8 3/15
**Iboshi [2]** 14/15 14/16
**identified [3]** 30/22 38/16 40/18
**identify [1]** 4/21
**identity [1]** 40/19
**IFP [3]** 5/24 6/5 43/19
**illustrates [1]** 28/1
**impetus [2]** 14/10 14/13
**important [2]** 4/22 7/23
**importantly [1]** 20/3
**imposed [1]** 19/22
**improper [1]** 19/23
**inability [1]** 17/17
**inbox [2]** 35/25 36/7
**include [2]** 23/4 23/7
**included [2]** 6/4 34/2
**includes [1]** 23/5
**including [3]** 4/2 4/17 18/5
**incorporated [1]** 38/15
**indicate [1]** 17/12
**indicated [1]** 12/9
**indicates [1]** 16/13
**indicating [4]** 12/3 12/19 16/16 36/9
**indications [2]** 14/1 14/25
**individuals [1]** 7/15
**information [7]** 6/5 15/23 24/25 29/4 29/5 34/8 38/3
**initial [7]** 15/3 15/5 15/19 20/14 20/17 22/5 31/9
**initially [1]** 11/14
**inquired [3]** 7/3 7/7 7/8
**inquiries [1]** 41/9
**inquiry [10]** 5/22 5/23 17/4 20/2 20/5 20/11 23/15 28/25 33/7 40/25
**inside [2]** 18/20 19/3
**insisted [1]** 12/18
**inspect [1]** 18/7
**inspection [6]** 18/7 19/6 32/8 32/10 45/1 45/6
**install [1]** 20/9
**instead [2]** 18/17 18/22
**intended [2]** 25/15 33/11
**intending [1]** 25/25
**intends [1]** 33/9
**intention [2]** 26/1 34/20
**interacted [1]** 45/14
**interests [2]** 43/25 44/8
**interior [4]** 17/17 18/8 18/13 30/6
**interpret [1]** 41/4
**interpretation [1]** 41/5
**investigative [1]** 41/7
**involved [1]** 17/20
**involvement [1]** 6/15
**is [123]**
**isn't [2]** 21/4 42/25
**issue [24]** 5/5 5/19 6/6 16/6 17/2 17/6 27/19 28/13 28/17 29/12 29/14 29/16 30/7 30/24 31/2 31/17 31/23 33/4 33/6 36/15 40/4 40/14 41/11 46/3
**issues [9]** 4/12 19/17 21/14 30/23 43/5 43/15 44/6 44/11 45/3
**issuing [1]** 22/5
**it [130]**
**it's [32]** 6/6 7/23 9/12 11/19 15/24 16/9 17/8 17/8 17/19 17/21 18/16 19/2 19/3 21/11 24/15 26/8 26/10 26/20 27/18 28/11 33/17 35/7 37/1 38/19 38/21 38/23 40/7 40/13 40/20 41/7 42/6 42/8
**its [2]** 28/2 41/5
**itself [2]** 17/8 44/22

**J**

**January [1]** 5/1
**January 24th [1]** 5/1
**Jessica [2]** 2/12 3/9
**JUDGE [4]** 1/18 7/3 7/7 37/5
**July [3]** 35/24 36/20 36/24
**July 3rd [1]** 36/20
**July 4th [1]** 36/24
**July 8th [1]** 35/24
**June [3]** 11/22 12/2 14/18
**June 4th [3]** 11/22 12/2 14/18
**just [47]** 3/17 4/4 4/8 6/3 6/17 6/25 7/23 8/16 8/23 9/18 13/24 14/16 15/9 18/18 19/11 21/6 21/9 25/8 25/13 26/8 26/18 26/22 26/25 27/20 27/22 28/16 29/6 29/11 30/1 30/23 31/8 31/15 31/22 32/3 32/6 32/11 34/13 35/14 36/19 36/25 39/22 40/1 41/8 41/20 42/16 43/16 43/16

**K**

**Kevin [2]** 2/4 3/12
**kind [1]** 44/2
**knew [1]** 33/3
**know [28]** 4/11 8/16 11/15 14/6 14/12 15/13 19/21 21/5 21/11 22/21 23/18 24/13 24/22 26/3 27/7 27/12 27/18 31/4 36/11 38/21 39/24 42/9 42/20 43/6 43/7 43/9 44/18 45/5
**knowledge [2]** 11/16 31/7
**knows [2]** 4/15 37/6
**Kyle [2]** 14/15 14/16

**L**

**La [13]** 24/11 24/12 26/8 26/13 27/2 28/9 28/14 28/18 29/10 29/23 30/5 30/24 33/2
**La Mota [2]** 26/8 28/14
**lack [1]** 40/21
**language [3]** 18/22 18/25 27/15
**laptop [2]** 36/8 36/9
**large [1]** 37/7
**larger [1]** 26/10
**last [2]** 8/24 41/8
**later [2]** 15/6 22/19
**laundry [1]** 29/2
**law [9]** 2/4 2/12 34/3 34/5 34/13 34/19 40/15 43/6 43/13
**lawsuit [5]** 38/18 44/3 44/4 44/13 44/22
**lawyers [2]** 4/7 7/8
**leading [1]** 27/24
**learn [2]** 15/5 15/6
**learned [2]** 15/4 15/4
**learning [1]** 31/1
**lease [5]** 24/15 24/15 26/25 28/10 28/12
**Lee [1]** 2/12
**legal [3]** 20/9 43/11 43/12
**legally [1]** 19/25
**lengthy [1]** 28/18
**less [2]** 40/23 42/15
**let [23]** 3/20 4/4 4/11 5/22 8/16 8/21 8/23 10/8 16/19 18/18 21/1 24/10 24/18 26/5 30/3 31/18 31/19 34/7 35/14 36/18 37/15 40/24 42/20
**let's [3]** 31/17 32/2 37/5
**letter [2]** 22/6 32/15
**Lewis [1]** 2/8
**liability [1]** 1/6
**life [1]** 6/16
**light [1]** 38/3
**like [26]** 7/25 9/25 10/20 10/24 11/1 14/5 17/5 22/1 22/6 25/17 26/22 27/21 30/20 31/13 36/13 37/4 38/20 38/21 38/23 39/5 40/5 41/16 41/17 45/23 45/24 46/7
**limited [2]** 1/6 23/4
**list [10]** 22/15 22/16 22/25 23/1 23/2 23/5 28/18 29/2 29/20 32/7
**lists [1]** 29/13
**literally [1]** 36/5
**litigant's [1]** 44/4
**litigation [12]** 16/17 18/5 21/12 37/13 37/17 38/6 40/12 42/22 44/9 44/10 44/19 45/18
**little [2]** 27/12 29/25

