IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CONNER SLEVIN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AB HOLLYWOOD LLC, a limited liability company,<br><br>Defendant. | No. 3:23-cv-01404-YY |

Telephonic Hearing

TRANSCRIPT OF FTR-RECORDED PROCEEDINGS

BEFORE THE HONORABLE YOULEE YIM YOU

UNITED STATES MAGISTRATE JUDGE

January 24, 2024

APPEARANCES

FOR THE PLAINTIFF:

JESSICA LEE MOLLIGAN
Attorney at Law
P.O. Box 16893
Portland, OR 97292

FOR THE DEFENDANT:

IAIN ARMSTRONG
Lewis Brisbois Bisgaard & Smith LLP
888 S.W. Fifth Avenue
Suite 900
Portland, OR 97204-2025

FOR THE DEFENDANT:

NICOLAS C. BLUMM
Lewis Brisbois Bisgaard & Smith LLP
888 S.W. Fifth Avenue
Suite 900
Portland, OR 97204-2025

TRANSCRIBER: Lindsey A. Weresch, RMR, CRR, CSR
United States District Courthouse
1000 S.W. Third Avenue, Room 301
Portland, Oregon 97204
(503)326-8047

(Wednesday, January 24, 2024, 9:30 a.m.)

**P R O C E E D I N G S**

(Whereupon, the following proceedings were held in open court:)

THE COURT: Good morning, Counsel. This is Judge You. We are on the record in Slevin versus AB Hollywood LLC, Case Number 3:23-cv-01404.

Do we have plaintiff's counsel on the phone?

MS. MOLLIGAN: Yes. This is Jessica Molligan on behalf of plaintiff, Conner Slevin.

THE COURT: All right. Thank you.

And how about for defendant?

MR. ARMSTRONG: Thank you, Your Honor. Iain Armstrong, Oregon Bar No. 142734, on behalf of defendants.

THE COURT: All right. Thank you, Counsel.

MR. BLUMM: Your Honor --

THE COURT: Just you -- yes, go ahead.

MR. BLUMM: Your Honor, I'm also here. This is Nicky Blumm, Bar No. 226455, also here on behalf of defendant.

THE COURT: Okay. Thank you very much. I just wanted to make sure I wasn't missing anyone.

We're here to discuss the defendant's motion to dismiss. I'd like to begin with the question of mootness. As you all know, the United States Supreme Court issued a decision in December of 2023 finding that, because the matter was moot,

it was not going to consider the case. And I'm not asking about the same issue of mootness, as in that Acheson Hotels v. Laufer. That's A-c-h-e-s-o-n, L-a-u-f-e-r. I'm not asking about that particular issue of mootness.

But there is case law that says that -- and I'm citing to Oliver v. Ralph's Grocery Company, 654 F.3d 903 at 905, a Ninth Circuit case from 2011, which says, quote, "Because a private plaintiff can sue only for injunctive relief, i.e., for removal of the barrier under the ADA, a defendant's voluntary removal of the alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."

So let's start with that. I don't want to -- I don't want to resolve issues that are moot, obviously. So let me ask: What's the status of the property since the plaintiff -- that the amended complaint says the plaintiff, I think, visited the property or involved -- or made an alleged attempt to patronize the property on or about November 2022?

So let me turn to the defense and ask if you have any information on that.

MR. ARMSTRONG: Well, Your Honor, I'm afraid that I don't. And, for clarification, one of the reasons that we brought this motion to dismiss is in an effort to be told precisely what was allegedly wrong. It is our position, reading the complaint and the amended complaint, that it was a -- or that it discussed a wide variety of rules and

regulations regarding accessibility.

And we were unable to identify precisely what the specific impairment was, so I don't have a specific response to that question. What I will note is that our review of this property is it is a property with a small parking lot and a wheelchair-accessible ramp.

