IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| CONNER SLEVIN, an individual, | ) | |
| Plaintiff, | ) | No. 3:23-cv-01404-YY |
| vs. | ) | April 2, 2024 |
| AB HOLLYWOOD, LLC, a limited liability company, | ) | Portland, Oregon |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS

(Telephonic Discovery Hearing)

BEFORE THE HONORABLE YOULEE YIM YOU

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

Court Reporter: Ryan White, RMR, CRR
United States District Courthouse
1000 SW 3rd Avenue, Room 301
Portland, Oregon 97204
(503) 326-8184

APPEARANCES

For the Plaintiff:

JESSICA L. MOLLIGAN
Attorney at Law
jessicamolligan@comcast.net
Post Office Box 16893
Portland, Oregon 97292
(971) 350-7347

For the Defendant:

LEWIS BRISBOIS BISGAARD & SMITH LLP
By: IAIN ARMSTRONG
iain.armstrong@lewisbrisbois.com
By: NICOLAS C. BLUMM
nicky.blumm@lewisbrisbois.com
888 SW 5th Avenue, Suite 900
Portland, Oregon 97204
(971) 712-2800

(April 2, 2024; 9:32 a.m.)

P R O C E E D I N G S

THE COURT: All right. Sorry. I got started before I made sure that you were there. I'll call the case again. It's Slevin versus AB Hollywood, LLC, case number 3:23-cv-1404.

As you know, we have a court reporter who's doing her best to ensure we have an accurate transcript of the proceedings, so please be sure to speak clearly and not too quickly and identify yourself before speaking.

Do we have plaintiff's counsel on the phone?

MS. MOLLIGAN: Yes, Your Honor. This is Jessica Molligan for plaintiff.

THE COURT: All right. Thank you.

And how about for the defendant?

MR. ARMSTRONG: Yes, Your Honor. Iain Armstrong on behalf of defendant.

THE COURT: All right. Thank you.

MR. BLUMM: Your Honor, Nicky Blumm -- excuse me. Also, Nicky Blumm, here also on behalf of defendant.

THE COURT: Okay. Very good. Thank you.

A motion for summary judgment has been filed. I understand that plaintiff would like to raise a discovery issue and also is asking for an extension of time to respond, and from what I understand, the parties couldn't agree, and so that's why

we're here.

Let me turn first to plaintiff's counsel and ask what it is that you are seeking.

MS. MOLLIGAN: Yes, Your Honor.

We are seeking to allow thorough inspection of the property. In other words, both based on the answer and especially on the photos attached to the motion for summary judgment, in response, I wanted to schedule the Rule 34 inspection, and I was told that -- no. And so that prompted both a need for an extension to respond -- I'd like to have the inspection before my response is due.

I also still do not have discovery responses from defendant. The responses were just "We will provide this information." That information, I still don't have.

So I can't respond to the motion for summary judgment without having that information.

THE COURT: Okay. So two issues. One, you believe you need outstanding discovery before responding to the motion for summary judgment; and two, you would like a Rule 34 inspection.

MS. MOLLIGAN: Yes, Your Honor.

THE COURT: Okay. Let's start with the inspection first.

Let me turn to defense counsel. Who would like to respond?

MR. ARMSTRONG: That would be me, Your Honor. Iain Armstrong on behalf of the defendant.

I'd like to note that I have a different understanding of plaintiff's request. Notably, I understood plaintiff's request for an inspection of the property to encompass the entire property, the scope of which I was unclear with.

But my position and my client's position was the only issue in this case is the status of the exterior of the property, specifically the parking lot and whether the parking lot, the parking spaces, and the access points from the parking lot to the property met with the -- you know, were ADA compliant, and that is in keeping with the scope of plaintiff's allegations contained in the second amended complaint which note under the heading "accessible routes and parking exterior" and then maintenance practices relating to maintaining those exterior spaces.

There have been no allegations that there are any ADA violations inside the property, anywhere else on the property, and so defendant's position was the parking lot is open and available for inspection by plaintiff at any time.

But plaintiff's demand that the entire property somehow be made available for an expert to go searching for additional ADA violations, whether it be in the public areas of the one remaining business at the site or in going through nonpublic areas, employee areas -- the one business currently

operating is a restaurant, and so the demand that the entire property be made available for inspection was beyond the scope of the complaint.

And we are willing -- we can go out there right now and take a look at the parking lot. We've been amenable to that from the start.

It's our understanding that the dispute is the scope to which every aspect of the property now must be made available to plaintiff for an inspection based on the bare allegation that he would have liked to inspect the entire property but was prevented from doing so because the disabled parking spot was, he claims, not ADA compliant.

THE COURT: All right. Thank you, counsel.

I'll turn to plaintiff's counsel and ask for your response.

MS. MOLLIGAN: Yes, Your Honor.

