Jessica Molligan, OSB #001823
E-mail: jessicamolligan@comcast.net
PO Box 16893
Portland, Oregon 97292
Telephone: (971) 350-7347

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CONNER SLEVIN, an individual,<br><br>            Plaintiff,<br><br>    v.<br><br>AB HOLLYWOOD, LLC, a limited liability company,<br><br>            Defendant. | Case No 3:23-cv-01404-YY<br><br>**JESSICA MOLLIGAN'S OBJECTION TO AND REQUEST FOR DISTRICT COURT RECONSIDERATION OF MAGISTRATE YOU'S OCTOBER 2, 2025, OPINION AND ORDER** |

**OBJECTION**

Pursuant to FRCP 72, non-party Jessica Molligan, plaintiff Conner Slevin's former counsel, respectfully objects to Magistrate Judge You's October 2, 2025, Opinion and Order (O&O) imposing sanctions against Ms. Molligan under the Court's inherent power for "bringing and litigating this case in bad faith" and awarding defendant AB Hollywood, LLC ("AB Hollywood") the entire amount of its attorney fees incurred in defending it.

**LEGAL STANDARDS**

Because the sanctions imposed by Judge You are non-dispositive of a claim or defense of a party, this Court may set them aside, or modify the rulings, if it finds that the rulings are

Page 1 - JESSICA MOLLIGAN'S OBJECTION TO
        MAGISTRATE YOU'S OPINION AND
        ORDER

contrary to law or clearly erroneous. 28 U.S.C. § 636(b)(1)(A); FRCP 72(a); *Bhan v NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991). Legal conclusions are freely reviewable *de novo* to determine whether they are "contrary to law." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (ND Cal. 2010). The undelegated inherent powers of a federal court should be exercised with "especial restraint and discretion." *Goodyear Tire & Rubber Co. v Haeger*, 581 U.S. 101, 108 n. 5 (2017).

## SUMMARY OF ARGUMENT

This Court should set aside Judge You's O&O because it relies upon factual findings and assumptions not supported by evidence in the record. Judge You's finding that Ms. Molligan acted in "bad faith" by being "complicit" in, and/or entering, a "financial arrangement" with plaintiff Conner Slevin whereby he would receive compensation for serving as an Americans with Disabilities Act (ADA) "tester" is clearly erroneous. There is no evidence in the record indicating that Ms. Molligan entered such an agreement or that she ever compensated Mr. Slevin for serving as an ADA "tester." To the contrary, Mr. Slevin agreed to serve, and did serve, as a tester for out-of-state counsel for close to a year before retaining Ms. Molligan to represent him in Oregon ADA cases.

Judge You's factual findings about the merits of the claims asserted by Ms. Molligan on Mr. Slevin's behalf are also clearly erroneous. Namely, Judge You found that Ms. Molligan did not have a good faith basis to bring a lawsuit against AB Hollywood for ADA violations involving defendant's property's parking lot and accessibility signage. However, the evidence before Judge You proves that AB Hollywood made significant alterations to the property because of Mr. Slevin's ADA lawsuit, meaning Ms. Molligan did not bring it in bad faith.

Judge You's O&O is also contrary to law for several reasons. First, Judge You ruled on issues that were outside the scope of AB Hollywood's motion for sanctions, which rendered Ms. Molligan without notice of the specific issues she needed to address in responding to the motion. For example, Judge You found that after the Court granted plaintiff's request for a Rule 34 inspection of the AB Hollywood property, Ms. Molligan did nothing to schedule the inspection. That is not true. Ms. Molligan scheduled the inspection and confirmed this in writing with defense counsel and indicated as much in her supporting declaration. (Doc. 40-1, p. 1). Ms. Molligan had no reason to provide emails proving she scheduled the inspection because this issue was not raised as a basis for sanctions.

Second, Judge You committed legal error by finding that Ms. Molligan violated Oregon's Rules of Professional Conduct (ORPC) during her representation of Mr. Slevin. Under Oregon law, disciplinary rules regulating professional conduct of lawyers may only be enforced by the Oregon Supreme Court and the disciplinary board appointed by that court. ORS 9.534; *Kidney Ass'n of Or., Inc. v. Ferguson*, 315 Or. 135, 141 (1992). "No other court has jurisdiction to investigate, review, or sanction disciplinary rule violations…" *Id.* Judge You's O&O improperly imposed sanctions for alleged violations of the ORPC.

Third, Judge You committed legal error by making a blanket attorney fee award to AB Hollywood for *all* reasonable attorney fees it incurred in defending this lawsuit. The Court's inherent authority to impose sanctions permits an award of attorney fees, but only if they "would not have been incurred except for the misconduct." *Goodyear Tire & Rubber Co.*, 581 U.S. at 111. As noted above, AB Hollywood made significant changes to the property because of this litigation. Even if Judge You correctly found that Ms. Molligan engaged in bad faith conduct at

Page 3 -  JESSICA MOLLIGAN'S OBJECTION TO
             MAGISTRATE YOU'S OPINION AND
             ORDER

the end of the case, and that this warranted sanctions, she erred in finding that AB Hollywood would not have incurred fees but for that conduct.

