IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | | |
|---|---|---|
| CONNER SLEVIN, | ) | Case No. 24CV37526 |
| Plaintiff, | ) | **DEFENDANT'S RULE 17 MOTION** |
| v. | ) | *Oral Argument Requested* |
| JESSICA LEE MOLLIGAN, | ) | (Honorable Judge Christopher Ramras) |
| Defendant. | ) | |

**UTCR 5.050 INFORMATION**

| | |
|---|---|
| Time requested for oral argument: | 60 Minutes |
| Telephonic argument requested: | No |
| Offices more than 25 miles from courthouse: | No |
| Court reporting services requested: | Yes |

**INTRODUCTION**

On May 23, 2025, the Court ordered plaintiff to file an amended complaint clarifying his legal malpractice claims against defendant Jessica Molligan ("defendant"). In response to this Court's Order, plaintiff's counsel signed and filed a second amended complaint containing disparaging factual assertions about Ms. Molligan that plaintiff and his lawyers know are false.

*The first false assertion in the Second Amended Complaint* is that Ms. Molligan "lured" Slevin into a "national lawyer-money-making scheme" because she knew "he survived only on disability income and would therefore be enticed" by $200.00 sum payments for each business he visited. (SAC ¶¶1-3; 8). That is false. Plaintiff is referring to a representation agreement he entered with two Tennessee law firms to serve as an Americans with Disabilities Act ("ADA") "tester." Records produced by plaintiff, and Slevin and his attorney's statements to the media, confirm he contacted Tennessee counsel, ***on his own volition***, and agreed to serve as an ADA tester a ***year***



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

before retaining Ms. Molligan. Additionally, Slevin's admissions establish that he did not communicate with Ms. Molligan before agreeing to serve as an ADA tester for the Tennessee attorneys, who are not parties to this action. Plaintiff and his counsel knew all of this before signing and filing the Second Amended Complaint.

*The second false assertion in the Second Amended Complaint* is that as part of Ms. Molligan's purported "role in the national lawyer-money-making scheme and in her representation of plaintiff," she targeted "Asian-owned businesses" and sent Slevin to visit those businesses so that she could extract attorney fees for "technical" noncompliance with the ADA. (SAC ¶2). Defendant did so because, ***according to plaintiff***, Asians are "vulnerable" and "easy targets" to "extract attorney fees from." (*Id.* at ¶8). Putting aside the absurdly false and offensive premise of these allegations, plaintiff and his attorneys knew the allegations about Ms. Molligan targeting particular businesses were false when they signed and filed the Second Amended Complaint.

Before filing the Second Amended Complaint, Slevin produced correspondence that proves Ms. Molligan did not "target" particular businesses and certainly did not tell Slevin which businesses to visit. Slevin's own correspondence and records make clear that the Tennessee attorneys performed the initial investigations for ADA violations. His correspondence also confirms that the Tennessee attorneys told Slevin which businesses to visit. Slevin submitted photographs of himself, at the businesses, to the Tennessee attorneys via email. His own email correspondence establishes that he visited over **<u>40</u>** businesses selected by the Tennessee attorneys ***before*** Ms. Molligan was his attorney.

/ / /

/ / /

/ / /

/ / /

/ / /



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

In response to plaintiff's Second Amended Complaint,[1] and pursuant to ORCP 17 D, defendant moves the Court to impose sanctions against plaintiff and/or plaintiff's attorneys for false certification.

This motion is supported by the Declaration of Taylor B. Lewis, and the exhibits attached thereto, the pleadings on file herein, and the following points and authorities.

## BACKGROUND

### I. Factual Background

The following is based solely on records plaintiff produced in discovery ***before*** signing and filing the Second Amended Complaint and plaintiff's responses to defendant's Request for Admissions, which plaintiff also served before signing and filing the Second Amended Complaint.