**L**

**lived [3]** 39/4 39/5 39/9
**LLC [2]** 1/6 3/6
**LLC's [1]** 4/15
**LLP [1]** 2/8
**located [2]** 24/6 37/7
**location [1]** 38/2
**locations [4]** 18/8 26/3 37/23 38/13
**log [1]** 42/7
**long [2]** 27/19 42/9
**longer [3]** 9/5 13/21 21/10
**look [2]** 35/11 38/22
**looked [4]** 7/19 20/15 20/17 35/12
**looking [6]** 20/15 22/14 23/20 23/22 26/2 30/15
**lot [7]** 5/13 23/20 27/10 29/16 33/15 42/11 45/4
**luck [1]** 9/21

**M**

**made [25]** 5/14 5/23 5/25 6/7 6/7 7/25 10/11 11/12 11/17 15/8 16/16 17/3 17/11 17/16 18/5 18/20 18/22 24/22 25/3 37/5 40/8 42/24 44/2 44/14 44/16
**MAGISTRATE [1]** 1/18
**main [4]** 27/19 29/14 29/16 31/2
**make [13]** 5/16 7/17 8/3 18/13 24/6 24/9 24/21 25/6 31/15 32/3 38/10 42/15 44/8
**management [1]** 42/6
**many [1]** 38/22
**marks [1]** 6/9
**massage [5]** 38/13 39/13 39/15 39/17 39/19
**materialize [1]** 11/9
**materials [1]** 4/19
**matter [5]** 11/23 13/3 22/19 23/9 23/21
**matters [1]** 23/9
**may [6]** 11/18 13/1 13/1 14/5 14/9 15/1
**May 19th [1]** 13/1
**maybe [4]** 21/4 21/11 38/12 38/13
**me [41]** 3/20 3/24 4/4 5/22 7/6 8/9 8/10 8/12 8/16 8/21 8/23 9/11 10/8 13/15 13/17 14/4 15/8 16/19 18/18 20/14 21/1 23/18 23/24 24/10 24/18 26/5 28/22 29/24 30/3 31/18 31/19 34/7 34/9 35/14 36/1 36/18 37/15 40/24 41/25 42/1 42/20
**mean [5]** 11/25 25/22 28/7 41/25 41/25
**means [1]** 20/4
**meant [3]** 14/20 19/1 41/25
**meeting [1]** 12/11
**Mehrens [9]** 2/4 3/12 16/19 24/25 31/12 34/7 35/1 37/22 45/23
**mention [1]** 39/3
**mentioned [3]** 39/13 39/15 43/17
**merits [4]** 5/12 5/16 7/13 7/22
**metal [1]** 30/5
**mid [1]** 15/6
**might [4]** 34/10 44/17 44/18 44/18
**mileage [1]** 6/12
**miles [1]** 39/11
**mind [1]** 13/25
**minds [1]** 12/11
**minute [1]** 13/22
**miscellaneous [1]** 6/15
**missed [2]** 21/9 21/11
**mistake [1]** 23/19
**model [1]** 26/11
**Molligan [26]** 2/12 3/9 4/23 7/15 7/18 8/22 10/8 10/21 11/25 12/21 12/24 18/12 19/21 26/5 31/18 34/13 34/17 35/18 36/18 37/15 38/4 40/24 41/14 43/8 45/13 45/21
**moment [7]** 3/17 15/9 25/9 25/13 36/19 36/25 37/3
**money [2]** 6/21 38/20
**monitoring [2]** 9/3 9/18
**month [1]** 22/1
**more [11]** 5/8 5/13 6/10 7/17 29/3 29/5 30/12 33/5 37/23 38/20 38/20
**Mota [13]** 24/11 24/12 26/8 26/13 27/2 28/9 28/14 28/18 29/10 29/23 30/5 30/24 33/2
**motion [22]** 1/15 3/5 4/15 4/16 4/25 5/2 5/4 5/10 5/15 5/16 6/6 7/14 8/6 9/8 18/6 19/9 28/2 28/6 29/25 33/6 45/11 46/3
**motions [2]** 19/5 44/23
**motive [1]** 36/24
**move [5]** 10/3 16/5 26/21 30/19 31/17
**moved [1]** 42/14
**moving [2]** 17/2 26/21
**Mr [2]** 2/4 2/8
**Mr. [70]**
**Mr. Armstrong [5]** 10/4 11/3 17/6 30/20 36/14
**Mr. Blumm [1]** 37/1
**Mr. Burley-Beavers [4]** 6/1 6/18 39/14 43/17
**Mr. Burley-Beavers' [1]** 5/24
**Mr. Mehrens [7]** 16/19 24/25 31/12 34/7 35/1 37/22 45/23
**Mr. Slevin [49]**
**Mr. Slevin's [3]** 6/24 20/16 43/21
**Ms [2]** 2/12 36/20
**Ms. [24]** 4/23 7/15 7/18 8/22 10/8 10/21 11/25 12/21 12/24 18/12 19/21 26/5 31/18 34/13 34/17 35/18 36/18 37/15 38/4 40/24 41/14 43/8 45/13 45/21
**Ms. Molligan [24]** 4/23 7/15 7/18 8/22 10/8 10/21 11/25 12/21 12/24 18/12 19/21 26/5 31/18 34/13 34/17 35/18 36/18 37/15 38/4 40/24 41/14 43/8 45/13 45/21
**much [5]** 29/25 37/25 38/12 38/23 46/9
**my [37]** 8/11 8/20 9/12 9/22 9/25 11/16 11/17 11/20 11/20 11/21 11/22 12/5 12/25 13/2 13/25 24/8 24/23 25/2 25/5 26/1 26/17 30/8 32/21 33/13 35/7 35/18 36/8 36/9 36/10 36/21 39/12 39/14 41/9 42/1 42/13 44/21 46/7
**myself [1]** 9/24