The small parking lot has four spots, one of which is handicap accessible and -- which is separately set off with clear markings. So, you know, I would join the Court -- I would raise the issue of mootness if plaintiff's allegations were clearly stated, where I can -- could say, "This was the alleged issue. Here are the photos of the property at this moment."

THE COURT: All right. Thank you, Counsel. I understand where you're coming from with respect to the allegations and the case law that supports your inquiry here.

Let me turn to the plaintiff and ask if, Counsel, you have anything to add on this issue. And then we will launch into the alleged violations.

MS. MOLLIGAN: Your Honor, I believe what defense counsel is saying is that they have no idea if any accommodations or -- or adjustments have been made. And so this is not moot.

THE COURT: Let me ask Mr. Armstrong if that's how you would characterize your remarks.

MR. ARMSTRONG: That would not be how I would characterize my remarks. My remarks would be I know that, and my understanding is that, the property's well maintained and that we were unaware and deny that there was an issue in the first place.

But, given the nature of plaintiff's complaint, we cannot say, "Oh, the complaint was about this specific issue. I can go and take photos saying that, if that was an issue, it is now moot," given the nature -- that is the reason for our motion to seek that clarification and --

THE COURT: Okay. Thank you.

MR. ARMSTRONG: (Indiscernible).

THE COURT: No. Go ahead, Counsel.

MR. ARMSTRONG: I was going to say "and to insist that plaintiff -- if plaintiff is going to bring this matter, clearly state the cause of action and the factual basis for it."

THE COURT: All right. Thank you, Counsel.

Let's move to the alleged violations. I'll start with the first one in the amended complaint, which -- one moment -- which is apparently on page six of the amended complaint.

It states that the van-accessible parking is too narrow, and then it sites to Section 4.6 and Section 502. That's Section 4.6 of the 1991 ADAAG and Section 502 of the

2010 ADAAG.

And if you look at those provisions, as you know, Section 4.6 pertains to accessible parking spaces. It says that they have to be at least 96 inches wide. Section 502 pertains to the access aisle. And so there's -- those are two different things.

And I'll just tell you, quite frankly, I can't tell, plaintiff's counsel, what you're alleging specifically here with respect to the van-accessible parking. Is -- are both the -- are both the -- is both the man space too narrow and the aisle too narrow? Or is it one or the other?

MS. MOLLIGAN: I know that -- I'm sorry, Your Honor.

THE COURT: No worries. It's hard to tell when somebody's talking when it's a telephone hearing. So -- and, also, too, I -- I mean, those were my observations. The defense may have some additional inquiry. But why don't you begin with my questions.

MS. MOLLIGAN: Certainly. Let me just pull this up.

Okay. So my understanding is that the problem is that the -- the accessible spot is too narrow, but that it impacts -- the fact that it's narrow impacts the accessible aisle right next to it.

In other words, it's -- it's -- let's see here. Parking is definitely too narrow. And then the accessible, I believe that ties into the other problem with the access aisle.

Yeah, that -- that the access aisle as well is narrow, in part, but not entirely, due to the fact that the curb ramp is projecting into it. And that would be -- let's see here. That would be violation -- our alleged violation (f) on the amended complaint.

THE COURT: Okay. Which, again, doesn't contain a lot of specificity, but we'll get to that in a moment.

Okay. What else, defense counsel, do you want to say about the item number (a)?

MR. ARMSTRONG: Nothing, Your Honor. I think you covered it exactly.

THE COURT: I'm just making a note here. Just one moment.

Okay. So then item number (b) alleges that the purported accessible parking at this site is not adequately dispersed throughout the facility. It cites to 4.6 and 4.6.2 and also to Section 208.3.1.

4.6.2 -- and I'm not going to read the whole thing, but it discusses that accessible parking spaces must be located on the shortest accessible route, but there are also other requirements pertaining to the number of accessible spots that are required.

Section 208.2 states that only one van spot is required for a 1 to 25 parking spot facility. So here, under that provision, if it's a -- and it apparently is a 1 to 25

parking spot facility. So only one van spot would be required.