As a result of defendant's prior motion to dismiss, I amended the complaint, but the portions of the complaint specifically addressing this issue remained, and that is that plaintiff -- let me find the exact language here -- a specific list of the ADA violations, physical barriers, dangerous conditions, includes, but is not limited to -- and then I list out what my client was able to observe at the time.

And then right after that it says, paragraph 32, the discriminatory violations are not an exhaustive list, a complete

list will require an onsite inspection by plaintiff's representatives pursuant to Federal Rule 34. I'm just following what I have claimed all along.

Furthermore, I do want to point out it's been brought to our attention that half the property is now for lease. And I can't remember what it was originally -- let me pull this up. So that's empty and there's a big "for lease" sign on that. I didn't realize that. But it is -- and if I can get the name of this -- it's right next door to the restaurant.

Yeah. So the property at the time my client went, one half was La Mota and one half was Teriyaki Town. Now, you can't tell from the photos that defendant included in the motion for summary judgment, but that entrance to La Mota is, like, two -- maybe two feet wide.

So I'm going to want to know when that lease ended, if the owner had -- I mean, clearly there's -- you know, there's a phone number and a "for lease" sign. The owner is actively trying to get a new tenant. And so we'd like to see what's in there.

Part of this too is, you know, just out of courtesy, we don't -- I reached out in terms of the restaurant just to facilitate that. In other words, you know, I don't want to make people at the restaurant uncomfortable with the inspector going in and measuring things; so --

THE COURT: All right. So there are a number of

issues here.

Is the property -- I guess the first question that comes to the top of my mind is if the property is for lease and unoccupied and therefore not open to the public, then how does the ADA fit into that?

MS. MOLLIGAN: Well, at the time that she went, it was a business. Or he went. And in other words, if they're not going to change that property and there's a new tenant and it goes right in and it doesn't change that entryway or anything about that, that's a -- that's an ADA violation.

THE COURT: I understand.

All right. So then one of the points that plaintiff's counsel raised was that language in the complaint was broader in scope than just the exterior areas and also indicated that the risk list was not complete.

What is defendant's response to that?

MR. ARMSTRONG: Your Honor, defendant's response is plaintiff's speculation that they may find or discover additional ADA violations does not give plaintiff -- it's defendant's position that that does not give plaintiff standing to go searching for it, nor does it give -- nor does it bring those speculatory investigations within the ambit of proper discovery in this case.

Plaintiff's only right under the ADA is for injunctive relief ordering the physical barriers or impediments that are

ADA violations that are presently there and preventing him from full enjoyment being removed, and it's not sufficient for plaintiff to say there may be ADA violations, I don't know, I'm entitled to go searching and find out if there are.

And while we discuss other discovery responses -- and I know we haven't brought that up and discussed the sufficiency of defendant's responses, which I know came due only last week and for which defendant has answered interrogatory responses, and my understanding is plaintiff is waiting on document production, was the plan to produce within a week.

I'd like to point out that defendant served interrogatory responses asking for a specific description of the physical impediments and ADA violations that plaintiff actually experienced and what measurements, photos, any evidence that they were there or how they affected him, and not a single one touched on the interior of the property.

And, you know, I can read them verbatim, but they amount to simply repeating the allegations of the complaint section as I read them, paragraph 31, sections B through H. And as for each specific interrogatory request and request for production asking for any measurements, photos, or specific descriptions of how these conclusions that an ADA violation was there, the response simply refers back to an interrogatory response saying that there was an ADA violation.

My position, defendant's position, is that plaintiff

merely alleging, as plaintiff does in section 32, that he observed an ADA violation on -- what he alleges was an ADA violation on one day with no measurements, photos, specific descriptions of what those are other than the description outlined in the complaint, that now entitles him and his experts to, you know, conduct a complete assessment of all parts of the property to learn of other discriminatory violations based on his actual notice that defendant does not intend to comply with the ADA when there's no evidence other than his bare allegation that he observed what he believes is an ADA violation to reach that conclusion, it is defendant's position that the allegation was that the parking lot violated the ADA. It's defendant's understanding that there is no claim -- the claim is moot if there currently is no ADA violation.

Now, defendant has filed a motion for summary judgment saying that there is no ADA violation. The only issue is whether there is one now, and the request for a complete inspection and discussion of whether there may be an ADA violation in the future if the now-vacant property is leased in such a way is not within the scope of the complaint and not within the scope of what plaintiff can bring under the ADA.

So I know I've been talking a while, I apologize, but that's my position on it.

THE COURT: No, thank you, counsel.

Can you send me the interrogatory -- interrogatories

and responses that you just mentioned?

MS. MOLLIGAN: Your Honor --

MR. ARMSTRONG: I can. How would you like me -- what is the best way to do that?