## FACTUAL BACKGROUND

The O&O incorporates a false narrative created by AB Hollywood, the media, and Mr. Slevin himself. Indeed, Judge You cites a recently filed putative class action lawsuit brought by a group of business owners – including AB Hollywood – against Ms. Molligan and other defendants, including Tennessee law firms Wampler, Carroll, Wilson & Sanders, P.C. ("Wampler") and Wade Law LLC ("Wade"), and apparently adopts the truth of the allegations.[1] (Doc. 77, p. 3) (citing *Baek Family Partnership, LLC v. Wampler, Carroll, Wilson & Sanderson, P.L.L.C.*, No. 3:25-cv-00584-AN). However, the complaint in that case contains nothing more than highly inflammatory legal conclusions and unproven factual allegations about Ms. Molligan and the other defendants, many of which are contradicted by the evidence[2] in the record before Judge You. It is also worth noting that the class action is currently stayed because the class plaintiffs' counsel recently moved to withdraw.

Although this Court's standard of review is generally constrained to clearly erroneous factual findings, as opposed to *de novo*, review, the Court can consider information not reasonably available to Ms. Molligan prior to the magistrate judge's ruling. *See Paddington*

---

[1] Judge You embraces language used by The Oregonian and repeatedly describes this case as part of a "now-uncovered scheme," a "broader scheme and Molligan's alleged role in such a scheme" and that this "case appears to be part of a larger coordinated effort" and Molligan's "sordid scheme." (Doc. 77, pp. 2-3; 36) (citing Maxine Bernstein, *Lawyer Alleges Widespread Scheme to 'Extort' Money from Portland Businesses Over Disability Access*, The Oregonian/Oregonlive (Aug. 2, 2024, at 8:29 a.m.), https://www.oregonlive.com/crime/2024/08/more-than-40-portland-area-businesses-got-demand-letters-to-make-ada-updates-pay-thousands-in-lawyers-fees-in-shakedown-like-scam.html.

[2] For example, the plaintiff business owners allege that that the Wampler Defendants and "Local Counsel," including Ms. Molligan, collected no evidence that any of the ADA testers "had ever previously patronized (or intended to return to patronize) the properties owned by the Plaintiff Class." (Compl. ¶119). However, the evidence before Judge You included a picture of Mr. Slevin at the property owned by plaintiff class member AB Hollywood.

Page 4 -  JESSICA MOLLIGAN'S OBJECTION TO
         MAGISTRATE YOU'S OPINION AND
         ORDER

*Partners v. Bouchard*, 34 34 F.3d 1132, 1138 (2nd Cir. 1994) (party can present additional evidence to the district court if it offers a justification for not presenting that evidence to the magistrate judge). In that regard, attached to Ms. Molligan's supplemental declaration are pertinent portions of the transcript plaintiff Conner Slevin's deposition, which was taken *after* Judge You issued the O&O in a separate, but related, state court legal malpractice lawsuit stemming from this case. (Molligan Suppl. Decl. Ex. 1).

Additionally, because Judge You made factual findings beyond those raised by AB Hollywood's sanctions motion, and for which Ms. Molligan had no notice, the Court should consider the information and records included with Ms. Molligan's supplemental declaration, that clearly rebuts those findings. Not doing so would be highly prejudicial given that Ms. Molligan was entitled to notice and an opportunity to be heard including where, as here, a magistrate judge exercises its inherent authority to impose sanctions. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (holding courts have inherent power to assess attorney's fees but must provide some due process protections).

### I. Conner Slevin Joined the ADA Project on his own Volition and Without Jessica Molligan's Involvement.

Turning to the facts, Conner Slevin is an Oregon resident with a disability that requires him to use a wheelchair for ambulation. (Molligan Suppl. Decl. Ex. 1, p. 3). On June 15, 2022, Mr. Slevin learned from a Facebook acquaintance that out-of-state attorneys (Wampler and Wade) who specialize in disability access law were looking to expand their "ADA Project" into the Pacific Northwest. (*Id.* at pp. 4-5). The acquaintance told Mr. Slevin that the attorneys would send him to two to five stores at a time that had been identified as not being ADA compliant and that the attorneys would pay him $200 per store. (*Id.* at p. 5).

During his deposition, Mr. Slevin testified that he understood the payments were reimbursements for expenses he incurred in visiting the properties. (*Id.* at p. 15). He agreed that he did, in fact, incur expenses while visiting the properties, including for purchases made while at the properties, gas, and insurance for his vehicle. (*Id.* at p. 16). Mr. Slevin also confirmed that Ms. Molligan never paid him. (*Id.* at pp. 15; 17).