Plaintiff Conner Slevin is an Oregon resident with a disability that requires him to use a wheelchair for ambulation. (Lewis Decl. Ex. 1, p. 2). In June of 2022, Slevin learned from a Facebook friend that out-of-state attorneys who specialize in disability access law were looking to expand into the Pacific Northwest. (*Id.*). He obtained the attorneys' contact information and connected with Tennessee attorney B. J. Wade about joining an "ADA project." (*Id.* at Ex. 1, p. 2; Ex. 2, p. 1). Slevin later told The Oregonian that, "It seemed like an opportunity to make some good money and have a little bit of a purpose." (*Id.* at Ex. 1, p. 6).

On June 25, 2022, Slevin signed a Representation Agreement with Mr. Wade and another attorney, J. Luke Sanderson, agreeing to serve as an ADA tester. (*Id.* at Ex. 3). Ms. Molligan was not a party to that agreement and plaintiff's responses to defendant's request for admissions establish that he had no contact with Ms. Molligan before entering the Representation Agreement with Tennessee counsel in June of 2022. (*Id.* at Ex. 4, pp. 1; 3-6; 9).

---

[1] Plaintiff filed a notice of intent to take default on July 9, 2025. This motion constitutes defendant's response to plaintiff's Second Amended Complaint. Defendant anticipates filing additional Rule 21 motions against the complaint but needs to know whether plaintiff will withdraw the false assertions contained in the Second Amended Complaint before defendant can do so.



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

On July 18, 2022, Mr. Wade sent Slevin an email explaining how the ADA project worked. (*Id.* at Ex. 2, p. 8). The Tennessee attorneys would email him the name and address of a business that their inspector previously determined was not ADA compliant. (*Id.*). Slevin would then go to the business, buy an item, and take a photograph of the receipt. (*Id.*). He was also instructed to take a picture of the business and the business's "handicapped" parking space and email those photographs to the Tennessee attorneys.[2] (*Id.*). Additionally, Slevin and his attorney later told The Oregonian that each month, Mr. Wade would send "Slevin a text message, just to check if Slevin had visited three properties. Once Slevin said he had, he was sent a check for about $600 a month[.]" (*Id.* at Ex. 1, p. 9).

Slevin started going to businesses in July of 2022. (*Id.* at Ex. 5, p. 1). Mr. Wade sent Slevin his first two assignments, which included a Plaid Pantry and a Shell Gas Station in Portland, Oregon. (*Id.* at Ex. 2, p. 6). From September of 2022 to July 10, 2023, the Tennessee attorneys assigned him approximately 45 businesses to visit.[3] (*Id.* at Ex. 2, pp. 6, 12-35; 37-41; 44; 50-53). Based on emails produced by Slevin in this litigation, he visited approximately 42 businesses during that time frame. (*Id.* at Ex. 5, pp. 1-132). Slevin later told The Oregonian that his "caregiver drove him to the different business sites in Beaverton, Lake Oswego, Tigard and Portland and took his photo outside each. He then sent the photos and any receipts from

/ / /

[2] Slevin also described the arrangement to The Oregonian. (Lewis Decl. Ex. 1). He said, "Every month, the Tennessee lawyers emailed him lists of addresses of small businesses in the Portland metro area[.] They told him they had already sent their own inspectors to the sites but wanted him to visit each location. They asked him to get a business card or receipt from a purchase at each site, take a photo in front of the business and share the receipt and photo with the Tennessee lawyers." (*Id.*).

[3] Those businesses included Nudi Noodle Place, Pizza Roma Restaurant, Woodstock Laundry Store, Sherwin-Williams Paint Store, a second Plaid Pantry, Tecos Fresh Mexican Food, Sesame Donuts, Boost Mobile, Metro by T-Mobile, Papa Murphy's, Daisy Beauty Supply, Santa Cruz Bakery & Taqueria, a third Plaid Pantry, Nectar, La Mota, Buddies, The Fireside Grill, FuddoYama Ramen & Teriyaki, Barklandia, Jenny's Shear Bliss, Roses Classworks Art Glass, Metzger Tax Service, Flowers by Donna, Mattress Depot USA, Reference Labs, Electric Lettuce Dispensary, Mario's Auto Service, Emerald Outdoor Living, Metzgar Mart, Toby's Sports Pub, Torched Illusions, Muchas Gracias Mexican Food, 7-Eleven, and G Spot. (Lewis Decl. Ex. 2).