**N**

**N.E [1]** 2/5
**name [5]** 3/20 21/5 23/10 29/1 40/19
**named [1]** 7/19
**narrow [7]** 26/9 26/14 26/19 28/13 28/17 29/10 29/18
**Narrower [1]** 26/16
**nature [1]** 40/7
**near [5]** 33/10 33/12 34/23 39/4 39/9
**necessary [1]** 32/10
**need [4]** 21/5 22/2 38/24 45/7
**needed [5]** 26/21 32/9 38/10 45/5 45/10
**neglect [1]** 20/4
**negotiated [1]** 28/12
**negotiation [1]** 12/10
**negotiations [3]** 11/7 11/8 44/15
**neither [4]** 7/12 21/22 22/23 23/7
**never [8]** 26/2 28/10 28/11 28/14 33/13 37/22 38/1 38/19
**nevertheless [1]** 13/3
**new [3]** 4/18 15/6 20/16
**news [1]** 14/14
**Nicky [1]** 35/24
**no [34]** 1/4 3/9 4/3 5/2 5/14 9/5 9/7 10/6 10/9 10/12 10/21 12/14 13/8 13/21 13/23 13/25 15/2 16/9 16/24 18/11 18/15 19/14 21/10 22/11 25/11 25/19 26/20 27/5 33/13 36/8 36/23 45/14 45/22 46/2
**No. [3]** 10/6 10/22 16/8
**No. 13 [3]** 10/6 10/22 16/8
**Nods [1]** 35/16
**noncompliant [1]** 33/2
**nonissue [1]** 11/2
**not [93]**
**notable [1]** 18/3
**nothing [5]** 5/4 5/11 5/11 5/14 36/16
**notice [7]** 7/21 8/2 8/2 8/3 27/19 33/1 33/5
**noting [1]** 17/9
**November [7]** 1/6 3/2 16/2 21/18 22/22 23/6 47/9
**now [14]** 3/4 3/23 5/11 5/13 6/7 9/15 17/9 19/2 20/13 21/7 23/11 28/9 29/21 34/11
**number [4]** 4/19 29/13 37/7 39/16

**O**

**o0o [1]** 47/2
**objection [1]** 16/23
**objectionable [1]** 44/6
**objective [2]** 20/1 20/3
**objectively [1]** 23/13
**observation [1]** 37/5
**observations [3]** 4/22 4/22 17/16
**obtain [1]** 9/6
**obviously [1]** 32/25
**occupied [1]** 27/2
**occurred [3]** 11/7 12/14 33/23
**off [3]** 8/13 17/25 45/8
**offered [1]** 13/9
**offhand [1]** 22/13
**office [1]** 46/7
**Official [1]** 47/11
**oh [8]** 15/17 19/2 27/3 36/1 37/1 39/8 39/16 45/9
**okay [12]** 3/23 4/7 4/12 4/13 14/6 15/17 16/22 24/19 35/11 36/4 38/11 39/20
**once [4]** 14/4 30/12 32/18 42/7
**one [19]** 3/17 4/24 7/17 9/11 20/19 20/20 21/12 27/4 27/7 27/9 30/3 32/9 32/23 36/1 37/3 38/17 39/5 39/21 42/13
**ongoing [1]** 21/14
**only [5]** 4/5 41/19 44/23 45/6 45/16
**open [2]** 33/23 36/11

## O

**opened [1]** 26/19
**operating [1]** 24/14
**operative [2]** 17/25 30/25
**opportunity [3]** 31/16 41/17 45/24
**opposing [3]** 14/19 31/21 35/19
**oral [1]** 12/6
**orally [1]** 4/25
**ORCP [1]** 40/12
**ord.uscourts.gov [1]** 2/19
**OREGON [8]** 1/2 1/7 19/10 37/4 37/14 43/12 43/13 43/13
**original [5]** 9/1 9/14 9/15 19/12 47/6
**originally [3]** 15/20 29/18 41/24
**ORPC [3]** 40/12 40/20 41/13
**other [23]** 6/14 7/15 13/14 14/7 14/21 16/9 27/9 27/9 28/18 29/7 29/24 32/3 34/3 34/5 34/13 34/19 37/7 38/8 38/19 41/8 41/11 42/1 42/6
**others [1]** 17/20
**otherwise [1]** 12/13
**our [8]** 16/10 19/9 19/13 20/19 32/21 40/20 42/14 42/17
**out [12]** 5/6 6/20 6/23 14/4 24/16 28/10 28/12 31/6 32/14 43/5 43/18 45/9
**outset [2]** 4/21 7/12
**outside [1]** 8/12
**over [3]** 21/13 32/24 38/1
**own [1]** 41/5
**ownership [1]** 44/3