So what is plaintiff specifically alleging with respect to how the purported accessible parking is not adequately dispersed under those circumstances? And it just doesn't --

MS. MOLLIGAN: Your Honor --

THE COURT: -- say anything about what they need to do to -- to comply.

MS. MOLLIGAN: Right. Your Honor, I do apologize. When I amended the complaint, I did mean to strike this -- this paragraph. The -- upon further inspection, that is not applicable. My apologies.

THE COURT: Yeah. It would've been helpful to know that before I spent time working on this particular issue.

MS. MOLLIGAN: I'm sorry, Your Honor.

THE COURT: Okay. Just keep that in mind next time.

All right. Let me make a note.

Okay. So then moving on to number (c), "Plaintiff could not safely utilize the parking facility because the designated accessible parking space is not level in all directions," and then also alleges that the defendant's practice of failing to inspect and maintain the parking surface is in violation of 28 CFR 36.211, which, as you all know, pertains to maintaining ADA accessible features.

Section 4.6.3 talks about a -- well, it says,

"Parking spaces and access aisles shall be level with surface slopes not exceeding 2 percent in all directions." And so just two questions came to my mind, as I'm looking at this; and, that is, whether -- well, one, I mean, I suppose the question of maintaining property is -- raises the issue of -- of what you mean by that.

Does that mean maintaining it to make sure it's, for example, clear of debris and obstructions, garbage, that kind of thing? Or is it maintaining the surface level so that it is at that -- not exceeding 2 percent? So -- and then let me turn to the defense and ask if there's anything further you wanted to add on that.

MR. ARMSTRONG: I mean, there's nothing further that I would like to add, Your Honor, other than I -- I mean, there's nothing further that I would like to add at this time.

THE COURT: So let me ask then, plaintiff's counsel, if -- are you saying that the -- that the property is not being maintained because the surface level is -- exceeds 2 percent?

MS. MOLLIGAN: Yes, Your Honor.

THE COURT: Or is there something --

MS. MOLLIGAN: Okay. I'm sorry.

THE COURT: No, I'm sorry. I cut you off. What were you going to say?

MS. MOLLIGAN: Yes, Your Honor. Our -- what we're claiming is that it is an uneven parking surface and that it

needs to be repaved such that it is level.

In other words, the ground appears to have shifted. I also -- my understanding was that at the time, on at least one occasion, that there was some additional debris, some kind of impediment. But the main problem is that it's uneven, not level.

THE COURT: Okay. So uneven, not level and not at the 2 percent --

MS. MOLLIGAN: Correct.

THE COURT: -- not -- it exceeds 2 percent?

MS. MOLLIGAN: Yes, (indiscernible).

THE COURT: And also debris?

MS. MOLLIGAN: On at least one occasion, yes, Your Honor.

THE COURT: Anything further from the defense?

MR. ARMSTRONG: Well, I -- I would -- if the allegation is that on -- on some occasion, at some time, there was some debris, and that's the basis for an allegation of failure to maintain, I think that's something that needs to be clearly stated and not, you know, left out there for -- for guesswork in this way. And that's my position on that.

THE COURT: Okay. All right. Then let's turn to item number (d), which is basically the same allegations but with respect to the accessible aisle.

And so let me turn first to plaintiff and ask if

you're making the same allegations there, that it's exceeding 2 percent, not level --

MS. MOLLIGAN: Correct, Your Honor.

THE COURT: -- the parking lot needs to be -- parking lot needs to be repaved.

MS. MOLLIGAN: Yes, Your Honor.

THE COURT: Anything further from the defense on that?

MR. ARMSTRONG: Nothing further.

THE COURT: Okay. So then number (f), that says that the curb ramp leading to the entrance has flared sides, which are steeper than one-to-ten ratio, in violation of, again, 28 CFR 362.1 -- sorry -- 36.211, and also 4.7.5 and 406.3.