THE COURT: I think the best thing to do would be to file them as a -- as some kind of a -- I think it would be best to have them in the record. So if you can file them as some kind of a supplement to -- I'm not coming up with a really great way to describe them, but supplement to -- supplementary response to informal discovery motion or request.

MR. ARMSTRONG: All right. I will. I will do that, Your Honor.

(Indistinguishable crosstalk.)

MR. ARMSTRONG: Should I also file the responses, defendant's responses to plaintiff's discovery requests?

THE COURT: Yes. I was just going to get to that.

And I know that, plaintiff's counsel, you had something you wanted to add. Rest assured, I'll get to you in just a moment.

But one of the -- well, actually, let me turn to plaintiff's counsel now and ask what you wanted to say on -- if there was anything else you wanted to say on this issue, and then I do want to get to the issue of whether your outstanding discovery request needs to be satisfied before responding to the motion for summary judgment.

MS. MOLLIGAN: Yes, Your Honor.

Just simply that, in reviewing the file, I realized that I -- somehow I sent over -- the response was -- the interrogatories were not signed by my client, and in the course of correcting that, realized too he did have three pictures of his visit. They really don't show a lot, but I certainly will get that together and expect to have that later today.

THE COURT: Okay. Very good.

So then once you receive that, defense counsel, can you file that supplement in the record?

MR. ARMSTRONG: Yes, Your Honor.

THE COURT: Okay. And then let me turn to plaintiff's counsel on that second issue where you say that you need some additional discovery in order to be able to respond to the motion for summary judgment.

Do you have a specific request in mind?

MS. MOLLIGAN: All of my requests for production were answered with "We will provide this document." So I mean, I can file my request for production and note that I didn't get anything.

But specifically, I'd like to know when any -- I mean, I can bring it up, but it's basically we're asking -- do you want me to read the requests for production?

THE COURT: You could just --

(Indistinguishable crosstalk.)

THE COURT: If you could generally characterize what you feel you need from the defense in order to be able to fairly respond to that motion for summary judgment.

MS. MOLLIGAN: Yeah. Okay.

Basically what they're saying is that there are -- well, I guess what they're saying is that the only violations are in the parking lot. I don't agree with that at all.

But I did -- we have noted that they did do quite a bit of work to that parking lot and I need to know when. I need to know if it was done, you know, after the complaint was filed. That is something that I think is important. So I need to know that.

One of the defenses --

THE COURT: Can I just stop you there, counsel? Can I just stop you there?

And what's the legal authority that you're relying upon for the argument that the timing of the -- of the repairs is critical to your ADA claim?

MS. MOLLIGAN: I don't -- I'm not prepared to present that right now, other than the fact that -- in other words, you can't moot a case by doing the repairs after the complaint is filed. That's my understanding of the purpose.

Now, I'm not saying that's the case, but I do think it's important to the entire complaint that I have information

about what work was done and when.

Let's see here.

THE COURT: On that issue, before we move on to anything else, can you -- I understand that you may not be prepared to respond to that, but if you have authority for the proposition that the defendant cannot, as you said, moot a case by doing the repairs after the complaint is filed, can you provide that authority to me and opposing counsel?

MS. MOLLIGAN: Yes.

THE COURT: Okay. And then also, too, if the defense has any -- any authority, then -- and it also might already be in your motion for summary judgment, which I will tell you, candidly, I have not read. So if it's already in there, then you can just refer to that. Okay?

MR. ARMSTRONG: Yes, Your Honor.

THE COURT: All right. So then let me turn to -- back to plaintiff's counsel and ask -- you said you would like to know when the improvements were made. What else in your discovery requests are you seeking and believe that you need before responding to the motion for summary judgment?

MS. MOLLIGAN: I'm trying to limit it just to the issue of the summary judgment. For example, a lot of my requests involved financials in the event that defendant says we just don't have the money to make those repairs.

So I'm just going through those.

Okay. So one request was any architectural drawings and/or plans, renderings, blueprints, construction related to the entire property. I would like to see that. Let's see here. Building permit or improvement permit applications, prepared or submitted, I think that's -- let me see here. Yeah.

And then the main one, too, I guess, one of the main ones, all documents and communications relating to any Accessibility Architectural Barrier, Americans With Disabilities Act, or Americans With Disability Act accessibility guidelines, all documents relating -- compliance, and any incidents of discrimination.

Part of the ADA is that -- is the maintenance, and that continues to be an issue. For example, on one occasion, going by the property, I noted that there was tremendous amounts of graffiti covering the accessibility sign. There was also a car parked right in the access lane. That would go to this claim that we have -- or one of the claims that there's a failure to maintain, and if that failure to maintain continues, then it's -- there's going to be another noncompliance.