On June 25, 2022, Mr. Slevin signed a Representation Agreement with Wade and another attorney, J. Luke Sanderson of the Wampler law firm, agreeing to serve as an ADA tester. (*Id.* at Ex. 2). Ms. Molligan was not a party to that agreement and Mr. Slevin had no contact with Ms. Molligan before entering the Representation Agreement with Wade and Wampler in June of 2022. (*Id.* at Ex. 1, p. 12). Indeed, Mr. Slevin had no contact with her until over a year later. (*Id.* at p. 16).

In signing the Representation Agreement, Mr. Slevin agreed "to cooperate with Attorneys in the pursuit of the claims, including discovery and other pretrial proceedings, trial, and appeals, if any." (*Id.* at Ex. 2). The agreement further provided that, "Attorneys will inform Client of all important developments in the lawsuit. In all matters concerning conduct of the lawsuit, Client will carefully consider and be guiding (*sic*) by the recommendations of the Attorneys. These may relate, among other things, to the addition or deletion of parties or claims, compromise and settlement of claims, and the advisability and pursuit of related litigation or an appeal." (*Id.*).

In signing the Representation Agreement with Wade and Wampler, Mr. Slevin understood that ADA lawsuits would be filed on his behalf against property owners who were not ADA complaint. (*Id.* at Ex. 1, p. 9). He also understood that he could not recover monetary damages as an ADA plaintiff but that his attorneys could cover fees incurred in prosecuting the matter, including if the case was resolved by settlement with the property owners he sued. (*Id.* at

pp. 9-10). On the other hand, he understood his attorneys could obtain fees in prosecuting ADA claims and had no issue with that. (*Id.* at p. 20).

The Representation Agreement included a section called, "Power of Attorney." (*Id.* at Ex. 2). That section provided:

> "Attorneys are granted a Power of Attorney as related to these cases so that they have full authority to prepare, sign, and file all legal instruments, pleadings, drafts, authorizations, and papers as shall be reasonably necessary to commence, conduct, and conclude their representation, including reducing to possession any and all things of value due client under these claims should the Courts choose to make such award(s), as fully as Client could do in person. Attorneys are authorized and empowered to act as a negotiator in any and all settlement negotiations."

(*Id.*).

When asked about the Power of Attorney provision, Mr. Slevin agreed he had never prepared a pleading, never settled a lawsuit, and did not know how to file a document with the court and that he would rely on his attorneys for that. (*Id.* at Ex. 1, pp. 11-12).

### II.  Mr. Slevin Went to Businesses, and was Reimbursed for Expenses Related to Those Visits, Without Ms. Molligan's Involvement.

After executing the Representation Agreement with Wampler and Wade in 2022, Mr. Slevin began visiting properties that Wampler and Wade assigned to him. (*Id.* at p. 13). Ms. Molligan did not assign him to visit any properties and Wampler and Wade were his primary contacts during his involvement in the ADA Project. (*Id.* at pp. 17-18).

As part of the ADA project, Mr. Slevin had access to a website called "Litify" that he could access to upload photographs of properties he visited and find information about the status of his various ADA cases. (*Id.*). However, Mr. Slevin admitted that he did not do much, if anything, to check on the status of his cases. (*Id.* at p. 14). He testified that he was primarily concerned with the property owners becoming ADA compliant. (*Id.* at p. 15).

Mr. Slevin started going to businesses in July of 2022. One of the businesses was a La Mota marijuana dispensary, which operated within a business space owned by AB Hollywood.

Page 7 - JESSICA MOLLIGAN'S OBJECTION TO
    MAGISTRATE YOU'S OPINION AND
    ORDER

(Doc. 52, Ex. 1). Mr. Slevin visited the AB Hollywood property in November of 2022. (Sanctions Hearing Tr. 25:5-7). While there, Mr. Slevin took a photograph of a **blue** handicap parking sign affixed to the building. (Doc. 52, Ex. 1).

Over a year after working with Wampler and Wade, on July 26, 2023, Mr. Slevin entered into a second Representation Agreement, this time with Ms. Molligan (as local counsel), Wade, and Wampler to represent him in ADA lawsuits. (Doc. 52-2). The only difference between the second agreement and the first is that Ms. Molligan's signature line was added to the agreement. (*Compare id. with* Molligan Decl. Ex. 2). The provisions, including the "Power of Attorney" provision, were the same.

### III.     Mr. Slevin Sues AB Hollywood for ADA Noncompliance.

On August 29, 2023, Ms. Molligan sent a demand letter to AB Hollywood listing repairs needed to bring the property into ADA compliance. (Doc. No. 60-2). After AB Hollywood declined to make changes to the property, Ms. Molligan filed a lawsuit, on Mr. Slevin's behalf, alleging several ADA violations regarding the property's parking lot. (Doc. No. 1).