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

purchases made to the Tennessee lawyers first by email and then through a website portal[.]" (*Id.* at Ex. 1, p. 6).

On July 26, 2023, Slevin entered into a second Representation Agreement, this time with Ms. Molligan, Mr. Wade, and attorney J. Luke Sanderson to represent him in ADA lawsuits. (*Id.* at Ex. 6). Before Ms. Molligan's involvement, Slevin visited approximately 42 of the 45 or so businesses that the Tennessee attorneys assigned him to. Plaintiff has not produced any correspondence indicating that Slevin communicated with Ms. Molligan about which businesses to visit.

## II. Procedural Background

Plaintiff filed the original complaint on August 6, 2024. (Compl.). Plaintiff alleged, in vague and conclusory fashion, that Ms. Molligan was negligent and breached fiduciary duties by "facilitating" Mr. Slevin's engagement in "legal arrangements without informing plaintiff how and why the arrangements were improper, in order for defendant to financially enrich herself at plaintiff's expense." (*Id.* at ¶2(a)).

Plaintiff also included an intentional infliction of emotional distress (IIED) claim. (*Id.* at ¶6). As part of that claim, he alleged, again in conclusory and vague fashion, that "defendant was aware that plaintiff was particularly susceptible because he was disabled and was not trained in the law[.]" (*Id.*).

After conferral, plaintiff filed a First Amended Complaint that included vague and conclusory allegations like those from the original complaint. He again alleged that Ms. Molligan was negligent, and breached fiduciary duties, by "facilitating" his "engagement" in unspecified "legal arrangements." (FAC ¶1(a)). Slevin also alleged, as part of his IIED claim, that "defendant's conduct was undertaken for an ulterior purpose * * * and to take advantage of an unusually vulnerable, disabled individual[.]" (*Id.* at ¶8).

In the meantime, defendant served a request for production of records to plaintiff seeking, among other things, all communications between Slevin and Ms. Molligan and all



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

communications between plaintiff and the Tennessee attorneys. (Lewis Decl. Ex. 7). In December of 2024 and February of 2025, plaintiff produced records responsive to defendant's requests for production, including the records attached as Exhibits 2-3 and 5-6 to the Declaration of Taylor B. Lewis. (*Id.* at Ex. 8).

On December 31, 2024, defendant filed several Rule 21 Motions against the First Amended Complaint. Among those motions, defendant moved the Court for an order requiring plaintiff to make the complaint more definite and certain by specifying what conduct he referred to when alleging defendant breached duties by "facilitating plaintiff's engagement in improper legal arrangements." (Rule 21 Motions, p. 17) (Emphasis added). Defendant also moved the Court for an order requiring plaintiff to allege ultimate facts as to why he was especially "vulnerable" and susceptible to emotional distress, particularly where plaintiff's disability, which formed the basis for his engagement of defendant to prosecute ADA claims, was physical, not mental. (*Id.* at pp. 18-19).

In response to the Rule 21 motion to make the especially "vulnerable" claim more definite and certain, plaintiff represented, through counsel, in a signed motion response, that Slevin "was physically disabled and vulnerable as he was particularly reliant on plaintiff (*sic*) ***because he could not readily investigate the businesses defendant told him were not in compliance with the ADA due to his disability***[.]" (Resp., p. 35) (Emphasis added).

On January 6, 2025, defendant served a First Set of Requests for Admission to Plaintiff, requesting that he admit, among other things, that he had no communication with Ms. Molligan before executing the first Representation Agreement on June 25, 2022. (*Id.* at Ex. 4, pp. 1; 3-5).

On February 10, 2025, plaintiff filed a response to defendant's request for admission admitting "that he did not directly meet with, speak with, or receive any communications directly from defendant as counsel before plaintiff executed the Representation Agreement * * *" (*Id.* at p. 9).