## P

**p.m [1]** 46/10
**P.O [1]** 2/13
**page [2]** 8/24 36/12
**paid [6]** 6/21 7/3 7/8 39/15 39/18 44/13
**paper [2]** 19/22 19/23
**papers [2]** 8/6 41/15
**paragraph [7]** 9/13 9/16 16/1 18/25 24/16 31/25 33/8
**parameters [1]** 9/19
**parked [1]** 32/23
**parking [6]** 20/10 23/20 27/10 29/16 29/17 45/4
**part [8]** 9/18 33/14 33/16 33/18 35/8 40/9 40/9 40/11
**particular [5]** 20/23 21/6 25/12 39/17 40/1
**particularly [1]** 5/18
**parties [5]** 12/8 43/25 44/9 44/19 45/17
**party [1]** 18/4
**passed [1]** 43/8
**past [1]** 8/20
**patron [1]** 33/10
**patronize [1]** 18/23
**patronizing [1]** 16/3
**pause [4]** 3/18 8/18 15/10 25/14
**pay [1]** 6/2
**payment [1]** 40/16
**pending [5]** 6/7 12/6 37/12 37/17 38/6
**people [1]** 33/15
**per [1]** 40/23
**perfect [1]** 32/25
**perhaps [1]** 33/5
**period [2]** 10/11 13/12
**permanently [1]** 26/24
**person [5]** 20/15 20/17 20/25 21/2 21/5
**perspective [1]** 20/1
**pertaining [1]** 9/10
**petition [2]** 9/7 43/19
**phone [3]** 8/12 8/20 11/20
**photo [1]** 21/21
**photograph [5]** 17/4 20/7 22/22 23/15 23/17
**photographic [1]** 16/13
**photographs [7]** 8/5 10/2 15/11 15/13 15/15 16/15 30/3
**photos [5]** 15/19 16/20 27/22 27/23 46/8
**phrase [1]** 38/17
**physical [2]** 22/16 23/2
**picture [2]** 30/4 30/15
**pictures [1]** 32/17
**pile [1]** 41/3
**pillar [1]** 27/21
**places [4]** 14/6 14/10 25/20 40/23
**plain [1]** 18/24
**plainly [1]** 30/23
**plaintiff [21]** 1/4 2/4 5/7 6/14 9/5 10/12 17/15 17/20 18/10 18/12 19/15 21/19 22/18 22/21 23/4 23/8 24/3 28/3 33/9 34/18 40/20
**plaintiff's [8]** 3/7 3/11 6/12 6/15 8/25 10/18 19/5 31/4
**pleadings [1]** 33/23
**please [6]** 3/7 3/17 8/14 16/25 34/1 37/3
**point [20]** 6/20 7/17 10/5 12/17 21/12 24/13 24/16 25/1 28/10 31/6 32/11 32/14 34/8 34/22 34/24 38/15 40/3 40/4 41/18 43/16
**pointed [1]** 6/23
**points [1]** 46/3
**portal [6]** 41/21 41/22 41/23 42/3 43/7 43/9
**portion [1]** 24/14
**portions [1]** 18/9
**Portland [5]** 1/7 2/5 2/9 2/13 2/18
**position [13]** 10/18 12/5 16/10 17/21 19/3 19/4 32/21 32/21 40/7 40/13 40/20 45/11 45/15
**positions [2]** 18/4 43/11
**possible [2]** 8/10 14/23
**possibly [1]** 29/23
**potential [1]** 40/22
**practice [1]** 43/6
**practicing [1]** 43/13
**precisely [1]** 28/1
**premises [1]** 24/4
**prepared [1]** 15/3
**present [3]** 2/12 3/21 4/7
**presumably [2]** 22/14 41/5
**pretty [2]** 21/11 29/25
**previously [1]** 17/23
**primarily [2]** 13/16 43/24
**primary [1]** 29/18
**prior [2]** 5/2 7/13
**probably [2]** 20/20 30/12
**problem [1]** 28/2
**problematic [2]** 27/11 27/11
**problems [1]** 33/3
**proceed [1]** 14/2
**proceeding [1]** 14/3
**proceedings [9]** 1/16 3/18 4/12 8/18 15/10 25/14 41/6 46/10 47/5
**process [8]** 7/1 7/4 7/9 12/15 17/10 38/18 43/7 44/12
**produced [2]** 17/24 18/15
**professional [4]** 37/4 37/10 41/4 45/15
**profit [1]** 40/23
**prohibit [1]** 37/14
**prohibited [1]** 37/9
**properties [7]** 24/7 24/11 24/23 24/23 25/6 32/9 35/10
**property [51]**
**protects [2]** 45/16 45/16
**provide [2]** 6/5 38/5
**provided [5]** 8/2 8/3 22/16 24/12 37/16
**provides [2]** 40/16 45/10
**providing [2]** 37/11 43/12
**provision [2]** 30/9 34/10
**pull [1]** 15/24
**pulling [1]** 27/22
**purchase [3]** 18/13 24/6 24/9
**purchases [6]** 6/12 18/19 24/21 24/22 25/3 25/7
**purported [1]** 23/1
**purpose [1]** 19/23
**purposes [1]** 19/23
**pursue [3]** 13/8 13/20 13/21
**put [1]** 20/16

## Q

**question [10]** 8/4 8/22 23/11 23/13 28/24 34/6 35/4 35/18 37/19 40/2
**questions [3]** 4/20 28/8 46/2
**quickly [1]** 14/23
**quite [2]** 9/7 41/21
**quotation [1]** 6/9

## R

**raised [1]** 41/11
**raises [1]** 43/5
**ramp [8]** 23/20 27/10 27/12 27/14 27/17 27/20 27/24 29/17
**rather [1]** 32/6
**read [6]** 19/12 34/11 36/12 36/13 41/15 41/15
**realize [1]** 28/11
**really [10]** 13/16 14/16 23/19 26/9 26/9 26/15 33/4 41/20 41/22 42/9
**reason [3]** 25/19 41/3 45/15
**reasonable [8]** 17/4 18/11 20/2 20/11 23/14 28/25 29/20 33/7
**reasonably [3]** 6/2 16/14 39/1
**reasons [2]** 9/1 42/13
**recall [7]** 10/25 27/3 34/10 34/12 35/12 39/16 39/18
**receipt [2]** 16/15 18/14
**received [9]** 6/1 6/10 6/19 10/24 12/20 13/2 15/11 15/15 31/19
**recollection [10]** 13/2 25/5 25/11 30/8 35/2 35/6 35/7 39/10 39/12 39/14
**record [6]** 3/8 4/8 5/12 16/23 33/18 47/5
**recovered [1]** 40/11
**reference [1]** 44/17