And my question with respect to this allegation is when I look at Section 4.7.5, and it describes flared sides, those are sides that are flared -- well, and let's talk about this in the same context as number (h), which is a curb ramp.

And curb ramps are discussed in Section 4.7.6. So if you look at the diagrams that are associated with these different provisions, they pertain to the flared sides that go up from a -- from a lower point and built-up curb ramps. They both require the same one-to-ten ratio.

They shall not be steeper than one-to-ten. So it can't be -- you know, it can't be 10 inches to get from one -- it can't be steeper than 10 inches, I guess, on the one side.

But, in any event, that's -- so my question is, are there two -- is there a curb ramp that has flared sides? Is there a built-up curb ramp as well?

MR. ARMSTRONG: Your Honor, my understanding --

MS. MOLLIGAN: Sorry.

MR. ARMSTRONG: -- is that (indiscernible) built-up curb ramp. I mean, there -- there may be -- the allegation regarding curb size may refer to some other portions of property that I'm not aware of, but from the -- the van-accessible parking spot, there is a built-up curb ramp onto the sidewalk that -- that leads into these two shops that are at this property.

THE COURT: Anything else from the plaintiff on (f) and (h)?

MS. MOLLIGAN: I'm -- I think I'm confused what -- what, Your Honor, you're asking. I'm sorry.

THE COURT: Sure. No, I'm happy to explain.

So I see that there are two allegations here: One is in number (f), which talks about a curb ramp that has flared sides; and then allegation (h), which pertains to a curb ramp and cites to different portions of the ADAAG.

So one -- Section 4.7.5, if you look at the illustrations that are -- accompany that section, they refer to flared sides. And then curb ramps are discussed in Section 4.7.6, which pertains to built-up curb ramps. So my question

is, are you alleging that there is a curb ramp with flared sides and a curb -- built-up curb ramp?

MS. MOLLIGAN: Yes, Your Honor.

THE COURT: Those have the same -- you're alleging that there are two -- that there's a curb ramp with flared sides and a built-up curb ramp?

MS. MOLLIGAN: The curb ramp is built-up, and it is -- it's not level. In other words, it's difficult to go up the curb ramp, both because the sides are flared and because there are those abrupt changes in level from the bottom transition.

THE COURT: So here's my point, though. My point, though, is that curb ramp flares are different than a built-up curb ramp. So are there -- is there one area that has a curb ramp flare and another one that's a built-up curb ramp?

MS. MOLLIGAN: That's my understanding, Your Honor.

THE COURT: Okay. Anything further from the defense?

MR. ARMSTRONG: Other than to reiterate that that's not my understanding, that there is only the built-up curb ramp that would be subject to 4.7.6 and not a -- a cut-up curb ramp subject to 4.7.5.

THE COURT: Okay. So then let's turn to the allegation number (g), which states that paint delineating designated accessible parking spaces and the access aisle are not maintained so that they clearly mark the accessible parking

locations.

Anything further from the defense on that?

MR. ARMSTRONG: Other than to note that these are the allegations that have been added in the amended complaint; and, you know, my understanding is that they are clearly marked. But I understand that we are here on a motion to dismiss, Your Honor, and not summary judgment.

THE COURT: All right. Thank you.

And then, finally, there's allegation number (i), which is -- pertains to visible upright signage. Anything further from the defense on that? It says that it's faded and unintelligible.

MR. ARMSTRONG: Again, other than to note that we are here on a motion to dismiss as opposed to a motion for summary judgment. But my understanding is that there is a sign, and I believe that it's clear.

And it would be helpful in understanding the claim to know when and how it was allegedly faded, to ensure that any remediation that renders this moot is the nature of the allegation that plaintiff is bringing, and to know whether it is the sign over the parking spot or other signage.

THE COURT: Do you have any answers to that, Counsel, plaintiff's counsel?

MS. MOLLIGAN: Your Honor, as pointed out, this is a small parking lot. And there's only one accessible spot, so

the allegation is that it's -- it was that one.