I mean, this kind of goes to the issue of -- of, you know, do we have a right to go inside. Well, I mean, if we don't, then all that means is that tomorrow someone else in a wheelchair would have the same exact problem trying to get into that property, especially concerning the property that is for lease. It just doesn't -- it doesn't seem to be the purpose or

make sense that there would need to be a separate lawsuit around the same issue, namely, noncompliance.

THE COURT: All right. Let me turn to defense counsel.

MR. ARMSTRONG: I -- I mean, regarding standing and the possibility of a future lawsuit, my position continues to be that Article III standing requires a case in controversy. And not to get down in the weeds about it, it's my understanding that -- and my interpretation -- and I don't have a case citation in front of me for this proposition, but is that we do not talk about hypotheticals and the ADA is not designed to create a private right to engage in general regulatory inspection and enforcement.

The scope of the private right of action that we are here for is that plaintiff contends and alleges that he faced specific barriers, and that's the scope of the allegation, and that does not open the door -- the allegation by plaintiff that he faced specific allegation -- specific impediments and discrimination as a result of the disability does not open the door and subject defendant to impromptu private regulatory inspection by plaintiff and plaintiff's counsel. It's that defendant must appear, answer, and defend the allegations relating to the discrimination that plaintiff alleges that he experienced, not that plaintiff alleges that some future person with a disability might experience, and that he now has a right

to seek to force defendant to comply with that hypothetical future facts and causes of action.

This isn't opening the door to an opinion about hypothetical facts. That's outside of the case in controversy limitations by the court setting that is focused simply on the dispute between the parties.

And plaintiff alleges that he suffered discrimination because the conditions in the parking lot of the defendant's property violated the ADA. He has not alleged that he went inside, he does not allege that he faced any discriminatory barriers within the property, so that is outside the scope of his complaint and seeking to vindicate the hypothetical future rights of other people with disabilities is not within the jurisdiction of the court.

THE COURT: On that issue of future hypothetical issues and lack of standing, what is plaintiff's position?

MS. MOLLIGAN: Plaintiff's position is that that's the point of this lawsuit, is to make sure that the property is compliant, and that's the plaintiff's -- the injunctive relief is to enforce those provisions of the ADA that require the removal of barriers and -- what's the right -- maintenance, maintenance of the property. If don't maintain the property -- for example, in a parking lot, if you -- if you completely do not ever re-pave, there are going to be cracks and that's going to make it difficult for someone in a wheelchair.

I'm not sure I have anything more to add to that.

THE COURT: All right. I think I understand your respective positions.

As I noted, it would be helpful to see those interrogatories and responses.

Also, plaintiff's counsel, can you send me the discovery requests and responses?

Actually, defense counsel, you can just add those to your filing, if you don't mind.

MR. ARMSTRONG: I will, Your Honor.

THE COURT: Okay. And I'll look at those. It will give me a better idea of what the dispute is about. And I'll look into the issue of the inspection of the entire property.

Also, plaintiff's counsel, send me those cases that you say support your position that a defendant cannot moot a case by doing the repairs after the complaint has been filed.

MS. MOLLIGAN: Certainly.

THE COURT: And I think that -- and I think --

MS. MOLLIGAN: Your Honor?

THE COURT: Yeah. No, go ahead.

MS. MOLLIGAN: The response on this motion for summary judgment is technically due in, I think, two days. May I have an extension for that?

THE COURT: Yes. So let's do this. I think let's -- let's set a -- I'm trying to think of the best way to

do this, if we should just set a deadline.

Let's set a new deadline and, you know, depending on how the discovery issues that were we discussed today, depending on how they turn out, that deadline might have to be modified. But I think it would be easier just to set a deadline, so let's say that your response is due by April 23rd, unless it's further extended.

MS. MOLLIGAN: Okay. Thank you. Thank you, Your Honor.

THE COURT: Okay. Anything further from the plaintiff today?

MS. MOLLIGAN: No, Your Honor.

THE COURT: Anything further from the defense?

MR. ARMSTRONG: No, Your Honor.

THE COURT: Okay. Very good. Thank you very much. We'll be adjourned.

(The proceedings concluded at 10:06 a.m.)

C E R T I F I C A T E

I certify, by signing below, that the foregoing is a true and correct transcript, to the best of my ability, of the telephonic oral argument heard via conference call, taken by stenographic means. Due to the telephonic connection, parties appearing via speakerphone or cell phone, speakers overlapping when speaking, speakers not identifying themselves before they speak, fast speakers, the speaker's failure to enunciate, and/or other technical difficulties that occur during telephonic proceedings, this certification is limited by the above-mentioned reasons and any technological difficulties of such proceedings occurring over the speakerphone at the United States District Court of Oregon in the above-entitled cause. A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

DATED this 7th day of May, 2025.

// Ryan White

RYAN WHITE
Registered Merit Reporter
Certified Realtime Reporter
Expires 9/30/2025