In the original complaint, Mr. Slevin accurately alleged that he was an individual with disabilities that uses a wheelchair for mobility purposes. (*Id.* at ¶¶6; 8). He further alleged that he was a "tester" for the purpose of enforcing his civil rights under the ADA. (*Id.* at ¶9). Mr. Slevin alleged that his "motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make his home community more accessible for Plaintiff and others" and that he would do whatever was necessary to create standing so the Court could issue an injunction correcting the ADA violations at the AB Hollywood property, including Mr. Slevin returning to the property once it was accessible. (*Id.*).

Mr. Slevin alleged that on or about November of 2022, he attempted to use but was deterred from patronizing and/or gaining equal access as a disabled patron to the AB Hollywood

property.  (*Id.* at ¶11).  Specifically, he alleged that the property was not in compliance with the ADA because:

(1) The van-accessible parking was too narrow;

(2) The accessible parking was not adequately dispersed throughout the parking facility;

(3) The designated accessible parking space was not level in all directions;

(4) The accessible aisle in the parking facility was not level;

(5) The access aisle adjacent to the designated accessible space had a curb ramp projecting into it and had surfaces that were not level in all directions; and

(6) The curb ramp leading to the entrance of the property had flared sides that were too steep.

(*Id.* at ¶27(a)-(f)).

Mr. Slevin also alleged that AB Hollywood had a practice of ADA non-compliance and requested that the Court grant injunctive relief, including an order to alter the subject facilities to make them ADA compliant.  (*Id*. at ¶42).  He also sought his reasonable attorney fees pursuant to 42 U.S.C. § 12205.  (*Id.*).

On December 13, 2023, Ms. Molligan filed an Amended Complaint, on Mr. Slevin's behalf, that included an allegation that the visible upright signage (displaying the International Symbol of Accessibility) was faded and unintelligible, in violation of the ADA.  (Doc. 8, p. 8).

On February 2, 2024, Mr. Molligan filed a Second Amended Complaint, on Mr. Slevin's behalf, removing the allegation about the accessible parking not being adequately dispersed throughout the parking facility.  (Doc. 13, p. 6).

Throughout the case, the parties continued to engage in settlement discussions.  On November 9, 2023, AB Hollywood's former counsel, Lisa Shevlin, offered to resolve the case for $500.00.  (Molligan Suppl. Decl. Ex. 3, p. 1).  On February 15, 2024, Ms. Molligan sent a

Page 9 -  JESSICA MOLLIGAN'S OBJECTION TO
           MAGISTRATE YOU'S OPINION AND
           ORDER

counteroffer of $8,000.00 to resolve the case. (*Id.* at p. 2). However, on March 20, 2024, AB Hollywood's counsel responded that defendant refused to increase its offer from $500.00. (*Id.* at p. 3).

### IV.    AB Hollywood Made Significant Changes to the Property *After* Mr. Slevin Filed This Lawsuit.

At some point during the litigation, AB Hollywood made significant revisions to the property's parking lot. On March 13, 2024, AB Hollywood filed a motion for summary judgment on all of Mr. Slevin's ADA claims and attached several photographs of the property's parking lot. (Docs. 16; 17, Exs. A-F). The photographs make clear that AB Hollywood drastically revised the property's parking lot in response to the specific ADA violations alleged Mr. Slevin's lawsuit. When compared to the photographs Mr. Slevin took pre-suit, the photos show that the parking lot was completely rearranged, including the location of the handicap accessible space. (*Id.*). The photos also show that the parking lines were redrawn with fresh white, as opposed to yellow, paint and that a new ***white***, as opposed to ***blue***, handicap accessible parking sign was affixed to the property. (*Id.*).

On March 15, 2024, Ms. Molligan sent an email to AB Hollywood's counsel, Iain Armstrong, noting that she saw the photographs included with the summary judgment motion and wanted her expert to inspect the property. (Molligan Suppl. Decl. Ex. 4). AB Hollywood objected, and the parties requested a telephonic discovery hearing with the Court.

### V.    The Rule 34 Inspection and Mr. Slevin's Exit From the ADA Project.

On April 2, 2024, Judge You held a telephonic discovery hearing with the parties. (Doc. 21). Per the Court's Minutes from the proceeding, Judge You ordered plaintiff to file a supplement containing authority to support "his proposition that an ADA case is not rendered

moot by repairs to the allegedly infringing property *after* the complaint is filed." (*Id.*) (Emphasis added).