/ / /



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

After the hearing on defendant's Rule 21 motions, the Court entered an order requiring plaintiff to make the complaint more definite and certain. (Order on Rule 21 Motions). Among other things, the Court ordered plaintiff to allege facts explaining why plaintiff was unusually vulnerable and how Ms. Molligan "facilitated" plaintiff's "engagement" in improper legal arrangements. (*Id.* p. 2). Plaintiff then filed the Second Amended Complaint with the false assertions.

## POINTS AND AUTHORITIES

### I. Standard for Review

ORCP 17 "exists to prevent parties from presenting fraudulent or frivolous claims." *Wash. Cnt. v. Querbach*, 275 Or App 897, 913 (2015). Under ORCP 17 C(4), an attorney who signs a pleading certifies, among other things, that the allegations and other factual assertions in the pleading "are supported by evidence." The rule further states that any "allegation or other factual assertion that the party or attorney does not wish to certify to be supported by evidence must be specifically identified." *Id.*

The rule permits the court to sanction a person or party who is found to have made a false certification under ORCP 17 C(4) or is found to be responsible for a false certification under the rule. ORCP 17 D(1). The Court can impose a sanction after notice and an opportunity for a hearing. *Id.* "A law firm is jointly liable for any sanction imposed against a partner, associate or employee of the firm, unless the court determines that joint liability would be unjust under the circumstances." *Id.* The Court may impose sanctions if the party who was served with a motion for sanctions does not withdraw or correct the false certifications specified in the motion. ORCP 17 D(3).

An ORCP 17 motion must "describe with specificity the alleged false certification." ORCP 17 D(3). The Court may impose sanctions if the party who was served with a motion for sanctions does not withdraw or correct the false certifications specified in the motion within 21 days after the motion is served. *Id.*



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

Available sanctions are limited to amounts sufficient to reimburse the moving party "for attorney fees and other expenses incurred by reason of the false certification, including reasonable attorney fees and expenses incurred by reason of the motion for sanctions, and upon clear and convincing evidence of wanton misconduct amounts sufficient to deter future false certification by the party or attorney and by other parties or attorneys." *Id.* "The sanction may include monetary penalties payable to the court" and "must include an order requiring payment of reasonable attorney fees and expenses incurred by the moving party by reason of the false certification." ORCP 17 D(4).

On order granting an ORCP 17 sanctions motion "must specifically describe the false certification and the grounds for determining that the certification was false" and "must explain the grounds for the imposition of the specific sanction that is ordered." ORCP 17 D(5). "When a court grants or denies a request for sanctions under ORCP 17 D, the court must enter findings pursuant to the rule to facilitate adequate appellate review." *C-Lazy-K Ranch, Inc. v. Alexanderson*, 243 Or App 168, 187 (2011).

Once a court determines what was certified, the question then is "whether the person making the allegation or assertion reasonably believed that there was or would be some evidence to support the assertion." *Sinio v. Bledsoe*, 172 Or app 254, 259 (2001). Under ORCP 17, "the subjective good faith of a party or a lawyer is not relevant when the imposition of the sanction is for lack of merit." *Seely v. Hanson*, 317 Or 476, 483 (1993).

## II. The First False Assertion.

The first false assertion – that Ms. Molligan "lured" Slevin into the ADA project by promising $200.00 flat fee payments – is alleged in several parts of the Second Amended Complaint:

- "**Plaintiff, a disabled Oregon resident, was unwittingly lured into a national lawyer-money-making scheme by defendant** * * * (SAC ¶1) (Emphasis added).

/ / /

/ / /



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

- "**facilitating and participating in an arrangement where plaintiff would be paid a flat $200.00 sum for each business he would visit that was targeted by defendant for alleged ADA violations** * * *" (SAC ¶3(b)) (Emphasis added).

- "**defendant was aware that plaintiff was unusually vulnerable because he survived only on disability income and would therefore be enticed by the unlawful and unethical flat $200.00 sum payments** * * *" (SAC ¶8) (Emphasis added).