## R


**referenced [1]** 33/23
**referred [3]** 8/5 15/16 33/15
**referring [3]** 5/21 6/24 15/14
**refusing [1]** 13/19
**regard [8]** 18/6 18/6 43/5 43/10 44/2 44/15 45/12 45/13
**regarding [9]** 3/5 12/15 17/15 31/7 35/21 35/22 43/13 44/5 44/24
**regardless [1]** 31/6
**regular [2]** 26/3 26/16
**regulation [1]** 30/16
**regulations [2]** 20/9 30/10
**reimburse [3]** 38/8 39/1 40/21
**reimbursement [1]** 6/21
**reimbursements [1]** 6/8
**reiterate [1]** 30/23
**related [2]** 6/15 18/19
**relating [1]** 18/22
**relationship [3]** 40/10 40/14 43/25
**relevant [1]** 36/17
**relied [3]** 16/17 41/22 43/18
**reload [1]** 36/11
**rely [3]** 41/20 44/11 44/20
**remain [2]** 10/15 13/4
**remanded [1]** 7/21
**remarks [1]** 6/24
**remediations [1]** 32/19
**remember [2]** 20/24 22/13
**reminded [1]** 8/20
**rendered [1]** 11/9
**repairs [2]** 27/23 42/24
**reply [1]** 4/16
**report [3]** 17/21 17/22 17/24
**reporter [4]** 2/17 35/14 35/16 47/11
**representation [1]** 44/11
**representing [1]** 9/5
**request [17]** 10/5 10/9 10/10 10/21 10/24 11/8 11/12 11/17 12/4 12/12 13/1 16/7 16/10 16/10 18/21 19/5 33/25
**requested [3]** 13/17 17/22 18/15
**requesting [1]** 12/20
**requests [6]** 4/20 11/4 11/5 17/23 18/7 18/16
**require [1]** 32/8
**required [1]** 6/5
**resolution [1]** 32/16
**respect [4]** 5/15 17/6 29/8 34/20
**respond [2]** 10/12 14/18
**responded [2]** 7/10 43/22
**responding [1]** 31/3
**response [19]** 4/16 4/17 4/23 9/2 10/6 10/9 10/13 10/19 10/21 11/3 12/4 12/24 16/7 30/21 41/9 41/15 43/4 43/23 45/21
**responses [1]** 32/12
**responsibilities [1]** 43/11
**responsibility [1]** 10/19
**responsive [1]** 41/15
**rest [1]** 45/11
**restate [2]** 5/22 31/19
**restaurant [2]** 27/13 27/25
**resulted [1]** 38/18
**retained [1]** 43/22
**retainer [1]** 41/12
**return [11]** 25/16 25/19 25/25 26/1 26/2 33/17 34/16 34/20 34/22 34/25 38/15
**review [1]** 34/4
**reviewed [1]** 4/19
**reviewing [1]** 11/20
**revisiting [1]** 35/9
**right [39]** 3/19 4/14 6/7 8/4 9/15 9/20 10/1 10/13 10/17 11/3 12/23 16/5 19/20 19/21 21/5 21/7 21/23 26/4 27/15 28/20 30/14 30/14 30/14 30/19 31/12 31/15 31/17 31/25 34/11 35/14 35/15 36/4 36/13 36/14 41/10 43/2 45/20 45/23 46/2
**rights [2]** 43/11 43/13
**RMR [2]** 2/17 47/10
**Room [1]** 2/18
**rule [15]** 4/15 5/4 5/15 5/16 6/6 7/14 7/22 9/19 18/2 19/8 19/11 19/21 33/5 44/3 45/15
**ruled [1]** 5/19
**rules [6]** 19/10 37/4 37/10 37/14 41/4 41/5
**ruling [2]** 5/25 6/8
**run [1]** 34/23