THE COURT: Just a moment.

All right. Those are all of the allegations. There are some general maintenance allegations. I don't have any questions about those.

But let me ask defense counsel if you have anything else that you wanted to add on the maintenance practices that are alleged in sections (g), (h) and (i).

MR. ARMSTRONG: Other than, Your Honor, it's our position that the allegations of maintenance is, you know, simply the labels, conclusions, a formulaic recitation of elements, which the Supreme Court, under Twombly, has stated does not meet the pleading standard. A bare bones allegation of some maintenance was not being performed to the level necessary does not provide -- does not meet the pleading standard.

THE COURT: Anything further on those maintenance practices from plaintiff?

MS. MOLLIGAN: No, Your Honor.

THE COURT: Okay. All right. Then let me ask -- we've gone through all of the allegations, I believe. Well, let me make an observation, first.

So under the case law -- and, again, it's that Oliver v. Ralph's Grocery Company case -- the court said, "In order for the complaint to provide fair notice to the defendant, each

such allegedly violative feature must be alleged in the complaint."

And then it says, "Where the claim is one of discrimination under the ADA due to the presence of architectural barriers at a place of public accommodation, we have held that the relevant grounds are the allegedly noncompliant architectural features at the facility; that in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint."

And then, of course, you're all familiar with the standards that allegations in the complaint can't be conclusory. Labels and conclusions, formulaic recitation of the elements of the cause of action's elements will not do.

When I -- and then, too, as I noted, of course, that -- I mean, some of these allegations could possibly be mooted out because of changes that the owners make to property. So my initial thought right now is that I think further conferral between the parties would be helpful in determining whether certain allegations here can be -- well, let me -- let me back up.

Plaintiff has clarified some of these allegations today. I think further conferral between the parties could be helpful. And so that's my initial thought, that before any kind of ruling is issued on this that I would order the parties to further confer.

So let me turn to the defense and ask, on the motion to dismiss, is there any further argument that you would like to make?

Oh, and I'm sorry. Before I get to that, I had one more question, which is the complaint also, I think, vaguely alleges that the -- just one moment here. Just a moment -- that AB -- AB Hollywood LLC is the owner, lessor and/or operator/lessee of the real property.

How can you be both the lessor and the lessee? Is that what you're alleging? Because -- and the reason for that is because there's case law that says that -- that -- there's this case, Hubbard, H-u-b-b-a-r-d, v. Rite Aid Corporation -- plaintiffs are not entitled to the relief they seek without having brought this action against the landlord nor anyone else with rights to this common area.

So I just -- it's just one of those things that I observed in the complaint, which, as I noted, seems vague in other respects. In any event, I just -- I don't need a response from the plaintiff on that. I just point that out.

But, going back to my initial question for the defense, that my initial thought is to order the parties to confer further and ask -- I asked if the defense had any other arguments that it wished to make with respect to the -- the motion to dismiss.

MR. ARMSTRONG: Generally, no, Your Honor. In our

motion we also noted that the alleged repairs and corrections must be practicable. And given the lack of clear explanation of what the alleged impediments were, defendants were denied their ability to make that assessment, and I would just note that in our argument. But, other than that point, nothing further to add.

THE COURT: Okay. And then turning back to plaintiff's counsel, you've indicated that there's one portion of the amended complaint that you would be modifying, withdrawing specifically. So, as I mentioned, I'm ordering the parties to confer further. But you're -- you're at some point going to have to file at least an amended complaint withdrawing that allegation.

Any -- anything else you'd like to say on the motion to dismiss?

MS. MOLLIGAN: I'm sorry, Your Honor. Are you addressing plaintiff's -- are you addressing me?

THE COURT: Yes, I am, plaintiff's counsel. So --

MS. MOLLIGAN: Oh.

THE COURT: -- you're going to have to file --

MS. MOLLIGAN: (Indiscernible).