On May 7, 2024, Judge You granted plaintiff's motion to compel a Rule 34 inspection of AB Hollywood "as to any barriers related to plaintiff's disability that plaintiff is reasonably likely to encounter as a patron." (Doc. 23). The O&O states that there was no "evidence in the record that Molligan made even preliminary arrangements to conduct the inspection of defendant's property that she had asked the court to authorize." (Doc. 77, p. 12). But Ms. Molligan did schedule the inspection, and AB Hollywood was aware of those efforts. On May 15, 2024, Ms. Molligan sent an email to AB Hollywood's counsel, Iain Armstrong, notifying him that an inspection was scheduled for June 4, 2024. (Molligan Suppl. Decl. Ex. 4, p. 2). Later that day, another attorney for AB Hollywood, Nicky Blumm, acknowledged the plan for the inspection. (*Id.* at p. 3).

On May 16, 2024, *the day after AB Hollywood's counsel confirmed the date of the inspection*, KGW posted a news article on its website titled, "Portland businesses hit with ADA complaints, demands for thousands in attorney's fees."[3] (*Id.* at Ex. 5). Notably, one of the individuals interviewed for the article, Doug Hwang, is a manager of AB Hollywood and is the property owner's son. (*Id.* at Exs. 5-6). The article called out Mr. Slevin and Mr. Molligan by name and falsely suggested that they were targeting particular businesses because they had "limited means to defend themselves." (*Id.*). There was, and is, no evidence that either Mr. Slevin or Ms. Molligan chose any businesses. As Mr. Slevin confirmed in his deposition, that was done solely by Wade and Wampler. (*Id.* at Ex. 1, p. 21).

---

[3] Judge You referenced this article in the O&O. (Doc. No. 77, p. 11, fn. 44.

**Page 11 - JESSICA MOLLIGAN'S OBJECTION TO
   MAGISTRATE YOU'S OPINION AND
   ORDER**

After seeing the news article, Mr. Slevin decided that he did not want to be part of the ADA project any longer. On May 22, 2024, he indicated to Wampler and Wade, only, stating that he was done serving as an ADA tester. However, there is no evidence that he communicated this to Ms. Molligan, or that he told her, or even agreed to communicate with her, about what he wanted done with his pending lawsuits.

## ARGUMENT

The Court should set aside the O&O because it is based on erroneous findings of fact and is contrary to law.

### I.  The O&O is Based on Significant Erroneous Factual Findings.

As spelled out below, the O&O is based on several significant erroneous factual findings. Judge You's factual findings are bolded and *italicized* and the explanation as to why the findings are erroneous is included below.

> ***"Molligan was complicit in paying plaintiff $200 to visit locations for the purpose of gathering information to file lawsuits…"*** (Doc. 77, p. 6).
>
> ***"Molligan entered into a financial arrangement with plaintiff with plaintiff to bring suit…"*** (Doc. 77, p. 22).

The factual findings that Ms. Molligan entered a "financial arrangement" with Mr. Slevin and was "complicit" in paying Mr. Slevin $200.00 for visiting stores is simply not true. Mr. Slevin entered into a representation agreement with Wampler and Wade in July of 2022. He was visiting properties, and receiving reimbursements, for close to a year before Ms. Molligan had any contact with him.

In fairness to Judge You, AB Hollywood made her aware of a separate legal malpractice lawsuit filed in state court by Mr. Slevin against Ms. Molligan.[4] (Molligan Suppl. Ex. 7). What

---

[4] AB Hollywood submitted the first amended version of the complaint from that case to Judge You. (Doc. 60-3).

**Page 12 -  JESSICA MOLLIGAN'S OBJECTION TO
                MAGISTRATE YOU'S OPINION AND
                ORDER**

she may not have known is that Mr. Slevin made several false, offensive, and illogical allegations against Ms. Molligan, including that she personally paid him to visit Asian-owned businesses because Asians are a "vulnerable, minority population" and are "easier targets." (*Id.*).

During his deposition, Mr. Slevin admitted that Ms. Molligan did not tell him which businesses to visit, that she never paid him, and that he had no evidence that she was targeting Asian-owned businesses. Indeed, those false allegations were the subject of an ORCP 17 motion for sanctions[5] that was pending against Mr. Slevin and his counsel when the legal malpractice case resolved. (*Id.* at Ex. 8).

> ***"Notably, Molligan was nowhere to be found. She did not know anything about plaintiff's unequivocal statement to Wampler that he 'quit' or plaintiff's statement to Wade that he no longer wanted to 'be associated' with the lawyers or this case any longer. Despite being plaintiff's sole counsel of record in this case, Molligan inexplicably only 'learned . . . after the fact . . . that [plaintiff] didn't want any new cases."*** (Doc. 77, p. 12).

There is nothing "inexplicable" about Ms. Molligan's explanation. The evidence before Judge You, and Mr. Slevin's deposition testimony make clear, that *he did not tell her that he did not want to be involved in the ADA Project any longer.* (Molligan Suppl. Decl. Ex. 1, p. 22). He also did not tell her what he wanted done with the pending case against AB Hollywood.