As explained above, plaintiff contacted the Tennessee attorneys about the ADA project on his own volition. He had no communications with Ms. Molligan before agreeing to serve as an ADA tester and he visited over 40 businesses before retaining Ms. Molligan. She did not "lure" him into the ADA project with promises of flat fee payments, or otherwise. Plaintiff and his attorneys knew, based on documents in their possession and their response to defendant's request for admissions, that the above-described assertions were provably false when they signed and filed the Second Amended Complaint.

**III. The Second False Assertion.**

The second false assertion – that Ms. Molligan would "target" local, "often Asian-owned businesses" and "send" Slevin to the businesses – is also alleged in several parts of the Second Amended Complaint:

- "**As part of her role in the national lawyer-money-making scheme and in her representation of plaintiff, defendant would target local, often Asian-owned businesses**, **accusing these businesses of not being in technical compliance with the ADA. Defendant would then send plaintiff to purchase an item or service at the targeted businesses**." (SAC ¶2) (Emphasis added).

- "**Plaintiff was paid a flat $200 sum for each of the businesses targeted by defendant that he was instructed to visit**." (SAC ¶2) (Emphasis added).

- "**plaintiff was reliant on and trusted defendant's legal assessments that the businesses defendant selected to sue and target on plaintiff's behalf were actually and substantially in violation of the ADA and were selected for that reason, rather than being Asian-owned business that would make easier targets for defendant to extract her attorney fees from**[.]" (SAC ¶8) (Emphasis added).

As explained above, Ms. Molligan did not "target" any of the businesses. The Tennessee attorneys performed the initial ADA compliance investigation and then told Slevin which



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

businesses to visit. Slevin then visited over 40 businesses selected by the Tennessee attorneys before having any communication with Ms. Molligan. He and his attorneys possessed and produced records showing this before signing a pleading with derogatory allegations about Ms. Molligan targeting "Asian-owned" businesses. Plaintiff and his counsel have not produced any records supporting these assertions and the records they have produced prove the assertions are false.

ORCP 17 exists to prevent false claims like the ones asserted by Slevin and his counsel. The Court should impose sanctions against plaintiff and his counsel, consisting of defendant's attorney fees and expenses incurred in responding to the false assertions.

As explained above, plaintiff and his counsel have made several false certifications to the Court, including in the Second Amended Complaint and prior motion filings. Sanctions are appropriate to deter further false certifications by plaintiff and his attorneys.

## CONCLUSION

The Court should grant defendant's motion and impose sanctions pursuant to ORCP 17 D(4), including defendant's attorney fees and other expenses incurred by reason of the false certifications, unless plaintiff amends or withdraws the false assertions in the Second Amended Complaint within 21 days of the date of this motion.

DATED this 10th day of July, 2025.

HART WAGNER LLP

By: /s/ *Taylor B. Lewis*
Janet M. Schroer, OSB No. 813645
jms@hartwagner.com
Taylor B. Lewis, OSB No. 164263
tbl@hartwagner.com
*Of Attorneys for Defendant*

Trial Attorney: Janet M. Schroer, OSB No. 813645



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax:(503) 222-2301**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of July, 2025, I served the foregoing **DEFENDANT'S RULE 17 MOTION** on the following party at the following address:

Michael Fuller
Emily C. Templeton
Underdog Law Office
US Bancorp Tower
111 SW 5th Avenue, Suite 3150
Portland, OR 97204
michael@underdoglawyer.com
emily@underdoglawyer.com

Kelly D. Jones
Law Office of Kelly D Jones
819 SE Morrison Street, Suite 255
Portland, OR 97214
kellydonovanjones@gmail.com
*Of Attorneys for Plaintiff*

by ***emailing and mailing*** to them a true and correct copy thereof, certified by me as such, placed in a sealed envelope addressed to them at the addresses set forth above, and deposited in the U.S. Post Office at Portland, Oregon on said day with postage prepaid.

*/s/ Taylor B. Lewis*
Taylor B. Lewis



**HART WAGNER LLP**
**Attorneys at Law**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**