## S


**S.W [2]** 2/9 2/18
**said [17]** 6/18 6/18 6/25 7/5 8/4 13/22 13/23 14/9 26/25 28/10 28/16 29/11 29/14 34/17 38/22 38/24 45/6
**same [4]** 9/24 13/6 31/8 35/2
**sanctions [6]** 4/16 5/16 7/14 19/8 19/22 44/3
**Sandy [1]** 34/24
**satisfied [1]** 44/8
**saved [1]** 11/20
**saw [4]** 22/19 23/9 35/18 36/4
**say [13]** 5/25 7/23 9/11 11/25 13/10 14/19 17/5 21/1 25/21 30/20 40/5 41/17 41/22
**saying [6]** 12/6 22/10 22/12 29/1 30/7 39/25
**says [4]** 19/19 23/2 35/13 36/21
**scheme [1]** 19/9
**scope [1]** 44/25
**screen [1]** 3/21
**seated [2]** 10/15 13/4
**second [6]** 17/14 19/13 27/7 31/10 32/5 34/16
**see [18]** 3/20 3/23 3/24 4/2 4/3 4/5 19/13 21/10 26/17 31/20 32/2 35/20 35/23 35/23 36/6 38/7 42/8 42/9
**seeing [1]** 34/10
**seeking [2]** 5/8 44/24
**seem [2]** 7/25 28/4
**seemed [1]** 26/22
**seems [1]** 17/12
**seen [3]** 14/14 16/19 17/4
**send [3]** 8/9 8/10 11/4
**sending [1]** 11/1
**sent [9]** 8/2 11/19 11/21 12/2 17/20 30/4 32/15 32/17 36/20
**sentence [1]** 23/2
**separate [3]** 5/5 6/6 40/3
**September [1]** 31/9
**service [1]** 11/7
**set [1]** 3/5
**settle [4]** 11/23 12/3 12/6 14/19
**settled [2]** 10/23 11/6
**settlement [19]** 7/1 10/25 11/6 11/7 11/8 11/13 11/14 12/7 12/8 12/16 12/18 12/20 13/8 13/20 42/10 42/12 42/23 44/1 44/1
**settlements [2]** 14/22 15/8
**settling [1]** 13/3
**Seventh [1]** 39/6
**share [1]** 40/11
**she [2]** 12/2 12/3
**should [7]** 4/1 9/10 16/22 20/9 23/12 32/2 32/5
**showed [1]** 32/22
**shows [4]** 20/7 21/21 22/23 40/22
**shumway [4]** 2/17 2/19 47/9 47/10
**sign [11]** 8/12 12/20 13/19 13/23 14/21 20/7 20/8 20/16 21/10 21/11 21/13
**signage [11]** 17/5 17/7 20/10 20/12 21/15 21/21 22/11 22/23 23/5 23/6 31/8
**signature [7]** 11/17 13/16 42/11 42/13 45/7 47/7 47/7
**signed [5]** 18/1 19/7 23/10 34/5 35/9
**signer [1]** 19/22
**significant [1]** 42/4
**signing [6]** 12/18 14/8 20/2 28/25 42/14 47/4
**signs [2]** 32/24 45/8
**similar [3]** 4/25 5/20 37/10
**similarly [1]** 37/14
**simply [4]** 6/3 12/21 32/6 39/1
**since [1]** 24/15
**site [2]** 18/7 32/8
**sitting [2]** 22/13 36/9
**situation [5]** 20/6 20/13 32/14 42/25 43/1
**situations [2]** 32/8 38/11
**skinny [1]** 26/15
**SLEVIN [55]**
**Slevin's [3]** 6/24 20/16 43/21
**Smith [1]** 2/8
**snack [1]** 39/19
**so [59]**
**so-called [1]** 21/24
**solution [1]** 28/15
**solve [1]** 44/10
**some [12]** 13/13 24/13 27/21 27/23 28/10 29/19 34/22 34/24 38/10 38/13 38/14 38/24
**somehow [1]** 5/25
**someone [1]** 20/20
**something [5]** 9/12 18/14 26/2 27/12 28/12
**sometimes [2]** 29/21 32/11
**somewhere [2]** 20/14 25/24
**soon [1]** 26/19
**sorry [8]** 3/10 9/9 29/9 29/15 32/3 35/20 37/1 39/8
**sort [1]** 27/21
**sought [1]** 12/13
**sounds [1]** 25/17
**space [2]** 20/10 29/17
**spaces [1]** 17/17
**speak [1]** 36/17
**speaking [1]** 23/14

**S**

**speaks [1]** 17/7
**special [1]** 38/10
**specific [7]** 18/21 22/16 23/2 29/3 29/5 30/9 34/10
**specifically [5]** 5/7 28/3 34/16 34/19 35/13
**specificity [1]** 5/9
**spend [1]** 37/23
**spent [4]** 6/19 6/22 37/25 38/1
**stage [1]** 42/8
**stamps [1]** 36/17
**start [5]** 7/3 7/8 22/5 37/21 38/17
**starting [1]** 7/1
**state [3]** 3/7 43/5 43/18
**stated [2]** 4/8 39/18
**statement [3]** 12/6 25/18 25/22
**statements [2]** 17/11 19/7
**states [6]** 1/1 1/18 2/17 16/2 32/6 33/8
**stating [1]** 11/22
**status [2]** 41/2 41/6
**stays [1]** 9/4
**stipulated [3]** 31/18 35/17 35/22
**stop [1]** 18/18
**stopped [1]** 24/14
**stores [1]** 39/21
**stress [4]** 21/8 29/16 41/20 42/16
**strictures [1]** 18/2
**subject [4]** 12/10 18/2 24/4 33/9
**subjective [1]** 20/4
**submitted [3]** 33/22 41/8 41/9
**subverted [1]** 44/12
**successfully [1]** 3/19
**such [5]** 12/14 17/22 17/24 32/9 37/14
**sued [1]** 44/21
**sufficiency [1]** 5/3
**sufficient [2]** 5/10 7/21
**Suite [1]** 2/9
**sum [2]** 5/14 6/21
**support [1]** 21/2
**supported [1]** 16/18
**sure [9]** 5/17 22/24 27/6 28/7 31/15 31/24 32/4 37/18 37/25
**surreply [10]** 4/17 4/23 5/18 8/23 8/24 17/12 17/19 18/12 18/16 19/14
**suspension [2]** 7/18 7/25
**swamped [2]** 36/23 36/24
**system [2]** 42/6 42/14