THE COURT: -- an amended complaint -- yeah, sure, no, it's hard when we're on the telephone. You're going to have to withdraw that one -- section (b), I think, is the one that you said --

MS. MOLLIGAN: Yes.

THE COURT: -- didn't have any support. So I think further conferral would be useful.

Anything else that you would like to say in response to the motion to dismiss, generally?

MS. MOLLIGAN: Yeah. In -- just in general, the one case law that is cited by defense is quite distinguishable. This was -- let me pull this up again. So this, actually, was at the summary judgment stage where plaintiff was filing for summary judgment. And the court's assessment and -- and the standards that it was applying was for that, was for plaintiff's motion for summary judgment. And this is not that.

THE COURT: Thank you, Counsel. I did note as well that that case involved a motion for summary judgment.

Anything further -- it's defendant's motion. Anything further? I usually give the movant the last word.

MR. ARMSTRONG: Nothing further. Just to reiterate the quotation that the Court cited from Twombly, that that is the standard at this stage that plaintiff has to meet and give defendants a fair understanding of what the allegations are in order to carry this case forward.

THE COURT: All right. Thank you.

Let me ask: If I give you two weeks to confer, is that enough time?

MR. ARMSTRONG: That's sufficient for the --

MS. MOLLIGAN: (Indiscernible).

MR. ARMSTRONG: -- defense.

THE COURT: Okay. So what should we do then at that two-week period? I could ask you to file a joint status report. I could give you that time in which to file an amended complaint after you've conferred.

I mean, you may only withdraw section (b), but -- but, you know, we've discussed what my concerns are with respect to how the complaint could provide more specific notice, be less conclusory. You know, you could consider those as well.

There may be some additional conferral that you engage in and -- and you make some modifications there. Should I say joint status report or amended complaint?

MS. MOLLIGAN: Well, the complaint will be amended. On whether or not we also have a joint status report, I'm open to it.

MR. ARMSTRONG: I think a joint status report will be necessary. If it's simply a report saying that our conferral has resolved the issues and the amended complaint is sufficient, or if the report is that we've still got issues that we need the Court's attention, I think that would be helpful.

THE COURT: Okay. All right. So a joint status report; and then, of course, as counsel -- plaintiff's counsel

knows, you will have to file an amended complaint. But I -- I didn't know if I should set the deadline for your amended complaint to be on that same date.

How about we just say joint status report, and then you can tell me how much time you need to file an amended complaint in that joint status report, okay?

MS. MOLLIGAN: That's fine. Thank you, Your Honor.

THE COURT: All right. Anything further for today?

MR. ARMSTRONG: Nothing for the defense, Your Honor. Thank you.

MS. MOLLIGAN: Nothing for the plaintiff. Thank you, Your Honor.

THE COURT: All right. Thank you. Have a good day. Bye-bye.

MS. MOLLIGAN: Thank you. You too. Bye-bye.

MR. ARMSTRONG: Bye.

* * *

(Court adjourned, 1-24-24 at 10:08 a.m.)

C E R T I F I C A T E

Slevin v. AB Hollywood LLC

Case No. 3:23-cv-01404-YY

Telephonic Hearing

January 24, 2024

I certify, by signing below, that the foregoing is a true and correct transcript, to the best of my ability, of the telephonic proceedings heard via FTR recording, taken by stenographic means. Due to the telephonic connection, parties appearing via speakerphone or cell phone, speakers overlapping when speaking, speakers not identifying themselves before they speak, fast speakers, the speaker's failure to enunciate, and/or other technical difficulties that occur during telephonic proceedings, this certification is limited by the above-mentioned reasons and any technological difficulties of such proceedings occurring over the speakerphone at the United States District Court of Oregon in the above-entitled cause.

A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/Lindsey A. Weresch, RMR, CRR, CSR

Official Court Reporter Signature Date: 3/27/2025

Oregon CSR No. 14-0427 CSR Expiration Date: 6/30/2026