> ***"Nor is there any evidence in the record that Molligan made even preliminary arrangements to conduct the inspection of defendant's property that she had asked the court to authorize."*** (Doc. 77, p. 12).

> ***"Despite having a court order authorizing an inspection of defendant's property, Molligan suddenly became very eager to settle the case."*** (Doc. 77, p. 13).

> ***"And when the factual foundation of the case began to crumble, so did the façade; Molligan abandoned any attempt to conduct the court-ordered inspection of defendant's property or secure additional repairs and instead did what she could to line her own pocket."*** (Doc. 77, p. 23).

---

[5] During his deposition, Mr. Slevin provided testimony supporting the ORCP 17 sanctions motion. He admitted that he filed a second amended complaint in the legal malpractice case containing false allegations that Ms. Molligan targeted "Asian-Owned" businesses and that she paid him $200 for visiting these businesses. (Molligan Suppl. Decl. Ex. 1, pp. 15; 17; 21; 24-26).

Page 13 - JESSICA MOLLIGAN'S OBJECTION TO
      MAGISTRATE YOU'S OPINION AND
      ORDER

There was evidence in the record that Ms. Molligan scheduled the inspection – Ms. Molligan's Declaration Supporting Response to Defendant's Rule 11 Motion for Sanctions states, "On May 15, 2024, I finalized arrangements for the inspection of Defendant's property with Defendant's counsel." (Doc. 40-1, p. 1). AB Hollywood did not contend otherwise, as of course they were aware of the plan, which is further proven by emails between Ms. Molligan and AB Hollywood's counsel. (Molligan Suppl. Decl. Ex. 4). This Court should consider those emails because whether Ms. Molligan took steps to arrange the inspection was not an issue raised by AB Hollywood's sanctions motion.

Judge You assumes that Ms. Molligan abandoned the inspection and "suddenly" sought to settle in May of 2024. This is simply not true. Ms. Molligan tried to settle the case *before* it was filed. She and counsel for AB Hollywood then continued settlement discussions throughout the course of the lawsuit. Ms. Molligan did not just "suddenly" become interested in settlement after producing the photos of plaintiff's initial visit to the AB Hollywood property.

Ms. Molligan also must address Judge You's statement that she "did what she could to line her own pocket." (Doc. 77, 23). Again, in fairness to Judge You, she was not aware of Ms. Molligan's fee split agreement with Wampler and Wade, nor was it ever brought up in these proceedings. So that the Court is aware, Ms. Molligan had a 30 percent fee split agreement with Wampler and Wade, meaning she would have recouped around **$300.00** in attorney fees (minus expenses) had the $1,000.00 settlement with AB Hollywood gone through. (Ex. 1, p. 19).

> ***"The terms of the settlement were simple: defendant would pay $1,000 to Molligan and plaintiff would dismiss the case and release the claims. There was no mention of any repairs or modification at all, and Molligan had not even attempted to conduct the court-authorized inspection of the property's interior within the 30-day window that expired on June 7, 2024."*** (Doc. 77, p. 14).

Page 14 - JESSICA MOLLIGAN'S OBJECTION TO
　　　　　MAGISTRATE YOU'S OPINION AND
　　　　　ORDER

This is inaccurate. Per the terms of the proposed settlement agreement, the parties agreed "that all ADA violations alleged in [the] complaint related to the property or the premises addressed in this matter no longer exist as of June 12, 2024." (Doc. 72, p. 4). As noted above, AB Hollywood made significant changes to the property because of the lawsuit.

> ***"The demand letter and complaint contained allegations that were simply not true and were not based on plaintiff's actual experience at defendant's property. When presented with evidence that defendant had made significant improvements to the parking lot, Molligan refused to drop the case and instead sought (and secured) a court-ordered inspection of defendant's property by relying on misleading representations about what she knew about the property and plaintiff's visit there in November of 2022."*** (Doc. 77, p. 22).
>
> ***"Photos taken during plaintiff's only visit to defendant's property in November of 2022 show a blue and white sign designating an accessible parking space that was plainly legible and not, as the complaint alleged, "faded and unintelligible" on the day that plaintiff visited the property."*** (Doc. 77, p. 25).
>
> ***"Molligan also represented that she visited defendant's property in August 2023 before the complaint was filed and observed there was 'graffiti all over the sign.' Even if that was true, but (sic) Molligan does not explain the discrepancy between the picture of the signage during plaintiff's actual visit to the site in November of 2022 and the allegations in the complaint that are purportedly based on the "ADA violations . . . Plaintiff experienced and/or observed[.]"*** (Doc. 77, pp. 26-27).
>
> ***"Defendant's motion for summary judgment in March of 2024 was supported by pictures appearing to show that all of the alleged barriers or other issues identified in the complaint did not exist or, at least had been fixed since plaintiff's initial visit in November of 2022."*** (Doc. 77, p. 33).