**T**

**take [1]** 35/11
**taken [6]** 15/12 15/18 15/20 18/4 19/4 43/11
**takes [1]** 45/14
**taking [1]** 39/24
**talking [2]** 13/12 23/22
**targeted [1]** 40/17
**taxing [1]** 45/17
**tear [1]** 6/13
**telling [2]** 8/12 36/1
**Tennessee [7]** 37/6 37/10 42/2 42/13 43/6 43/8 43/10
**teriyaki [2]** 24/11 27/24
**terms [4]** 5/7 9/15 12/9 28/14
**terrible [1]** 8/19
**tester [1]** 33/16
**testimony [2]** 5/19 6/9
**texted [1]** 9/22
**than [5]** 6/10 16/9 26/16 37/23 40/23
**thank [20]** 3/8 3/11 3/14 3/25 4/10 8/14 10/16 12/23 13/5 19/20 26/4 41/10 43/2 45/19 45/20 45/25 46/4 46/5 46/6 46/9
**that [363]**
**that's [26]** 6/3 6/6 8/1 10/1 11/18 11/20 11/24 13/1 14/24 19/3 22/4 22/16 24/23 27/5 28/12 30/8 32/10 32/22 34/24 36/1 38/14 39/9 39/11 40/13 44/8 45/11
**their [6]** 4/8 38/8 38/9 38/10 41/9 45/14
**them [9]** 4/2 8/7 8/8 8/9 8/10 28/22 32/3 34/23 43/24
**themselves [1]** 36/17
**then [20]** 5/11 9/17 10/11 10/17 11/14 12/3 14/18 16/16 18/1 23/4 23/13 28/12 30/5 32/15 32/17 35/14 42/1 43/20 44/13 44/15
**there [51]**
**there's [18]** 5/13 7/1 7/17 20/6 22/22 22/25 23/1 26/20 26/20 27/23 30/5 30/5 30/12 36/11 40/3 40/14 40/14 45/24
**these [20]** 4/22 11/11 15/12 16/20 19/6 19/7 19/16 24/20 25/6 26/3 27/22 29/6 29/8 32/19 37/23 38/13 40/23 43/23 44/10 45/3
**they [18]** 4/8 11/19 11/22 12/14 12/17 15/20 16/14 16/22 20/16 27/23 28/9 30/1 32/13 34/21 34/23 34/24 38/9 42/12
**they'll [1]** 10/3
**they've [1]** 40/22
**thing [3]** 15/3 25/18 28/16
**things [6]** 4/24 14/4 29/22 29/24 42/10 42/15
**think [18]** 5/24 8/22 13/15 17/7 17/8 17/9 18/3 27/18 27/19 28/1 29/15 30/22 33/20 40/6 41/16 43/24 45/9 46/3
**third [2]** 2/18 27/8
**this [77]**
**those [22]** 4/3 7/13 15/18 15/19 16/12 16/13 16/15 16/25 18/8 19/11 24/7 25/20 28/8 28/21 29/18 29/19 32/17 41/5 41/6 43/15 43/20 44/14
**though [2]** 14/25 24/16
**thought [3]** 11/1 14/24 41/24
**three [1]** 30/25
**through [6]** 4/18 6/16 26/8 28/22 43/8 43/24
**time [25]** 3/4 4/11 8/19 9/24 10/11 12/11 13/6 13/12 20/14 20/15 21/15 22/10 24/10 24/10 26/10 28/6 30/1 31/1 31/14 34/16 36/17 39/5 42/16 45/25 46/4
**time-consuming [1]** 42/16
**timeline [3]** 11/11 12/16 21/17
**times [2]** 27/6 32/23
**today [4]** 7/16 10/2 31/1 46/4
**too [7]** 6/11 9/7 21/8 24/2 24/16 29/18 32/14
**took [1]** 36/22
**topic [2]** 16/6 30/20
**totality [1]** 23/19
**touch [1]** 14/16
**tough [2]** 26/10 27/5
**Town [1]** 24/12
**transaction [4]** 37/11 40/7 40/13 40/15
**transcript [3]** 1/16 47/5 47/6
**transportation [2]** 6/13 38/9
**traveling [1]** 38/12
**tried [4]** 18/10 19/1 44/22 45/2
**trouble [3]** 15/24 26/21 27/22
**true [2]** 19/7 32/22
**try [1]** 44/10
**trying [8]** 5/25 9/10 9/18 9/23 21/17 27/15 30/17 40/1
**turn [7]** 8/11 8/12 8/21 10/4 37/4 37/5 41/14
**turned [1]** 36/11
**two [5]** 14/4 15/15 24/11 26/20 30/6
**type [1]** 21/1

**U**

**ulterior [1]** 36/23
**unable [3]** 19/17 24/3 45/3
**unclear [1]** 13/14
**under [6]** 4/25 5/15 19/21 37/9 43/13 45/1
**understand [13]** 9/14 10/17 11/19 14/13 14/20 15/7 21/17 23/11 35/3 37/18 41/16 43/21 44/12
**understanding [11]** 11/21 12/17 17/10 18/24 24/8 24/24 25/2 33/13 34/18 45/2 45/10
**understands [2]** 5/17 40/6
**undisputed [2]** 16/12 17/8
**uneven [1]** 29/17
**unintelligible [4]** 20/8 21/22 22/23 23/7
**Unit [1]** 2/5
**UNITED [3]** 1/1 1/18 2/17
**unlawful [2]** 22/16 23/2
**unless [1]** 10/20
**unreasonable [1]** 9/17
**until [3]** 12/8 13/16 15/6
**up [7]** 15/24 20/16 24/15 24/15 27/5 27/22 27/24
**updating [1]** 8/20
**uploaded [1]** 42/10
**upon [4]** 12/18 16/17 17/11 38/25
**upright [1]** 31/8
**us [3]** 4/11 25/3 32/18
**used [2]** 20/3 40/19

**V**

**vacated [5]** 7/19 7/20 7/24 7/24 7/25
**value [1]** 39/13
**van [1]** 29/18
**vehicles [1]** 6/13
**verified [1]** 21/16
**versus [1]** 3/6
**very [4]** 6/7 14/14 28/18 46/9
**view [3]** 4/1 26/8 26/24
**violate [2]** 30/10 40/12
**violated [1]** 29/4
**violates [3]** 30/16 40/20 41/13
**violation [3]** 19/8 20/8 32/19
**violations [16]** 5/8 19/10 21/16 22/17 23/1 23/3 28/4 28/19 29/2 29/6 29/8 29/13 29/19 29/21 32/7 43/1
**visible [1]** 21/11

**V**

**vision [1]** 26/18
**visit [8]** 15/19 20/16 24/11 24/13 27/7 33/9 33/11 38/18
**visited [4]** 19/18 23/6 38/2 44/7
**visiting [1]** 40/23