Judge You's finding that Ms. Molligan brought a factually "baseless" lawsuit in bad faith is not correct. The record before Judge You makes clear that AB Hollywood made significant changes to the parking lot because of Mr. Slevin's lawsuit. It moved the designated accessible parking space, altered the ramp, and repainted the line.

The November 2022 photo of the blue parking accessibility sign is not the "smoking gun" that Judge You apparently believes it is. The fact of the matter is – AB Hollywood replaced the sign with a new white sign after the suit was filed. At the very least, that raises the question of

Page 15 - JESSICA MOLLIGAN'S OBJECTION TO
    MAGISTRATE YOU'S OPINION AND
    ORDER

whether the old blue sign was faded and unintelligible, notwithstanding the grainy photo of Mr. Slevin at the property in November of 2022.

Judge You also makes much of Mr. Slevin being able to access the property, but that does not mean ADA violations were not present. For example, there is no evidence in the record indicating that he was able to use the steep and narrow parking lot ramp to access the sidewalk in front of the La Mota store.

Judge You's critique of Ms. Molligan for not immediately dismissing the case after AB Hollywood filed its summary judgment motion is also flawed. Ms. Molligan had no obligation to take AB Hollywood's counsel's word that the property was brought into compliance and certainly was not required to rely on handpicked photographs. It was reasonable to request an inspection, by a qualified expert, to determine whether the property was compliant.

Based on Judge You's meeting minutes from the discovery conference on April 2, 2024, she was aware that AB Hollywood made changes to the property after Mr. Slevin filed suit. The photos AB Hollywood submitted in support of its summary judgment motion indicate that it addressed the very issues that Ms. Molligan alleged in the various iterations of the complaint, including the parking lot layout and signage. Judge You's finding that Ms. Molligan filed a "baseless" lawsuit in "bad faith" was clearly erroneous.

## II.     The O&O is Also Contrary to law.

In addition to being factually erroneous, the O&O was contrary to law for the following reasons.

### A. Judge You Erred by Addressing Issues That Were not Raised in AB Hollywood's Motion for Sanctions and for Which Ms. Molligan had no Notice.

Judge You committed legal error by making findings, and ruling, on issues that were outside the scope of AB Hollywood's motion for sanctions.

The undelegated inherent powers of a federal court should be exercised with "especial restraint and discretion." *Goodyear Tire & Rubber Co. v Haeger*, 581 U.S. at 108 n. 5. When a court invokes its inherent power to impose sanctions, it triggers due process concerns. *Roadway Exp., Inc. v. Piper*, U.S. 752, 767 n. 14 (1980). Ms. Molligan was "entitled to notice, an opportunity to be heard and a finding of bad faith" prior to the magistrate judge awarding costs and attorney's fees to AB Hollywood under the Court's inherent authority. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1143 (9th Cir. 2001).

Although Ms. Molligan had some notice from AB Hollywood's briefing as to the matters at play, Judge You's O&O touches on issues that were never raised. For example, at no point did AB Hollywood contend that there were *no* ADA compliance issues with the property, nor could it. The clear evidence demonstrates that it made significant changes to the property because of the lawsuit. Nonetheless, Judge You found that a blanket attorney fee award was warranted because the entire suit was "baseless." That was never an accusation.

As another example, AB Hollywood never contended that Ms. Molligan sought the inspection for bad faith reasons or that she did not pursue the inspection after the Court ordered it. Nor could it. AB Hollywood's counsel is well-aware that the inspection was scheduled, and only cancelled, because the parties tentatively agreed to a settlement. Judge You raised this as an issue for the first time in the O&O.

Additionally, AB Hollywood never contended that Ms. Molligan "suddenly" became interested in settling toward the end after producing photographs of Mr. Slevin at the property. Again, it could not because the parties engaged in settlement negotiations from the get go.

As a final example, AB Hollywood never suggested that the terms of the settlement agreement did not consider Mr. Slevin's interests in the property being ADA compliant. Again, how could they? As part of the agreement, AB Hollywood warranted that the property had been

Page 17 - **JESSICA MOLLIGAN'S OBJECTION TO MAGISTRATE YOU'S OPINION AND ORDER**

brought into compliance with the ADA, and AB Hollywood and its counsel represented as much to Judge You in the motion for summary judgment.  (Doc. 16; Doc. 72, p. 4).

### B. Judge You Erred by Addressing Whether Ms. Molligan Violated Oregon's Rules of Professional Conduct.

Judge You also committed legal error by repeatedly finding that Ms. Molligan violated Oregon's Rules of Professional Conduct.