**W**

**Wade [2]** 13/15 33/14
**wait [1]** 8/21
**Walker [1]** 43/22
**walls [2]** 26/20 30/6
**Wampler [4]** 7/10 33/15 37/6 38/4
**want [21]** 4/20 5/1 5/16 6/17 6/20 7/14 13/18 13/22 13/25 14/2 14/17 14/22 15/6 24/16 28/22 31/15 32/3 32/14 39/25 44/17 45/7
**wanted [11]** 7/12 7/17 14/16 21/8 29/15 42/12 42/15 42/19 42/21 44/7 45/3
**wanting [3]** 13/7 13/11 42/16
**wants [2]** 13/21 45/8
**was [182]**
**wasn't [6]** 13/16 14/5 14/12 15/2 26/18 32/16
**way [6]** 5/2 7/24 8/9 14/7 38/17 38/25
**we [40]** 4/14 8/21 10/3 10/23 10/24 12/6 12/20 13/3 13/23 14/19 16/5 16/7 19/9 19/11 19/13 20/6 22/21 27/16 28/11 28/12 28/14 30/19 32/9 32/10 32/15 32/16 32/19 38/22 38/23 38/23 38/24 41/20 41/22 41/23 41/24 42/14 42/15 42/17 43/9 45/7
**we'll [2]** 19/10 46/4
**we're [6]** 13/24 28/10 28/11 35/15 35/17 38/22
**we've [1]** 46/3
**wear [1]** 6/13
**week [1]** 41/8
**well [15]** 3/23 4/7 4/9 5/22 13/13 14/24 20/20 21/1 21/4 22/4 24/12 36/13 41/24 42/25 43/4
**went [15]** 7/19 15/20 21/9 21/12 21/15 21/19 22/21 24/15 26/24 27/2 27/3 32/19 32/23 33/2 38/23
**were [45]** 5/21 5/24 7/3 11/14 11/17 11/19 12/14 13/3 13/10 13/14 14/4 15/11 15/15 15/18 15/20 16/7 16/11 16/14 16/17 17/3 18/10 18/20 23/5 23/21 23/22 24/6 24/11 25/8 25/9 25/12 26/6 28/4 28/21 29/6 29/6 29/7 29/18 29/19 29/24 30/4 31/16 32/17 33/3 42/14 44/8
**weren't [2]** 5/9 32/16
**what [80]**
**what's [2]** 18/3 42/8
**wheelchair [2]** 23/25 26/9
**when [44]** 8/16 11/12 11/13 11/13 11/16 11/24 13/2 13/10 13/23 14/1 14/9 14/9 15/5 15/11 15/18 15/20 15/22 19/18 20/25 21/1 21/24 22/3 22/7 22/20 23/6 23/18 24/14 25/21 26/24 27/2 27/3 27/23 28/2 29/3 31/7 31/18 31/20 35/18 35/20 35/22 35/23 44/6 44/23 45/6
**where [9]** 6/8 12/17 20/6 27/20 32/14 37/6 37/7 42/5 42/14
**whereby [1]** 40/15
**whether [13]** 6/1 6/4 7/1 17/2 17/3 19/24 19/25 28/24 33/4 33/6 38/18 43/9 44/8
**which [21]** 7/17 10/12 11/8 11/18 12/16 15/22 16/7 17/10 17/12 20/4 21/5 22/17 23/3 28/4 30/16 32/1 33/8 35/12 43/7 44/13 45/1
**While [1]** 8/21
**who [9]** 7/15 13/21 17/21 20/17 20/22 20/24 41/23 44/9 45/17
**whole [1]** 9/16
**why [13]** 7/24 9/17 9/18 10/3 10/8 10/21 11/1 12/3 22/19 33/17 36/22 42/3 42/13
**width [2]** 26/16 30/24
**will [2]** 11/6 46/7
**willing [1]** 12/3
**withdrawal [1]** 12/12
**within [3]** 9/19 22/1 39/11
**without [6]** 12/22 17/3 42/11 44/14 44/17 47/6
**won't [1]** 13/23
**word [1]** 20/3
**words [7]** 13/14 14/7 14/21 32/3 38/19 41/8 42/6
**worked [2]** 29/24 38/20
**working [2]** 42/17 42/18
**would [47]** 7/23 9/6 9/25 11/4 11/19 12/3 12/5 12/21 14/8 14/22 17/5 20/19 21/2 21/5 22/2 22/4 22/5 23/25 26/9 28/9 29/10 30/11 30/20 30/23 31/6 31/13 32/7 32/9 33/17 34/4 34/21 34/22 34/23 34/24 37/24 38/21 40/5 40/19 41/17 41/19 41/25 42/20 42/24 43/1 43/20 43/21 45/24
**wouldn't [3]** 13/8 14/21 15/2
**write [2]** 8/24 9/1
**written [5]** 9/10 25/18 25/23 25/24 26/1
**wrong [3]** 9/12 27/14 30/1
**wrote [9]** 4/23 4/24 5/11 5/18 6/8 6/11 7/5 7/18 7/25

**Y**

**yeah [9]** 7/10 26/7 26/15 27/5 27/18 30/11 32/6 36/24 42/16
**yes [15]** 3/22 8/14 12/1 16/21 17/1 21/20 23/11 23/24 23/24 25/5 25/7 35/5 37/2 39/5 41/1
**yet [2]** 9/2 19/2
**YIM [1]** 1/17
**you [157]**
**you'd [2]** 10/20 26/21
**you're [10]** 8/16 15/13 22/10 22/24 28/4 38/11 38/12 38/12 38/13 38/15
**you've [3]** 28/16 29/11 32/18
**YOULEE [1]** 1/17
**your [53]**
**YY [2]** 1/4 3/5

**Z**

**Zoom [1]** 3/20