In *Kidney Ass'n of Or., Inc. v. Ferguson*, 315 Or 135, 141 (1992), the Oregon Supreme Court held that disciplinary rules regulating professional conduct of lawyers may only be enforced by the Oregon Supreme Court and the disciplinary board appointed by that court. (Citing ORS 9.534).  ORS 9.534(2) gives the Oregon Supreme Court authority to appoint the disciplinary board to adjudicate disciplinary proceedings of the bar. Subsection (2) of that statute also provides Oregon licensed attorneys with additional due process rights, including the ability to be represented by counsel, the right to examine and cross-examine witnesses, the right to issue subpoenas and compel witness attendance, as well as the production of books, papers or documents in their defense.

There are no similar processes or rights afforded to attorneys in federal court.  Ms. Molligan certainly was not afforded with those same rights in this proceeding.  Nonetheless, Judge You bases her decision on her belief that Ms. Molligan violated the ORPC.  She cites Oregon State Bar Formal opinions and passes judgment on Ms. Molligan's relationship with her client, and the representation agreement that Wade and Wampler, not Ms. Molligan, prepared and executed with Mr. Slevin, and takes issues with attorney-client matters that do not concern AB Hollywood or the merits of the lawsuit. There is a separate process for such matters and Judge You erred in imposing inherent power sanctions based on alleged ethical violations.

### C. Alternatively, Even if Sanctions are Warranted, Judge You Erred in Ordering a Blanket Attorney Fee Award to AB Hollywood.

Alternatively, even if some level of sanctions are warranted, Judge You erred in ordering a blanket attorney fee award to AB Hollywood of all of its fees.

A court's inherent authority to impose sanctions permits an award of attorney fees, but only if the fees "would not have been incurred except for the misconduct." *Goodyear Tire & Rubber Co.*, 581 U.S. at 111. When a court considers imposing strictly compensatory sanctions, as Judge You did here, "the sanction may go no further than to redress the wronged party 'for losses sustained' and may not impose any additional consequence as punishment for the sanctioned party's misbehavior." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1089 (9th Cir. 2021).

A "district court acting under its inherent authority to impose compensatory sanctions must apply a 'but-for' causation standard," in "other words, but for the sanctionable misconduct, would there be any harm warranting compensatory relief?" *Id.* "If so, a sanction might be available but must be limited to compensating for the harm. If not, the sanction would appear to be punitive." *Id.*

Judge You erred in ordering a blanket attorney fee award to AB Hollywood. Again, the record before the Court unequivocally demonstrates that AB Hollywood made changes to the property to "moot" the lawsuit. Accordingly, AB Hollywood cannot possibly claim, and Judge You erred in finding, that the lawsuit was baseless.

Judge You's conclusion that Ms. Molligan should not have sued because she did not know whether Mr. Slevin had standing – whether he planned to return to the property – is flawed and tainted by hindsight. When Ms. Molligan filed the lawsuit, it was reasonable to expect that Mr. Slevin would return to the property if asked to as part of his role as an ADA tester. He had already visited numerous properties in the area and seemed fine doing so. Ms. Molligan could not have possibly anticipated that Mr. Slevin would suddenly stop serving as a tester because of AB Hollywood and other business owners' concerted media strategy.

**Page 19 - JESSICA MOLLIGAN'S OBJECTION TO
          MAGISTRATE YOU'S OPINION AND
          ORDER**

Because the ADA claims had merit, the only basis to sanction Ms. Molligan is for the alleged conduct that occurred at the end of the case. Again, most of that concerns professional ethics, particularly in the context of ADA tester litigation, which presents its own unique issues. For example, given that ADA plaintiffs cannot recover monetary damages, do they have the right to control whether their attorneys seek fees for the successful prosecution of the claim? During his deposition, Mr. Slevin testified that he had no issue with his counsel being compensated for the work done on his cases if their efforts resulted in a property owner becoming ADA comlant. (Molligan Suppl. Decl. Ex. 1, p. 23). In that scenario, was the Power of Attorney an unethical delegation of authority? These are issues for the disciplinary board, not this Court.

Finally, to the extent the Court is inclined to award some amount of sanctions, the Court should not award attorney fees AB Hollywood incurred in filing a motion for sanctions that did not comply the FRCP 11(c)(2) and was later withdrawn. (Doc. Nos. 26; 36).

## CONCLUSION

For these reasons, this Court should set aside the O&O in its entirety. Alternatively, if the Court feels same level of sanctions are warranted, they should be narrowly tailored, as opposed to blanket attorney fee sanctions, because the lawsuit resulted in AB Hollywood making needed changes to the property.

DATED this 17th day of November 2025.

                                                */s/ Jessica Molligan*
                                                Jessica Molligan, OSB No. 001823

Page 20 - JESSICA MOLLIGAN'S OBJECTION TO
         MAGISTRATE YOU'S OPINION AND
         ORDER